FILED

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

12 OCT -5  AM 10: 37

ROCLEN I    MYICH
U S DISTRICT COURT
FOR THE NORTHERN DISTRICT
OF INDIANA

EDWARD AND VIRGINIA S.,          )
Parents and Next of Friends, of T.S.,  )
            Plaintiffs,          )
                                 )
and                              )        CAUSE NO.        1 1 12 C V 3 5 0 ☞JTM
                                 )
WEST NOBLE SCHOOL                )
CORPORATION,                     )
            Defendants.          )

COMPLAINT FOR INJUNCTIVE RELIEF

COME NOW, Plaintiffs, T.S. by and through her parents and next of friends, Edward S.
and Virginia S. (hereinafter, collectively, the "Plaintiffs" or the "Family"), and do hereby request
an injunction enforcing the stay put provision of the Individuals with Disabilities Education Act.

INTRODUCTION

1. This action is brought pursuant to the provisions of 20 USC § 1415 *et. seq.*, more
   commonly known as the Individuals with Disabilities Education Act (hereinafter,
   "IDEA"), the pertinent implementation regulations promulgated under the Code of
   Federal Regulations, and 511 IAC 7 *et. seq.* (hereinafter, "Article 7"), as implemented by
   the Indiana Department of Education, and including all rights, entitlements, and
   procedural safeguards mandated by these laws.

2. The hearing officer assigned to this matter ordered that stay put for T.S. was her current
   educational placement at Kildonan School (hereinafter, "Kildonan") in Amenia, New
   York. T.S. traveled to New York and began school at Kildonan pursuant to the order.

1

One week later, the hearing officer changed his mind and ordered that T.S. be placed in the district placement being challenged by the Family.

## JURISDICTION AND VENUE

3.  This Court has jurisdiction of this case pursuant to 20 USC §1415, 28 USC §1331, and §1367.

4.  This Court, without regard to the amount in controversy, has jurisdiction of the Plaintiffs' request pursuant to the IDEA, federal statutes, and Indiana statutes.

5.  Venue is proper in the Northern District of Indiana, Fort Wayne Division, because all of the parties live and reside in Noble County, Indiana, and all relevant action took place in Noble County, Indiana.

6.  Pursuant to 511 IAC 7-45-9(a), the Court is to receive the record of administrative proceedings, hear additional evidence at the request of a party, and grant the relief it determines to be appropriate.

## PARTIES

7.  T.S. is a minor child with disabilities and is entitled to receive special education and related services and, at all relevant times, was a student within the West Noble School Corporation (hereinafter, the "School").

8.  T.S. is entitled to all rights, entitlements, and procedural safeguards mandated by applicable laws and statutes, including but not limited to IDEA, the pertinent Code of Federal Regulations, and Article 7 as implemented through the Department of Education.

9.  Plaintiffs, Edward and Virginia S., are the grandparents and legal guardians of T.S. and the persons with whom T.S. resides.

10. School Defendant is the local educational agency located in Noble County, Indiana.

2

11. The address for West Noble School Corporation is 5050 N. U.S. Hwy. 33, Ligonier, Indiana 46767.

12. The School is a recipient of funds under the IDEA and is obligated to fulfill the procedural and substantive requirements of the IDEA and Article 7, including the obligation to provide a student a free appropriate public education in the least restrictive environment and provide an individualized education program ("IEP") that is reasonably calculated to provide educational benefit.

FACTS APPLICABLE TO ALL COUNTS

13. T.S. is a student that has been diagnosed with attention deficit disorder and dyslexia.

14. She attended school in the Rensselaer School Corporation (hereinafter, "Rensselaer") during the 2011-2012 school year.

15. During that year, her parents found that she was not making adequate progress.

16. The IEP team met several times to adjust her programming and the special education and related services she was being provided.

17. Finding that those adjustments were not working, the IEP team decided to place T.S. at a specialized school for students with learning disabilities. The team agreed that placement at Kildonan School in Amenia, New York, would be appropriate.

18. The team met in March 2012 to review T.S.'s progress at Kildonan. The team agreed that T.S. was making appropriate progress and agreed to placement at Kildonan for the 2012-2013 school year. Exhibit A.

19. Over the summer of 2012, the Family moved into West Noble School Corporation's boundaries.

3

20. The Family met with School staff multiple times over the summer. They provided (a) all information requested to the School and (b) consent for the School to contact Rennselaer and Kildonan to receive information regarding T.S.

21. On August 14, 2012, another IEP meeting was held. At this meeting, the School informed the Family that they felt they could meet T.S.'s educational needs within their district program and would not be sending T.S. to Kildonan for the 2012-2013 school year.

22. The Family received written notice of the IEP on August 17, 2012. Exhibit B.

23. On August 22, 2012, the Family filed a *pro se* request for due process requesting placement at Kildonan. The Indiana Department of Education (hereinafter, "IDOE") assigned the case the number HR-005-2013 and assigned James Jacobs as the hearing officer. Exhibit C.

24. On August 28, 2012, this counsel filed her appearance on behalf of the Family and notified the hearing officer of a stay put dispute. Exhibit D.

25. On August 29, 2012, the Family withdrew its request for due process, opting instead to use less litigious means to resolve the dispute with the School. Exhibit E.

26. The same day, the Family's counsel contacted the School's counsel by e-mail and requested both a meeting with the special education director and mediation to resolve the dispute between the Family and the School. Exhibit F.

27. The Family's counsel informed the School's counsel that they believed they were entitled to stay put placement at Kildonan and warned the School that they would seek enforcement of stay put through judicial means or through an IDOE complaint process if necessary.

4

28. The School asked the Family to hold off on any such proceedings so that the meeting could take place. The School's counsel indicated that he believed the School was willing to agree to temporary placement at Kildonan to avoid any emergency court or IDOE filings.

29. On September 4, 2012, the parties met via phone conference. At the meeting, the School did not offer placement at Kildonan--even temporarily. Instead, the School took the position that T.S. was not entitled to stay put and only entitled to comparable services that could be provided within the district.

30. On September 5, 2012, the Family filed another request for due process. The case was assigned the hearing number HR-009-2013. However, the IDOE went out of the hearing officer rotation and reassigned James Jacobs to the case. Jacobs accepted the case. Exhibit G.

31. Contemporaneous to the filing of the due process request, the Family also filed an Emergency Motion for Stay Put. *Id.*

32. The School requested permission to respond to the Motion. Exhibit H.

33. On September 7, 2012, the hearing officer granted both the School's and the Family's Motion. The hearing officer specifically found that T.S.'s current placement was Kildonan and ordered placement of her there and allowed the School to respond to the Motion by a subsequent time. Exhibit I.

34. Relying upon that order, the Family took T.S. to Kildonan and she started school there.

35. On September 13, 2012, the hearing officer reversed his order stating that the Family had "exceeded the ten (10) day time period allowed for parental objection to the School's

5

IEP..." He further denied placement at Kildonan School and instead found that T.S.'s

placement was West Noble High School[1]. Exhibit J.

36. On September 24, 2012, the Family requested reconsideration of the hearing officer's

decision. Exhibit K[2].

37. On September 28, 2012, the hearing officer sent out an "Entry." The Entry stated the

following:

> On September 24, 2012, Petitioners, by counsel, in direct violation of this IHO's previous
> Order submitted a **BRIEF IN SUPPORT OF PLAINTFFS' MOTION TO
> RECONSIDER SEPTEMBER 13, 2012 STAY PUT RULING.** In that Petitioner's
> "notice" is in direct disregard of a previous ruling by this IHO, nor response from this
> IHO will be forthcoming, nor will any content therein be considered by this IHO
> regarding Petitioner's motion as stated above at this time.
> Both parties are hereby served notice that this IHO will not respond to further
> argument regarding any issue pending in this matter prior to hearing. Such will be the
> primary purpose of the pending due process hearing.

Exhibit L.

## CLAIM I - REQUEST FOR INJUNCTIVE RELIEF

38. Plaintiffs hereby incorporate by reference and re-plead all allegations set forth in

paragraphs 1-37.

39. The Seventh Circuit has specifically held that, "[t]he stay-put provision has been

interpreted as imposing an automatic statutory injunction, like the automatic stay in

---

[1] The hearing officer actually ordered placement at Rennselaer High School. However, the School's counsel pointed
out the error and the hearing officer subsequently reissued a corrected order.

[2] Exhibit K is Motion to Reconsider and the Brief supporting it. The exhibits attached to the Motion will be
included in the Appendix to this Complaint and the appendix label will correspond to the exhibit label in the Motion
to Reconsider, e.g. Exhibit A will be Appendix A. The Brief supporting the Motion to Reconsider had an appendix
that included copies of cases cited in the Motion because, to Plaintiffs' knowledge, the hearing officer does not have
access to a legal research database. Because this Court does, Plaintiffs did not include copies of the actual cases as
attachments to this complaint. The cases included in the Appendix to the Motion to Reconsider, were the following:
*Susquenita School dist. v. Raelee S.*, 96 F.3d 77 (3rd Cir. 1996); *Montgomery Township Bd. Of Educ. v. S.C.*, 2007
U.S. Dist. LEXIS 6071 (D.C. N.J. 2007); and *P.R. v. Roxbury Township Board of Education*, 2008 U.S. Dist. LEXIS
8638 (D.C.N.J. 2008).

bankruptcy." *Casey K. v. St. Anne Community High School*, 400 F. 3d 508, 511 (7th Cir. 2005)

40. The hearing officer in this case refuses to follow the stay put provision.

41. In *Joshua A. v. Rocklin Unified School District*, 559 F.3d 1036, 1040 (9th Cir. 2009), the

Ninth Circuit held:

The fact that the stay put provision requires a specific showing on the part of the moving party, and no balancing of equities by the court, evidences Congress's sense that there is a heightened risk of irreparable harm inherent in the premature removal of a disabled child to a potentially inappropriate educational setting. In light of this risk, the stay put provision acts as a powerful protective measure to prevent disruption of the child's education throughout the dispute process. It is unlikely that Congress intended this protective measure to end suddenly and arbitrarily before the dispute is fully resolved.

42. The IDEA recognizes the irreparable harm that could befall T.S. if she is removed from

Kildonan.

43. The hearing officer is acting arbitrarily and his actions will cause irreparable harm to T.S.

if this Court does not intervene.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiffs do hereby request this Court find that T.S.'s stay put

placement is Kildonan and for all other relief deemed just in the premises.

Respectfully submitted,

Alexandra M. Curlin, (#24841-49)
FLEMING STAGE, LLC
310 N. Alabama St., Ste. 300
Indianapolis, IN 46204
Telephone (317) 202-0301
Facsimile (317) 536-3663
E-mail: amcurlin@flemingstage.com

## CERTIFICATE OF SERVICE

I do hereby certify that a copy of the foregoing has been duly served upon parties listed below by way of certified mail this 3rd day of October, 2012.

Jason Clagg
BARNES & THORNBURG
600 One Summit Sq.
Ft. Wayne, IN 46802
Jason.clagg@btlaw.com

Dr. Dennis VanDuyne
West Noble School Corporation
5050 N. U.S. Hwy. 33
Ligonier, IN 46767

Alexandra M. Curlin, (#24841-49)
FLEMING STAGE, LLC
310 N. Alabama St., Ste. 300
Indianapolis, IN 46204
Telephone (317) 202-0301
Facsimile (317) 536-3663
E-mail: amcurlin@flemingstage.com

8



**Case Conference Committee Report**

Date of Report: 04/05/2012
Individual Education Program
IEP Effective Date:
04/02/2012 to 03/07/2013

| Student: T███ ██ S██ | STN: 321303115 |
|---|---|

**Date of Birth:** 09/30/1997   **Age:** 14   **Current Grade:** 8   **Gender:** F

## Guardian Information

Relation: Legal Guardian
Name: ███ and ███ ██
Business Phone:
Home Phone: 1-2████████
Mobile Phone:
Address: 2████████████
████████████

Relation:
Name:
Business Phone:
Home Phone:
Mobile Phone:
Address:

## Purposes of Case Conference

Transition, Revise IEP without a meeting

## Case Conference Meeting Scheduled

**Date:** 04/02/2012   **Time:** 11:00   **Place:** CSS office

## Evaluation Information and Student Data

**Strengths of the student:**
3/6/12 Friendly, Wants to do well, interested in others, Likes to act in plays, involved in school activities, has adjusted well to her new environment

**Response to instructional strategies and research-based interventions:**
3/6/12 T███ has received direct instruction in reading for both decoding and comprehension skill development. T███ responds well to a multi-sensory approach in all areas, especially to reading instruction. Kildonan School provides instruction using Cursive Writing Skills, Explode the Code, and Simultaneous Oral Spelling in addition to her academic classes to address language skill deficits. She is making progress using these approaches.

**Progress Monitoring Data:**
3/6/12 Kildonan School will provide regular updates on her progress. T███ continues to make academic progress.

**Present level of academic and functional performance:**
3/6/12 Per reports from staff at Kildonan and her grandparents, T███ has adjusted well to her new school and living arrangements. While she is a welcome member of their community, her Dorm Masters do report some difficulty with using her best judgments regarding relationships with the other girls. They recommend that she focus on creating healthier bonds. She has been involved in social activities and was on the basketball team. She was reported to be a key member of the team and has a solid grasp of fundamentals and basic court sense. All reported academic grades are in the B/C range. She is reported to be a motivated student. She has reported enjoying reading the books in her class. She needs reminders to slow her pace with her reading at times but takes redirection well. Organization continues to be an area of need and is addressed by school staff. Test scores are lower than daily work. At times, this is because she is not thorough in her answers or leaves out needed details. Math continues to be a stronger area for her.

## Concerns of the Parent

**EXHIBIT A**

3/6/12 T[REDACTED] grandparents are concerned about T[REDACTED]'s reading skills and need the support she needs to make progress in school so that she can earn a diploma. They would like for her to remain at Kildonan School.

---

**Eligibility**

**Student is eligible for Special Education Services:**

**Primary Disability:** Other Health Impairment

**Secondary Disability:** Specific Learning Disability

**Reasons of eligibility determination:**
see file

---

**Special Considerations**

**There are no language needs related to limited English Proficiency.**

**The behavior of the student does not impede his or her learning or that of others**

---

**Outcomes**

**Summary of Findings from Age Appropriate Transition**
3/6/12: Parent Interview: T[REDACTED] continues to express a desire to go to college. She is not clear as to what she would like to study but has mentioned teaching, medical field, and art as different areas of interest.

02/21/2011: Interest survey conducted by TOR. T[REDACTED] reported that she is interested in the medical field, specifically, she would like to be doctor. She plans on attending college and would like to go to Purdue.

**Post-Secondary Goals:**
**Cite evidence to support the decision that an Independent Living Skills goal is not applicable:**
3/6/12 Based on reports from Kildonan School and her grandparents, T[REDACTED]'s skills in the area of independent living are adequate for her age.

2/2011 T[REDACTED] skill level in the area of independent living is that of her same-age peers as seen through guardian, parent, and teacher observations.
**Regarding Employment after high school, I will:**
3/6/12 work in an area of interest after obtaining necessary training/education.

2/2011 work within the medical field.

**Regarding Education and Training after high school, I will:**
3/6/12 go to college.

2/2011 go to college at Purdue.

**The postsecondary goals were updated annually:**
YES - postsecondary goals were reviewed and discussed and have been updated accordingly.

**Anticipated Date of Graduation:** 06/01/2016

**Graduation Option**
The student will pursue a high school diploma

Therefore, the student's academic goals will be the same as non-disabled peers at grade-level or will generally be aligned to grade-level curriculum.

---

**Participation in Testing Programs**

The student attends an accredited school and will be in grades 3-8

| | |
|---|---|
| **Math (7):** | ISTEP with accommodations |
| **Math (8):** | ISTEP with accommodations |
| **Language Arts (7):** | IMAST with accommodations |
| **Language Arts (8):** | IMAST with accommodations |
| **Social Studies (7):** | IMAST with accommodations |
| **Algebra:** | Tested course is not yet in student's course of study |
| **Language Arts:** | Tested course is not yet in student's course of study (grade 9 only) |
| **Biology:** | Tested course is not yet in student's course of study |

**Reasons for the determination of participation of testing:**

    T█████ is pursuing a diploma, therefore, she needs to take these state assessments. If she were in an Indiana school, IMAST would be chosen for Language Arts and Social Studies to reduce reading frustrations while IS-TEP+ was chosen for math since this is her stronger area.

**Plan for participation in district-wide, national or international assessments:**

    T█████will participate in any local, state, or national testing through Kildonan School with appropriate accommodations.

---
**Goals**
---

**Goal Title:** Language Arts: Written Expression
**Present Level:** 3/6/12 Based on reports from Kildonan School, T█████ is becoming adept at catching errors in letter formation but struggles to form many letters correctly. She has a solid background of phonics concepts. Written expression is still an area of weakness and she needs to improve her prewriting skills (rough draft, etc..
**Need:** T████ needs to improve her skills in the area of written expression including the writing process, applications, and conventions.
**Goal Statement:** T████ will demonstrate mastery of 75% of the listed Language Arts Indiana Acacemic standards' indicators with accommodations and supports.
**The goal has been written to support:** Employment Skills, Education /Training Skills
**Method / Instrumentation for Measuring Progress:** Teacher Observation, Written Performance, Oral Performance, Work sample, Grades, Report Cards
**Progress Monitoring Design:** Descriptive Documentation
**Standard(s) / Element(s) Aligned to Goal:**

- Discuss ideas for writing, keep a list or notebook of ideas, and use graphic organizers to plan writing.
- Create compositions that have a clear message, a coherent thesis (a statement of position on the topic), and end with a clear and well-supported conclusion.
- Use a computer to create documents by using word-processing skills and publishing programs; develop simple databases and spreadsheets to manage information and prepare reports.
- Review, evaluate, and revise writing for meaning and clarity.
- Edit and proofread one's own writing, as well as that of others, using an editing checklist or set of rules, with specific examples of corrections of frequent errors.
- Revise writing for word choice; appropriate organization; consistent point of view; and transitions among paragraphs, passages, and ideas.
- Write responses to literature that: demonstrate careful reading and insight into interpretations; connect response to the writer's techniques and to specific textual references; make supported inferences about the effects of a literary work on its audience; support statements with evidence from the text.
- Write using precise word choices to make writing interesting and exact.
- Write for different purposes and to a specific audience or person, adjusting tone and style as necessary.
- Use correct and varied sentence types (simple, compound, complex, and compound-complex) and sentence openings to present a lively and effective personal style.
- Edit written manuscripts to ensure that correct grammar is used.
- Use correct punctuation.
- Use correct capitalization.
- Use correct spelling conventions.

• Use precise language, action verbs, sensory details, appropriate and their own modifiers and the active rather than the passive voice in ways that enliven oral presentations.
• Use appropriate grammar, word choice, enunciation (clear speech), and pace (timing) during formal presentations.
• Deliver oral responses to literature that: interpret a reading and provide insight; connect personal responses to the writer's techniques and to specific textual references; make supported inferences about the effects of a literary work on its audience; support judgments through references to the text, other works, other authors, or personal knowledge.

**Objectives/Benchmarks are only required for students participating in ISTAR in lieu of ISTEP+:**
• T███ is not assessed using ISTAR, therefore, objectives are not required.

---

**Goal Title:** Reading: Decoding
**Present Level:** 3/6/12 Based on reports from Kildonan School, T███ has enjoyed reading age-appropriate books and can be a good source of information about them. She participates in class discussions of work that has been read. During oral reading, she substitutes words and needs reminders to slow her pace. She has a solid background of phonics concepts and is able to break words into parts through word division (VC/CV), compound words, and suffixes.
**Need:** T███ needs to improve her reading skills including vocabulary, decoding, fluency, and comprehension.
**Goal Statement:** T███ will demonstrate mastery (80%) of decoding of 6th grade reading passage with no accommodations.
**The goal has been written to support:** Employment Skills, Education /Training Skills
**Method / Instrumentation for Measuring Progress:** teacher/staff records from Kildonan
**Progress Monitoring Design:** Descriptive Documentation
**Standard(s) / Element(s) Aligned to Goal:**
• Compare and contrast information on the same topic after reading several passages or articles.
• Compare and contrast tales from different cultures by tracing the adventures of one character type. Tell why there are similar tales in different cultures.
• Connect and relate experiences and ideas to those of a speaker.
• Describe the differences of various imaginative forms of literature, including fantasies, fables, myths, legends, and other tales.
• Determine the theme.
• Draw conclusions or make/confirm predictions about text using prior knowledge & ideas presented in the text itself, including illustrations, titles, topic sentences, important words, foreshadowing clues and direct quotations.
• Identify informational texts written in narrative form (sometimes with undeveloped characters and minimal dialogue) using sequence or chronology.
• Identify the main events of the plot, including their causes and the effects of each event on future actions, and the major theme from the story action.
• Identify the narrator in a selection and tell whether the narrator or speaker is involved in the story.
• Locate information in reference texts by using organizational features, such as prefaces and appendixes.
• Read aloud grade-level-appropriate literary and informational texts with fluency and accuracy and with appropriate timing, changes in voice, and expression.
• Recognize main ideas and supporting details presented in expository (informational) texts.
• Use appropriate strategies when reading for different purposes.
• Use common roots (meter = measure) and word parts (therm = heat) derived from Greek and Latin to analyze the meaning of complex words (thermometer).
• Use context to determine the meaning of unknown words.
• Use details, examples, anecdotes (stories of a specific event), or experiences to explain or clarify information.
• Use knowledge of the situation, setting, and a characters traits, motivations, and feelings to determine the causes for that characters actions.
• Use knowledge of the situation, setting, and a character's traits, motivations, and feelings to determine the causes for that character's actions.
**Objectives/Benchmarks are only required for students participating in ISTAR in lieu of ISTEP+:**
• T███ is not assessed using ISTAR, therefore, there is no need for objectives.

**Present Level:** 3/6/12 Based upon reports from Kildonan School staff, T⬛ is able to read and comprehend grade level material (Of Mice and Men) and age appropriate material (The Hunger Games trilogy). She needs to be reminded to use a slower pace when reading aloud and will substitute words.

**Need:** T⬛ needs to increase her reading skills including vocabulary, decoding, fluency, and comprehension.

**Goal Statement:** T⬛ will correctly answer 80% of comprehension questions of 8th grade reading passages that she reads aloud including main idea, cause and effect, inference, details, and vocabulary.

**The goal has been written to support:** Employment Skills, Education /Training Skills

**Method / Instrumentation for Measuring Progress:** Teacher Observation, Written Performance, Oral Performance, Work sample, Grades, Report Cards, IRI, running records

**Progress Monitoring Design:** Descriptive Documentation

**Standard(s) / Element(s) Aligned to Goal:**

• Analyze idioms and comparisons, such as analogies, metaphors, and similes, to infer the literal and figurative meanings of phrases.
• Understand the influence of historical events on English word meaning and vocabulary expansion.
• Verify the meaning of a word in its context, even when its meaning is not directly stated, through the use of definition, restatement, example, comparison, or contrast.
• Compare and contrast the features and elements of consumer materials to gain meaning from documents.
• Analyze text that uses proposition (statement of argument) and support patterns.
• Find similarities and differences between texts in the treatment, amount of coverage, or organization of ideas.
• Compare the original text to a summary to determine whether the summary accurately describes the main ideas, includes important details, and conveys the underlying meaning.
• Evaluate the logic (inductive or deductive argument), internal consistency, and structural patterns of text.
• Analyze the structure, format, and purpose of informational materials such as textbooks, newspapers, instructional or technical manuals, and public documents.
• Make reasonable statements and draw conclusions about a text, supporting them with accurate examples.
• Determine and articulate the relationship between the purposes and characteristics of different forms of poetry (including ballads, lyrics, couplets, epics, elegies, odes, and sonnets).
• Evaluate the structural elements of the plot, such as subplots, parallel episodes, and climax; the plot's development; and the way in which conflicts are (or are not) addressed and resolved.
• Analyze the importance of the setting to the mood, tone, and meaning of the text.
• Identify and analyze recurring themes (such as good versus evil) that appear frequently across traditional and contemporary works.
• Identify significant literary devices, such as metaphor, symbolism, dialect or quotations, and irony, which define a writer's style and use those elements to interpret the work.
• Analyze a work of literature, showing how it reflects the heritage, traditions, attitudes, and beliefs of its author.
• Contrast points of view – such as first person, third person, third person limited and third person omniscient, and subjective and objective–in narrative text and explain how they affect the overall theme of the work.
• Analyze the relevance of setting (places, times, customs) to mood, tone, and meaning of text.

**Objectives/Benchmarks are only required for students participating in ISTAR in lieu of ISTEP+:**
• T⬛ will not be assessed using ISTAR, therefore, objectives are not needed.

---

**Goal Title:** Social/Emotional

**Present Level:** 3/6/12 Per grandparent and Kildonan staff reports, T⬛ has made a good transition to her new environment. Counseling services have been provided on -grounds. Staff reported that T⬛ has not always used her best judgment in regards to peer relations. Her grandparents reported some minor issues with her roommate.

**Need:** T⬛ needs to continue to develop appropriate coping skills and employ them within the school setting.

**Goal Statement:** T⬛ will accurately develop an appropriate strategy for school based problems she might find herself in as part of role playing with the counseling session for 8 of 10 examples provided.

**The goal has been written to support:** Employment Skills, Education /Training Skills

**Method / Instrumentation for Measuring Progress:** counselor observation

**Progress Monitoring Design:** Descriptive Documentation

**Standard(s) / Element(s) Aligned to Goal:**

- Demonstrates creativity: thinks in new ways
- Demonstrates effort: puts forth personal best to complete a task.
- Demonstrates initiative: makes the personal decision to do what needs to be done.
- Demonstrates integrity: acts according to what's right and wrong.
- Demonstrates responsibility: is accountable for own actions.

**Objectives/Benchmarks are only required for students participating in ISTAR in lieu of ISTEP+:**
- T███ is not assessed with ISTAR, therefore, objectives are not required.

---

## Accommodations

**The following accommodations have been selected for state assessment purposes and must be provided on a regular basis:**

### Social Studies (7)
- Presentation Format: Test read aloud to the student by test administrator (except items testing comprehension)
- Presentation Format: Student provided with additional examination examples
- Response Format - Student is provided with extended testing time for test sessions
- Presentation Format: Student tested in small group setting

### Math (7)
- Presentation Format: Test read aloud to the student by test administrator (except items testing comprehension)
- Presentation Format: Student tested in small group setting
- Presentation Format: Student provided with additional examination examples
- Response Format - Student is provided with extended testing time for test sessions

### Language Arts (7)
- Presentation Format: Student tested in small group setting
- Presentation Format: Test read aloud to the student by test administrator (except items testing comprehension)
- Response Format - Student is provided with extended testing time for test sessions
- Presentation Format: Student provided with additional examination examples

### Math (8)
- Timing / Scheduling - Student provided with additional breaks
- Response Format - Student is provided with extended testing time for test sessions
- Response Format: Student has use of a calculator during sessions identified as noncalculator sessions
- Setting and Environment: Student is provided preferential seating
- Presentation Format: Student tested in small group setting
- Presentation Format: Test read aloud to the student by test administrator (except items testing comprehension)
- Presentation Format: Student provided with additional examination examples

### Language Arts (8)
- Timing / Scheduling - Student provided with additional breaks
- Response Format - Student is provided with extended testing time for test sessions
- Response Format: Student has use of a computer or other assistive technology (AT) device
- Setting and Environment: Student is provided preferential seating
- Presentation Format: Student tested in small group setting
- Presentation Format: Test read aloud to the student by test administrator (except items testing comprehension)
- Presentation Format: Student provided with additional examination examples

**Description of additional accommodations that will be provided:**

---

## Services and Other Provisions

A6

**Transition Services and Activities:**

| Description | Frequency | By Whom | Date of Completion | To Support (if selected) |
|---|---|---|---|---|
| Research careers of interest | 1 per year (transition services only) | school staff and T█████ | 03/05/2013 | Employment Skills |
| **Narrative:** | | | | |

| Description | Frequency | By Whom | Date of Completion | To Support (if selected) |
|---|---|---|---|---|
| Develop schedule of classes | 1 per year (transition services only) | school personnel and T█████ | 03/05/2013 | Education /Training Skills |
| **Narrative:** | | | | |

**Document the written information that was presented to the parent and student regarding the available adult services provided through state and local agencies and other organizations to facilitate student movement from public agency to adult life.**

Information about Vocational Rehabilitation Services will be provided to T████ and her family as she progresses through high school.

**Special Education Services:**

| Description | Initiation (Date) | Frequency | Length (Time) | Duration (End Date) | Location | To Support |
|---|---|---|---|---|---|---|
| Direct Services | 04/02/2012 | 1 per day | 6 hour(s) | 03/05/2013 | Special Education Setting | Employment Skills Education /Training Skills |
| **Narrative:** direct instruction in all areas through a residential school | | | | | | |

| Description | Initiation (Date) | Frequency | Length (Time) | Duration (End Date) | Location | To Support |
|---|---|---|---|---|---|---|
| Indirect Support | 04/02/2012 | 1 per day | 18 hour(s) | 03/05/2013 | General Education Setting | Employment Skills Education /Training Skills |
| **Narrative:** residential services | | | | | | |

**Related Services:**

| Description | Initiation (Date) | Frequency | Length (Time) | Duration (End Date) | Location | To Support |
|---|---|---|---|---|---|---|
| Counseling services | 04/02/2012 | 1 per week | 45 minute(s) | 03/05/2013 | Special Education Setting | Employment Skills Education /Training Skills |
| **Narrative:** | | | | | | |

| Transportation | 04/02/2012 | per day | minute(s) | 03/05/2013 | | |

**Narrative:**

T███ family will be reimbursed mileage at the corporation rate for seven round trips per school year.

**Transportation:**

**The transit time and the transportation needs are not the same as that of non-disabled peers.**

T███ attends a residential school and her grandparents will be reimbursed for trips according to her IEP.

**Accessible Materials:**

**The student does need instructional materials to be provided in an accessible format.**

T███ reading disability and attention deficits require a multisensory approach including auditory input with visual.

**Assistive Technology:**

**The student does need assistive technology.**

voice output digital reader (Read Aloud); word processor for longer written assignments, dictation software

**Extended School Year:**

**It was determined that extended school year services are not necessary in order to provide a free and appropriate education.**

**Technical Assistance:**

**Support is necessary to provide public agency personnel with the knowledge and skills necessary to implement the student's individualized education program.**

Awareness of T███ individual needs and disabilities and supports required through her IEP; training in multi-sensory approaches to instruction

**Program Modifications:**

**Program modifications are not needed to enable the student to advance appropriately toward attaining the annual goals, to be involved in and make progress in the general education curriculum, to partic-ipate in extracurricular and other nonacademic activities or to be educated or participate with other students with disabilities and nondisabled students.**

**Periodic reports on the student's progress toward goals will be provided:**

Progress report included with report cards.

**Reasons for provisions and reasons for rejecting other options:**

The supports of her IEP are designed to help T███ develop the skills she will need to earn a high school diploma within the public school setting. A variety of options were discussed and the ones selected were deemed by the Case Conference Committee to best meet her needs at this time. Her progress will be moni-tored and the committee re-meet to review.

**The student does not have an emergency evacuation plan.**

## Least Restrictive Environment

**School of Legal Settlement:** Rensselaer Central School Corp, Rensselaer Middle School (3221)

**School of Service:** Rensselaer Central School Corp, Rensselaer Middle School (3221)

**Courses of Study focused on improving academic and functional achievement of the student in order to sup-port the attainment of post-secondary goals:**

Classes Designed to lead towards a High School Diploma: specific courses available through the guidance department.

## LRE Placement Category based on Federal Program Types:
54: Residential facility

## Additional descriptors
T███ will be placed in a residential school.

## Any potentially harmful effects of the services on the student or on the quality of services needed:
While at a residential school, T███ will not be able to be a part of her community. She will not be able to make social connections or maintain friendships in the community.

## Reasons for placement determination including reasons for rejecting other options:
The level of services for placement was selected to help T███ make progress towards earning a high school diploma and reach the goals of her IEP. She needs to have access to grade level material and curriculum and receive intense instruction in reading and math. Her current placement will provide this.

---

### General Considerations

**Student will not be able to participate in all educational programs and activities that are made available to nondisabled students.**
T███ will be in a residential program.

**Student will not be able to participate in all non-educational and extracurricular activities that are made available to nondisabled students.**
Ta███ will be in a residential program.

**Student will not participate in the general physical education program that is available to nondisabled students.**
T███will be in a residential program.

**Student will not be educated in the school (he/she) would attend if not disabled.**
T███will be in a residential program.

**The length of the instructional day will not be the same as the instructional day for nondisabled peers.**
T███ will be in a residential program.

---

### Participants

**The following individuals participated in the case conference committee meeting. Those individuals identified as Teacher of Record, General Education Teacher, Public Agency Rep and Instructional Strategist were in attendance for the entire meeting unless parental excusal was obtained before the meeting.**

| Position | Name | Title |
|---|---|---|
| Parent | ██████████ | |
| Teacher of Record | Tom Hermiz | |

**Does the Parent reject provision of FAPE and intend to unilaterally enroll child in a non public school? No**

---

### Written Notes and Other Relevant Factors

4/2/12 Mary Gates who provides counseling to T███ emailed and requested to increase her services to once a week. Mr. and Mrs. Stuff agreed to revise the IEP without a meeting to change this service. No other changes were made.

3/6/12 Purpose of the case conference was to hold T█████ Annual Case Review.

Family Report: T█████ grandparents reported that she has made a good transition to Kildonan. She has stated she really likes it there and that she now enjoys reading. They have had good contact with the staff. There was a phone call from T█████ where they were concerned that she was feeling a little depressed. They contacted the staff and they met with T█████ and were able to help her over the issue. She has been able to be involved in many of the social events and is making friends.

School Reports: Reports from staff at Kildonan were reviewed. She is making B's and C's. Test scores are lower than her daily work. This is due to not providing thorough answers or enough details. She needs reminders to slow her pace of work and reading at times but she takes redirection well.

General Discussion: Placement options were discussed. It was agreed that T█████ will continue at Kildonan for the rest of this school year and next. Her IEP was revised to reflect this. Concerns with how portions of the IEP are worded were discussed - since she is not in her public school then her IEP says she is not able to participate in PE and extra-curricular events but she is participating in these at Kildonan. Counseling services will continue twice a month. Transportation will be reimbursed for 7 trips per school year.

Plan:
1. Goals written based on T█████s needs and Indiana standards
2. Accommodations developed
3. Placement at Kildonan School
4. Counseling
5. Transportation

*** Due to technical issues with the IEP program, T█████s disability categories do not always print out correctly. Her primary disability is a specific learning disability and her secondary disability is an other health impairment.

A10

I have been presented with a copy of the Individualized Education Program (IEP) which contains:

1) A description of the action proposed by the public agency;
2) An explanation of why the public agency proposed to take the action;
3) A description of each evaluation, procedure, assessment, record, or report the agency used as a basis for the proposed action;
4) A description of other options that the case conference committee considered and the reasons why those options were rejected; and
5) A description of other factors relevant to the agency's proposal.

I understand that the public agency is not required to obtain a written parental consent and can implement this IEP ten (10) instructional days after the provision of this notice unless I challenge the proposed action by:

- Requesting and participating in a meeting with an official of the public agency who has the authority to facilitate the disagreement between the parent and the public agency regarding the action proposed or refused by the public agency.
- Securing an agreement for mediation under 511 IAC 7-45-2.
- Requesting a due process hearing under 511 IAC 7-45-3.

In the case of an initiation date that is prior to expiration of ten (10) instructional days, I give my consent to implement the IEP.

I understand that a parent of a student with a disability has protection under the procedural safeguards which are provided with this notice and that I can request a copy of the procedural safeguards at any time. The procedural safeguards document includes a list of resources to contact for assistance in understanding the provisions of Indiana special education rules.

**Sign**                                            **Date**

A11

West Noble School Corporation

**Case Conference Committee Report**



Date of Report: 08/16/2012
Individual Education Program
IEP Effective Date:
08/17/2012 to 08/16/2013

| **Student:** T███████S█ | **STN:** 321303115 |
|---|---|

**Date of Birth:** 09/30/1997          **Age:** 14          **Current Grade:** 9          **Gender:** F

**Guardian Information**

Relation: Legal Guardian ███
Name: ████████████
Business Phone:
Home Phone: 1-2█████████
Mobile Phone:
Address: ████████████
████████████

Relation:
Name:
Business Phone:
Home Phone:
Mobile Phone:
Address:

**Purposes of Case Conference**

Transition, Reevaluation Review, Move-in, Revise IEP

**Case Conference Meeting Scheduled**

**Date:** 08/14/2012          **Time:** 1:00          **Place:** West Noble High School

**Evaluation Information and Student Data**

**Strengths of the student:**

8/6/2012

T██ is a very friendly young lady who loves sports and is already involved in attending volleyball practice. She participated in summer softball within the community. She enjoys doing math and was excited to get to do math problems during testing. T███ is interested in attending a four year college after graduating from high school. Information from The Kildonan School states that in language, T███ displayed enthusiasm and determination and arrived each day ready to learn. They also stated that when she resisted distractions, she was a hard worker.

**Response to instructional strategies and research-based interventions:**

The purpose of this conference is to develop a re-evaluation/move-in IEP. This is not an initial conference so this is not a required field.

**Progress Monitoring Data:**

T███s progress was shown by the following tests taken at The Kildonan School.

SS=Standard Score/GE=Grade Equivalent

Woodcock Reading Mastery Test:
Word Identification:
February 2012: SS=73 GE=2.9 May 2012: SS=72 GE=3.4
Word Attack:
February: SS=75 GE=2.7 May 2012: SS=87 GE=4.6

Grey Oral Reading Test: 4th Edition:
Rate: February 2012: SS=4 GE=3.7 May 2012: SS=7 GE=5.7
Accuracy: February 2012: SS=3 GE=3.0 May 2012: SS=6 GE=4.7
Fluency: February 2012: SS=1 GE=3.2 May 2012: SS=4 GE=5.4

Exhibit B

Gates-MacGinitie Reading Tests: Fourth Edition
Vocabulary: February 2012: GE=4.4 May 2012: GE=5.6
Comprehension: February 2012: GE=3.1 May 2012: GE=2.6

Spelling:
Test of Written Spelling-4
February 2012: SS=85 GE=4.4 May 2012: SS=85 GE=4.4

**Present level of academic and functional performance:**

Previous evaluations have indicated some areas of concern related to behavioral/emotional factors. An evaluation has been requested to determine whether T███████demonstrates significant difficulties in these areas that would qualify her for additional services under emotional disability. A language evaluation has been requested to determine whether T██ demonstrates difficulties in this area that would qualify her for services under language impairment.

6/1/2012
At The Kildonan School T█████ instructor, Kenneth Borden, stated that T█ showed that she was capable of doing solid work. However, as the term progressed her best work became more and more sporadic. She scored a D+ on the term exam.

Alli Helfand,Literature teacher, from The Kildonan School stated that T███showed inconsistant progress. She demonstrated a high level of comprehension. She demonstrated disctractability and lacked focus in the classroom.

Previous evaluations have indicated some areas of concern related to behavioral/emotional factors. An evaluation has been requested to determine whether T███demonstrates significant difficulties in these areas that would qualify her for additional services under enotional disability. A language evaluation has been requested to determine whether T██ demonstrates difficulties in this area that would qualify her for services under language impairment.

Because T██ has had some previous behaviors of concern and ADHD types of behaviors, the case conference committee recommended an ED evaluation to determine if they would be interfering with her academic performance.

8/6/2012
When T██ took the KTEA, she scored a standard score of 84 in reading. This is considered below average. She scored a 89 standard score in math which is considered average. In her writing, she scored a standard score of 89. Carole Matthews administered this assessment.

KTEA II Scores:
Reading: Standard Score: 84
Writing: Standard Score 89
Writing: Standard Score 89
Breif Achievement Composite: Standard Score 86

T██ indicated that she learns best by using a tactile-kinesthetic learning style, while her secondary learning style was visual. This information was based on the Marcia Connor, What's Your Learning Style Assessment.

See MD report attached for further information.

B2

The case conference committee has determined that there is sufficient data to plan appropriately for the student. Therefore, reevalation is not required at this time for the purposes of considering eligibility or providing additional information regarding the student's special education and related service needs. The public agency must consider reevaluation for each student receiving special education and related services at least once every three (3) years unless the parent and the public agency agree that it is unnecessary. In addition, the public agency must consider reevaluation if the public agency determines at any time during the three (3) year cycle that additional information is needed to address the special education or related services needs of the student, or if the student's parent or teacher requests an evaluation.

## Concerns of the Parent

Mr. S██ feels that when T████ is with her peers, her school work is negatively effected. She is not a good test taker. Although the grandparents explained that the reason her schoolwork declined at Kildon ws that she was experiencing medical problems at the time that may have effected her school work. Mrs. S████ stated that her parents may have also contributed to some of her distractions at school. The parents were playing games with T████ through social media. Obviously, there are a lot of factors that contribute to success. He feels the previous school rejected their independent evaluation. His concern is education. Mr. S███ felt that some teachers were not grading T█████ the same way that the other students were being graded. Sometimes she passed classes that they felt she shouldn't have passed. We have concerns that she learns and they want her to graduate from high school. She learns differently and she needs to have instruction in the way that she learns. A high school diploma is her ticket to the future.

## Eligibility

**Student is eligible for Special Education Services.**

**Primary Disability:** Specific Learning Disability

**Secondary Disability:** Other Health Impairment

**Reasons of eligibility determination:**
█████ has been identified for special education services under Specific Learning Disabilities and Other Health Impairment. She was also identified for services through her most current psychological test results. According to previous assessments and other related information from previous teachers, T████ needs the support of special education services to be successful in her high school career.

## Special Considerations

**There are no language needs related to limited English Proficiency.**

**The behavior of the student does not impede his or her learning or that of others**

## Outcomes

**Summary of Findings from Age Appropriate Transition**
T████'s psychological testing, interest inventory, learning style assessment, and independent living skills worksheet may be found in T████'s special education file. T████ was interviewed on August 2-3, 2012 to review her transition goals. She would like to attend a four year college after she graduates from high school. She will be taking a Career's class at West Noble High School to determine what field she would like to pursue after she earns her general diploma. T████ took the What's Your Learning Style assessment and it was determined that her primary learning style was tactile/kinesthetic and her secondary learning style was visual. She completed the Holland interest inventory and scored strongest in the areas of investigative(analyze,observe, and investigate), realistic(building and repairing things), and social (likes to inform, enlighten, help, train, or develop). These support her desire to become an engineer when she graduates. She will be attending a college fair in October of 2012 to meet with college representatives. T████ will also be meeting with her guidance counselor to create a four year educational plan.

**Post-Secondary Goals:**
**Cite evidence to support the decision that an Independent Living Skills goal is not applicable:**

B3

On August 2, 2012, T███████completed the Planning For Community Living Worksheet. The results show that T█████will be able to live independently.

**Regarding Employment after high school, I will:**
become an engineer. (August 7, 2012)

**Regarding Education and Training after high school, I will:**
attend a four year college. (August 2, 2012)

**The postsecondary goals were updated annually:**
YES - postsecondary goals were reviewed and discussed and have been updated accordingly.

**Anticipated Date of Graduation:** 06/01/2016

**Graduation Option**
The student will pursue a high school diploma

Therefore, the student's academic goals will be the same as non-disabled peers at grade-level or will generally be aligned to grade-level curriculum.

## Participation in Testing Programs

Student will be in high school

High School Diploma
**Algebra:**            End of Course Assessment with accommodations
**Language Arts:**      Tested course is not yet in student's course of study (grade 9 only)
**Biology:**            Tested course is not yet in student's course of study

**Reasons for the determination of participation of testing:**
█████is pursuing a diploma. She will need to pass her ECA exams in order to graduate from high school.

**Plan for participation in district-wide, national or international assessments:**
T████will participate in the ECA Algebra testing. She will be able to take her exam with extended time (x50%), and test taken in a small group (1-20 students). T████will need to participate in this testing in order to graduate.

## Goals

**Goal Title:** Language Arts: Written Expression
**Present Level:** Based on reports from Kildonan School, T█████is becoming adept at catching errors in letter formation but struggles to form many letters correctly. She has a solid background of phonics concepts. Written expression is still an area of weakness and she needs to improve her prewriting skills (rough draft, pre-conference planning, outlining for organization of topics.) On August 2, when T████took the KTEA Writing test, she scored an 89 (Standard score), which falls in the average range.
**Need:** T█████needs to improve her skills in the area of written expression including the writing process, applications, and conventions. She needs these skills to pass her content area classes. Not having these skills will make it difficult for T████to pass her End of Course English 10 exam. She will need to pass this test to graduate.
**Goal Statement:** T████will demonstrate mastery of 75% of the listed Language Arts Indiana Acacemic standards based objectives with accommodations and supports by the end of the 2012-2013 school year.
**The goal has been written to support:** Employment Skills, Education /Training Skills
**Method / Instrumentation for Measuring Progress:** Informal assessments, such as writing samples graded by the writing rubric.
**Progress Monitoring Design:** Descriptive Documentation
**Standard(s) / Element(s) Aligned to Goal:**
 • Create compositions that have a clear message, a coherent thesis (a statement of position on the topic), and end with a clear and well-supported conclusion.
 • Review, evaluate, and revise writing for meaning and clarity.
 • Write using precise word choices to make writing interesting and exact.

B4

- Write for different purposes and to a specific audience or person, adjusting tone and style as necessary.
- Use correct and varied sentence types (simple, compound, complex, and compound-complex) and sentence openings to present a lively and effective personal style.
- Use correct punctuation.
- Use correct capitalization.
- Use correct spelling conventions.

**Objectives/Benchmarks are only required for students participating in ISTAR in lieu of ISTEP+:**
- 1. Using the WNHS writing application rubric, T█████ will score a 4 (good) in the area of content, which includes fairly consistent focus, sufficient details, include some facets of topic explored. 2. Using the WNHS writing application rubric, █████ will score a 4 (good) in the area of organization which includes a clear introduction, body, and conclusion, sensible order of ideas, some transitions, and some topic sentences. 3. Using the WNHS writing rubric, T████ will score a 4 (good) in the area of style which includes appropriate vocabulary, verbs, and descriptive language, some variety in sentence complexity, and an obvious attempt at using writer's techniques, which include dialogue, imagery, and genres. 4. Using the WNHS writing rubric, T████will score a 4 (good) in the area of voice which includes an occassional slip of register (formal, personal, dialect), general sense of audiance, and original perspective.

Scoring for WNHS writing application rubric: 1 - weak 2 - poor 3 - fair 4 - good 5 - strong 6 - outstanding

---

**Goal Title:** Reading: Decoding
**Present Level:** Based on reports from Kildonan School, T████ has enjoyed reading age-appropriate books and can be a good source of information about them. She participates in class discussions of work that has been read. During oral reading, she substitutes words and needs reminders to slow her pace. She has a solid background of phonics concepts and is able to break words into parts through word division (VC/CV), compound words, and suffixes. On August 2, 2012, T████ scored a standard score 84 on the KTEA Reading section. This score is below average.
**Need:** T████ will need to be able to use her decoding skills. These skills are necessary when coming across unknown words. She will utilize these skills when reading across the content areas. These skills are also necessary when T████ takes the ECA English 10 exam.
**Goal Statement:** T████ will demonstrate mastery, 80% of decoding skills from the Indiana Standard based objectives which are shown below, by the end of the 2012-2013 school year.
**The goal has been written to support:** Employment Skills, Education /Training Skills
**Method / Instrumentation for Measuring Progress:** Teacher selected assessments
**Progress Monitoring Design:** Descriptive Documentation
**Standard(s) / Element(s) Aligned to Goal:**
- Use common roots (meter = measure) and word parts (therm = heat) derived from Greek and Latin to analyze the meaning of complex words (thermometer).
- Use context to determine the meaning of unknown words.

**Objectives/Benchmarks are only required for students participating in ISTAR in lieu of ISTEP+:**
- 1. T████ will correctly identify prefixes and suffixes in context. 2. T████will be able to correctly identify root words: 3. T████will be able to determine unknown words by using context clues.

---

**Goal Title:** Reading: Comprehension
**Present Level:** When given the KTEA Reading Comprehension assessment on August 2, 2012, T████ scored a standard score of 84 (below average).
**Need:** T████ needs reading comprehension skills to be successful in high school. These skills will help her in her content area classes. She will also need reading comprehension skills to pass the ECA 10 English exam. She will need to pass this exam to graduate.
**Goal Statement:** T████ will master 75% of the Indiana Standard based objectives shown below by the end of the 2012-2013 school year.
**The goal has been written to support:** Employment Skills, Education /Training Skills
**Method / Instrumentation for Measuring Progress:** teacher selected assessments

B5

**Progress Monitoring Design:** Descriptive Documentation
**Standard(s) / Element(s) Aligned to Goal:**
- Evaluate the aesthetic qualities of style, including the impact of diction and figurative language on tone, mood, and theme.
- Explain how voice and the choice of a narrator affect characterization and the tone, plot, and credibility of a text.
- Explain how voice, persona, and the choice of narrator affect the mood, tone, and meaning of text.

**Objectives/Benchmarks are only required for students participating in ISTAR in lieu of ISTEP+:**
- 1. ▇▇ will be able to identify the main idea of a given passage. 2. ▇▇ will be able to identify the events and sequences of a given passage. 3. ▇▇ will be able to predict the character's future when reading a given passage. 4. ▇▇ will be able to determine the author's bias or viewpoint when reading a given passage. 5. ▇▇ will understand the definitions of similies and metaphors when used in written passages.

---

**Goal Title:** Organization
**Present Level:** At The Kildonan School, Kenneth Borden reported that ▇▇ was to correct a D+ exam, but returned it five minutes later with a piece of scrap paper, virtually unused. Her Literature teacher, Mrs. Alli Helfand, stated that ▇▇ could be distracted and sometimes lacked focus in the classroom. She had failed to submit her assignments. Mr. Scribner stated that ▇▇ struggled to submit her assignments on time and was inconsistent with her progress.
**Need:** ▇▇ needs to be able to stay focused and organized during her high school career. She will need these skills to be successful in her classes.
**Goal Statement:** ▇▇ will turn in assigments in her regular classroom 80% of the time each grading period of the 2012-2013 school year.
**The goal has been written to support:** Employment Skills, Education /Training Skills
**Method / Instrumentation for Measuring Progress:** INOW Progress Reports
**Progress Monitoring Design:** Descriptive Documentation
**Standard(s) / Element(s) Aligned to Goal:**
- Demonstrates organization: plans, arranges and implements in an orderly way.
- Demonstrates responsibility: is accountable for own actions.

**Objectives/Benchmarks are only required for students participating in ISTAR in lieu of ISTEP+:**
- 1. ▇▇ will utilize agenda to keep track of assignments and tests. 2. ▇▇ will turn in assignments in each class.

---

| Accommodations |
| --- |

**The following accommodations have been selected for state assessment purposes and must be provided on a regular basis:**
  **Algebra**
    •Timing / Scheduling: Student is provided with extended testing time for test sessions
    •Response Format: Student has use of a calculator during sessions identified as noncalculator sessions.
    •Setting and Environment: Student tested in small group setting
    •Presentation Format: Test read aloud to the student by test administrator (except items testing comprehension)

**Description of additional accommodations that will be provided:**
8-14-2012
Special education staff will check ▇▇ agenda/notebook.
▇▇ will receive support for her English 9, Algebra 1, and Math lab classes. Sepcial education staff will be present in each of these classes.
▇▇ will be directed by staff to review her assignments before submitting them to her teachers.
▇▇ is able to go to the LRC room to have tests read aloud and extended time.
Copy of class notes provided.



**Services and Other Provisions**

**Transition Services and Activities:**

| Description | Frequency | By Whom | Date of Completion | To Support (if selected) |
|---|---|---|---|---|
| Meet with Guidance Counselor to create four year plan | 1 per year (transition services only) | Guidance Counselor | 08/16/2013 | Employment Skills Education /Training Skills |
| **Narrative:** Taylor will meet with her guidance counselor to create her four year educational plan. | | | | |
| Enroll in Preparing for College and Careers | 1 per day | General Education Teacher | 08/16/2013 | Employment Skills Education /Training Skills |
| **Narrative:** Taylor will attend Preparing for College and Careers class for one trimester, seventy minutes per day. | | | | |

**Document the written information that was presented to the parent and student regarding the available adult services provided through state and local agencies and other organizations to facilitate student movement from public agency to adult life.**
A handout that describes vocational rehabilitation services was given to the parent. A contact number was also included.

**Special Education Services:**

| Description | Initiation (Date) | Frequency | Length (Time) | Duration (End Date) | Location | To Support |
|---|---|---|---|---|---|---|
| Direct Services | 08/17/2012 | 1 per day | 25 minute(s) | 08/16/2013 | Special Education Setting | Employment Skills Education /Training Skills |
| **Narrative:** Taylor will receive reading instruction for 25 minutes daily. | | | | | | |
| Indirect Support | 08/17/2012 | 2 per day | 70 minute(s) | 08/16/2013 | General Education Setting | Employment Skills Education /Training Skills |
| **Narrative:** Taylor will receive support for her English 9, Algebra 1, and Math Lab classes. Special education staff will be present in each of these classes. | | | | | | |

**Related Services:**

No Related Services required at this time.

**Transportation:**
The transit time and the transportation needs are the same as that of non-disabled peers.



B7

**Accessible Materials:**
The student does not need instructional materials to be provided in an accessible format.

**Assistive Technology:**
The student does not need assistive technology.

**Extended School Year:**

It was determined that extended school year services are not necessary in order to provide a free and appropriate education.

**Technical Assistance:**
Support is not necessary to provide public agency personnel with the knowledge and skills necessary to implement the student's individualized education program.

**Program Modifications:**
Program modifications are not needed to enable the student to advance appropriately toward attaining the annual goals, to be involved in and make progress in the general education curriculum, to participate in extracurricular and other nonacademic activities or to be educated or participate with other students with disabilities and nondisabled students.

**Periodic reports on the student's progress toward goals will be provided:**
Teacher selected tests will be provided each grading period in order to monitor ██████ progress on goals.

**Reasons for provisions and reasons for rejecting other options:**
██████ does not need special transportation because she is able to ride the regular school bus. She does not need accessible materials, assistive technology, technical assistance, and program modifications because she is able to access the curriculum. She also does not need an extended school year because her skills have not significantly regressed, nor does she meet the other criteria for ESY.

**The student does not have an emergency evacuation plan.**

| Least Restrictive Environment |
| --- |

**School of Legal Settlement:** West Noble School Corporation, West Noble High School (6489)

**School of Service:** West Noble School Corporation, West Noble High School (6489)

**Course of Study focused on improving academic and functional achievement of the student in order to support the attainment of post-secondary goals:**
General Diploma

**LRE Placement Category based on Federal Program Types:**
50: Regular classroom (In a regular classroom for 80% or more of the day)

**Additional descriptors**
██████s general education classes are: English 9, Algebra 1, Algebra Enrichment, Environmental Science, Prep CC, Health, PE, and LRC.

**Any potentially harmful effects of the services on the student or on the quality of services needed:**



A potentially harmful effect for T███ might be that she might need more support while in general education classes. The positive effects for being in general education classes outweigh the negative effects. Positive effects for T██ would be the socialization with the general education students and higher expectations in her academics. T███will benefit from attending general education classes with the support of the special education staff.

**Reasons for placement determination including reasons for rejecting other options:**

T███ latest psychological and teacher observations from The Kildonan School, as well as recent testing and evaluation, are reasons for her placement in the special education program. More time spent in the special education program would be too restrictive while less time spent in the special education program would not offer enough support. Placement in a residential school would be too restrictive as T███has begun to make commections within the West Noble community. She has expressed her desire to compete in WN sports. She has said she does not want to go back to Kildonan.

---

**General Considerations**

Student will be able to participate in all educational programs and activities that are made available to nondisabled students.

Student will be able to participate in all non-educational and extracurricular activities that are made available to nondisabled students.

Student will participate in the general physical education program that is available to nondisabled students.

Student will be educated in the school (he/she) would attend if not disabled.

The length of the instructional day will be the same as the instructional day for nondisabled peers.

---

**Participants**

The following individuals participated in the case conference committee meeting. Those individuals identified as Teacher of Record, General Education Teacher, Public Agency Rep and Instructional Strategist were in attendance for the entire meeting unless parental excusal was obtained before the meeting.

| Position | Name | Title |
|---|---|---|
| Public Agency Rep | Gregory Baker | WNHS Principal |
| Parent | ███████████ | |
| Teacher of Record | Carole Matthews | |
| General Ed Teacher | Chris Eash | WNHS Math Teacher |
| Instructional Strategist | Carole Matthews | |
| WNHS Resource Teacher | Kathleen Marano-Jones | |
| WN Speech | Katie Gregg | |
| School Psychologist | Toni English Psy. D. | |
| WNHS Resource Teacher | John Marano | |
| Executive Director of NEISEC | Mary Burton | |
| Assistant Director of NEISEC | Karla Mettert | |
| Asst. Principal | Mike Burke | |
| School Counselor | Tracey Werling | |
| Assistant Principal | Amanda Nine | |

**Does the Parent reject provision of FAPE and intend to unilaterally enroll child in a non public school? No**

---

**Written Notes and Other Relevant Factors**

8/14/2012:



Case Conference Meeting:
Introductions were made. Parent rights were offered. ███ and ████ S███ said that they do not need another copy and do not need them explained.
Permission was given by ███ and ███. S██ for attendees not on the invitation list (Mike Burke, Traci Werling, Amanda Nine) to stay at the conference.

Participants include:
Mrs. Mary Burton, Executive Director NEISEC
Dr. Toni English, School psychologist
Mrs. Carole Matthews, Resource teacher WNHS
Mr. Marano, Resource Teacher WNHS
Mr. Greg Baker, WNHS principal
Mr. Chris Eash, General education math teacher
Ms. Marano, Resource teacher, WNHS
Ms. Amanda Nine, Assistant Principal, WNHS
Ms. Traci Werling, WNHS guidance
Ms. Katie Gregg, Speech, language pathologist
Mrs. Karla Mettert, County director, NEISEC
██ and ██ S██ grandparents, guardians
Mr. Mike Burke, Assistant Principal WNHS

T███ was not present. When asked why, the grandparents stated that she has never been involved, just never did.

Dr. English and Mrs. Carole Matthews talked about the opportunity to get to know T███, working with testing.

Dr. English went over her testing results, talking about T███'s strengths and areas of concern. Her weakness seems to be short-term memory/visual processing/fluid reasoning. T███ tended to respond quickly, impulsively. Sometimes T███ would correct herself, sometimes not. Dr. English did not see signs of hyperactivity.
Dr. English also reported on adaptive behaviors. There were differences between grandparents' responses. Mr. ██ remarked that it was interesting and that he was more critical.
On the Depression scale, T███ did not report any difficulties. There were also no symptoms of anxiety - no elevated areas. On the BASC, all areas were average, except Locus of Control: Relations with Parents. This suggests that T███ feels like she has little control over her life and is not involved in family decision making.
On the BASC, T███ groaned because she had done this test before. It was reported that T███ scored significant in the area of feeling she has little or no say in her life and relationships with parents.
Mr. S██ noted that there was not much of a relationship with her parents. T███ gets her hopes up, but there can be no follow-through. Mr. ███ scored T███ within the significant range on somatization. He noted that she did have some medical problems. Mrs. S██ scores were within normal limits in all areas.
Mrs. Katie Gregg, speech, discussed her assessments. T███ scored in the average range. No services were recommended. We wanted to reevaluate due to a recommendation from previous testing from Dr. Erenburg.
After this portion of the conference, Mr. and Mrs. S██ were asked if they had any questions. They both stated no.

Mrs. Matthews went through her testing. She reported that T███ was very friendly and polite. She loves math. On the learning style assessment, it was reported that T███'s learning style is tactile/kinesthetic, with a secondary of visual. On the KTEA-II, T███ scored within the average range in writing and math; and within the below average range in reading.

Mrs. Matthews began going through the draft copy of the IEP. Mrs. Burton stated that it would be easier if we went through the IEP step by step. Mr. and Mrs. S██ were OK with this.

All the parent information was checked by the grandparents. All information was correct. Mrs. Matthews began reading through the IEP. She noted that T███ expressed a desire to get her work done on time.

B10

Present levels - Mrs. Matthews read information from Kildonan teachers. To get further in depth, Mrs. Mettert read other reports from other Kildonan teachers. While attending Kildonan, several language arts components had improved with the exception of word identification and comprehension which decreased. Spelling remained the same. No pretest was given for math. Reading comprehension at Kildonan had gone down.

Concerns of the grandparents include:
Graduating from high school.
Better at hands-on activities
Hasn't had much success at school
Wants her to be successful
Not a good test taker
Want her to be academically successful - concerned about her in general education classes as she may not make progress
Having programs presented the way T███ learns
A high school diploma is the key to her success

Mrs. Burton stated that according to previous data, behavior does not impede her learning. Dr. English administered some testing and reported that T███'s behavior does not impede her learning. Mrs. S██ said that this is correct. Mrs. Burton stated that we picked up on some things, typical of ADD.

The transition area was discussed. Mrs. Burton explained what this portion involves. T███ wants to become an engineer and attend a 4-year college. Grandparents were given a pamphlet outlining vocational programs.

Mrs. Burton mentioned that before we go to the goals section, this is a draft and asked the grandparents if anything needed to be changed or added. T███'s transition information cannot be changed, but Mrs. Burton asked if there are any questions. Mrs. S██ stated no.

In the goals sections, there are four goals: Writing, Reading decoding, reading comprehension, and organization. Accommodations are included in order for T███ to meet these goals. Mrs. Burton mentioned that these were based on the testing Dr. English had done and are meant to level the playing field. The goals that are written are what she can accomplish in a year's time.

The services and provisions portion included items to best serve T███ and to meet her needs.
1 - Transition - She will meet with guidance and prepare for her future by enrolling the the careers class.
2 - Direct services will include direct reading instruction 25 minutes per day.
3 - Indirect services twice daily for seventy minutes for support in the regular education classes. A special education person will be present in English 9, Algebra I and Math lab.

Mr. Eash, general education math teacher, explained how the inclusion class looks at school. Mr. S██ asked about what the class size would be. Mr. Eash replied that there will be approximately 20-24 students in class. Mr. Baker stated that the extra help will be in the classroom to address different learning styles. This is a team teaching approach.

In the related services section, Mrs. Burton explained all the different areas and why T███ does not qualify for these at this time, supported by the data we received from the assessments completed.

Mr. S██ asked about teacher qualifications. Mrs. Burton stated that all teachers working with T███ are highly qualified and licensed in their specific areas. She stated that we will give T███ the same education as everyone else, but in a different way, for her to learn. The reasoning is because T███'s goal is a high school diploma. Grades and reports will be sent six times per year. Mr. and Mrs. S██ can also have updates at any time. Mr. Baker reported that grades are updated every two weeks in INOW.

In the least restrictive environment area, Mrs. Burton proposed that T███ receive services at WNHS with a general course of study for diploma. The classes were listed that T███ would enroll. These will be finalized when T███ meets with her guidance counselor.



B11

T███ will receive reading instruction on an individual basis. She would be pulled out for extra help in reading instruction with a multi-sensory approach that Mrs. Matthews has been trained in. A residential placement outside her home district would be too restrictive. T███ is already making new friends and participating on sports teams at West Noble High School. The reason for this placement is based on reports from Kildonan, assessments from Dr. English and Mrs. Matthews. T███ has reported to Dr. English and Mrs. Matthews that she does not want to go back to Kildonan.

Mr. S███ stated that it is very typical that T███ would not want to go back to school. She has friends at Kildonan and Rensselaer. T███ changes her answers as to where she wants to go. Kildonan has small classes, extra assistance. She has learned to write in cursive at Kildonan.

Dr. English stated that it seemed like relationships are important to T███. Mr. S███ mentioned that sometimes too much so.

Mrs. Burton stated that the grandparents said some of T███ issues are with abandonment and she has expressed that she wants to stay close to her grandparents. Mrs. Burton stated that it is our stance that we feel we can serve her well and we are ready and intend to do that. This is what we are proposing.

Mr. S███ stated that this would be her third school she has attended recently. Her current IEP states that she will go back to Kildonan and he agrees. He stated that there was a lot of positives coming from Kildonan. He feels that T███ was experiencing success at Kildonan. Mr. S███ stated that T███ was in the hospital with a medical condition and for a few weeks she was on pain medication. Mr. S███ reported that T███ improved in most things. He stated that they value education and she is not ready to pass ECAs. He doesn't know how she will get through Algebra ECA at WNHS. He feels WNHS is a good school and is sincere with their educational intent, but plan on sending T███ to Kildonan. Mr. S███ stated that we were at an impass.

Mrs. Matthews explained further the Herman Reading Program, which uses different modalities (seeing,hearing, touching). Mr. S███ stated that he has been exposed to this program - his son used it with success (he is now getting his PhD.) T███ has different genetics and she never got a consistent multi-sensory approach and it was a hit or miss. Not all of her teachers in the past were trained. Mr. S███ noted that he believes we are very sincere and he is not knocking our program. He stated that we are at an impass.

Mrs. Burton stated that she respects his opinion and his choice to send her to a private school. Our offer for FAPE is WNHS.

Mr. S███ stated that we will have a due process and he will contact his lawyer.

Mrs. Burton asked if there was a reason they wanted the school to send T███ to Kildonan.

Mr. S███ stated that they had tried the public schools. They have asked for things that T███ needs and that had not happened. It may be unfortunate that we moved to a different school corporation. Her past educational system has failed her. He stated that they are not novices to this process. He stated that they asked for reading help and didn't get it.

Mrs. Burton asked Mr. S███ to give WNHS an opportunity to meet T███ needs. She requested that he allow WNHS to implement the IEP and meet regularly to make sure he is confident in how T███ progress is going. She asked them to consider not basing their decision on past schools.

Mrs. S███ stated that they want her to go where she can have success and has not seen it in public education. They have tried the public education route and it hasn't worked. She feels the public schools T███ has attended have failed her. T███ does not have the reading basics to put her in a high school setting when reading at that level will be a hindrance.

B12

Mrs. Burton stated that was why we will provide 25 minutes per day of direct services for reading with Mrs. Matthews. She stated that we will put forth every effort to make sure it happens. Mrs. Burton feels that considering the data, WNHS can meet T████ educational needs. We understand if you want to send T████ to Kildonan, but our committee's position is that we don't feel she needs Kildonan to get FAPE.

Mr. S████ stressed that they have equal say on the case conference and they feel Kildonan is the best placement. He said that they have tried public education and were dedicated, but she fell behind. They have paid for two independent evaluations - one was ignored and one they accepted. We never received the accommodations from the previous school.

Mr. Baker asked if they would like to have a conversation with Dr. VanDuyne, superintendent of West Noble Schools. The S████ agreed.

Mr. S████ stated that this seems like a fine group of people. He spoke about a middle school teacher at West Noble who had a great program in math (Mr. Kevin Becker). He was sure we had a fine staff and he has no reason to doubt that this is a fine program. They have not have enough time in this area to judge the program.

Mrs. Burton stated that we will be reviewing and combining the notes and the S████ will receive a final copy.


T████ S████ Conference 7-30-2012 4:00 p.m. WNHS

Those in attendance:
Mrs. Mary Burton, NEISEC Executive Director
Mr. Greg Baker, principal WNHS
Mrs. Carole Matthews, Learning Disabilities Teacher WNHS
Dr. Toni English
Mr. Chris Eash, General Ed. Math Teacher
Mr. & Mrs. S████ grandparents, guardians
Mrs. Karla Mettert, NEISEC Noble County Director


Introductions were made. Mrs. Mary Burton offered parent rights and offered to explain. The S████ declined having the rights explained.
Mrs. Burton stated that we don't know T████ well and would like to get to know her. We received testing from the previous schools, but would like to have some additional information.
Dr. Toni English shared information that she gleaned from the previous testing. She would like to get some information in cognitive testing, memory, and problem solving. She also mentioned a behavior assessment. We discussed counseling at her previous schools. T████ saw a counselor at Kildonan once per week (Ms. Mary Gates New York). This counseling has been continued over the summer while she is at home (Ms. Rebecca Myers - Goshen). Mr. and Mrs. S████ noted that T████ has emotional issues to deal with, such as not having active parents. They stated that she has an emotional void in her life. Dr. English also requested an updated ADD questionnaire. T████ is currently not on any medication. Mr. and Mrs. S████ have tried medicine in the past for a year and a half without success. Toni wondered about T████s tolerance level with testing. Dr. Erenberg (previous testing- 2011) didn't notice ADHD. Mr. and Mrs. S████ noted that when T████ doesn't know how to do something, she closes down.

Mrs. Carole Matthews will administer a KTEA to get present academic levels and an interest inventory.

T████ likes animals, sports. She wants to continue her education by attending college. She is currently trying out for the volleyball team at WNHS.

Mrs. Matthews spoke about the many opportunities West Noble has to offer. They use the Herman Reading Program with very small groups 2-3 students. They utilize a LRC learning resource center with three resource teachers. These teachers individualize as to what each student needs. T██ would receive extra support in Biology and Social Studies and be mainstreamed as needed. Mr. Baker noted that the school tries to keep the number of students low in each class. They have net books with word cue programs which also help with writing and they have books on CDs. There is a study hall available for T██ where she would receive help with any areas of difficulty, also a homeroom period. West Noble uses a Marzano approach, which is a multi-sensory approach to instruction, utilizing a hands-on approach with groups. It addresses all learning styles to keep students engaged.

Mr. and Mrs. S██ stated that T██ learns best through auditory and visual learning. She is not a test-taker. They are looking forward to a program where she is not placed in general ed and continuing to fail. She has a great memory for music. They would like her to receive a regular high school diploma. They stated she didn't learn to read and she will need reading for everything. T██s father was dyslexic. T██was not taught the way she learns. Some people trained in Wilson tried, but it was a hit or miss.

Mr. Chris Eash, math teacher, discussed his math program, including trimesters. His class spirals all year to keep information in the students' memory. T██ will need to take an ECA in Algebra I and English 10. She will need these to graduate. In her junior year, there may be a PARCC assessment (English)

8/14/2012
Introductions were made.
Permission was given by Mr. and Mrs. S██for attendees not on the invitation (mike Burke, Traci Werling, Amanda Nine) to stay at the conference.

Parent rights were given.

(8/14/2012) Toni English, Psychologist, went over psych report.
(8/14/2012) Katie Gregg, Speech Language Pathologist, went over speech testing. Based on the speech evaluation results, T██ does not qualify for services under speech.
(8/14/2012) Carole Matthews, Resource teacher, went over academic test results.
Carole Matthews went over IEP.
Karla Mettert read additioal comments on T██ school performance provided by teachers from The Kildonan School.

8/14/2012: Mary Burton wanted to note that the psychological testing did not result in receiving services for behavior.

8/14/2012
Her previous IEPs indicate that behavior does not impede her learning or the learning of others.

Mary Burton went into further detail concerning the Provisions section of the IEP.

Mary Burton went over the LRE Placement section of the IEP.

**Notice of Implementation**

I have been presented with a copy of the Individualized Education Program (IEP) which contains:

1) A description of the action proposed by the public agency;
2) An explanation of why the public agency proposed to take the action;
3) A description of each evaluation, procedure, assessment, record, or report the agency used as a basis for the proposed action;
4) A description of other options that the case conference committee considered and the reasons why those options were rejected; and
5) A description of other factors relevant to the agency's proposal.

I understand that the public agency is not required to obtain a written parental consent and can implement this IEP ten (10) instructional days after the provision of this notice unless I challenge the proposed action by:

- Requesting and participating in a meeting with an official of the public agency who has the authority to facilitate the disagreement between the parent and the public agency regarding the action proposed or refused by the public agency.
- Securing an agreement for mediation under 511 IAC 7-45-2.
- Requesting a due process hearing under 511 IAC 7-45-3.

In the case of an initiation date that is prior to expiration of ten (10) instructional days, I give my consent to implement the IEP.

I understand that a parent of a student with a disability has protection under the procedural safeguards which are provided with this notice and that I can request a copy of the procedural safeguards at any time. The procedural safeguards document includes a list of resources to contact for assistance in understanding the provisions of Indiana special education rules.

_____        _____
**Sign**                                 **Date**



# Request for Due Process Hearing

Indiana Department of Education
**SUPPORTING STUDENT SUCCESS**

http://doe.state.in.us/exceptional/speced/dp-dueprocess.html

Indiana Department of Education
Office of Legal Affairs
151 W. Ohio Street
Indianapolis, IN 46204
Telephone: (317)233-2131
Toll Free: 1-877-851-4106
Fax: (317)232-0744

**INSTRUCTIONS:** Form may be completed electronically, printed, and must include a hand written signature.
Please mail or fax a copy to the Office of Legal Affairs.

## STUDENT INFORMATION

| | | |
|---|---|---|
| Name of Student: ██████ | Student's address: ██████ | City: ██████ |

| | | | | |
|---|---|---|---|---|
| State: IN | Zipcode: ██████ | Gender: Female | Date of Birth(M/D/Y): 9/30/97 | Age: 14 | Grade: 9 |

Name of Parent/Guardian: ██████ and ██████     Email: ██████

Address: ██████     City: ██████     State: IN     Zipcode: ██████

Home Number: ___     Work Number: ___     Cell Number: ██████

| Name/Address of Attorney Representing Student and Parent/Guardian: (If this section is completed, all information and correspondence regarding due process will be forwarded to the attorney.) | | Telephone Number: |
| | | Fax Number: |

## SCHOOL INFORMATION

| Name of School Student attends: | West Noble High School is her home school |
|---|---|

| Name/Address/Telephone number of School Corporation or Charter School: | West Noble School Corporation 5050 N US Hwy 33 Ligonier, IN 46767 Phone: (260) 894-3191 Fax: (260) 894-3260 | NEISEC 1607 E. Dowling St. Kendallville, In 46755 (260) 347-5236 (260) 347-1657 |
|---|---|---|

| Name/Address/Telephone number of (School Corporation or Charter School) Attorney: | |
|---|---|

## DISPUTE ISSUES

I am requesting a general due process hearing on the following issue(s): (check all that apply)

- ☐ The student's identification and eligibility for services under Article 7.
- ☐ The appropriateness of the educational evaluation.
- ☒ The appropriateness of the student's proposed or current level of special education services or placement.
- ☒ The provision of a free appropriate public education for the student.
- ☐ Reimbursement for services obtained by the parent.

**EXHIBIT C**

Please include the facts relevant to the dispute. (Space below is limited to 9 lines. Attach additional pages as necessary.)

We are the legal guardians of our granddaughter T██████. She has a learning disability and struggled in school for several years. After trying many things, the case conference in our last school district agreed to place her at Kildonan Dyslexia School. She receives special services and education throughout her whole day there. We moved this summer to West Noble School Corporation. We met with their case conference and discussed the services they would provide to her at West Noble High School. We do not believe the services they offered are enough for her to catch up and to get her diploma. We do not believe that T██████ would benefit from their program. We believe that she should continue her education at Kildonan School.

Briefly explain the resolution you are seeking. (Space below is limited to 9 lines. Attach additional pages as necessary.)

Placement at Kildonan School.

| OR |
|----|

I am requesting an expedited due process hearing on the following issue(s):

☐    The parent disagrees with a determination regarding the manifestation of a student's disability.

☐    The parent disagrees with the public agency's decision regarding the student's disciplinary change of placement under 511 IAC 7-44-2(e).

☐    The public agency is requesting a hearing because it is dangerous for the student to return to the current placement (placement prior to removal to the interim alterative educational setting) after the expiration of the student's placement in an interim alternative educational setting.

Briefly explain the resolution you are seeking. (Space below is limited to 11 lines. Attach additional pages as necessary.)

E███████ S███████        ███████████████████        08-22-12

**Printed Name**            **Signature**                        **Date**

**Note: Form may be completed electronically, printed, and must include a hand written signature. Request received without written signature will NOT be processed.**

Copy - IDOE/Office of Legal Affairs     Copy - Superintendent of Public Instruction     Copy - Superintendent-School Corp or Charter School

| Print Form |
|------------|

Revised - September 2011



# Indiana Department of Education
### S U P P O R T I N G   S T U D E N T   S U C C E S S

August 23, 2012

Dennis VanDuyne, Superintendent
Indianapolis Public Schools
120 E Walnut St
Indianapolis, IN 46204



Re:     Request for a hearing HR-005-2013

Dear Superintendent VanDyne and Mr. and Mrs. S███

The above-referenced request for a due process hearing was received on August 22, 2012.  An independent hearing officer has been appointed and provided with a copy of the request.  You have been provided with a copy of the appointment letter.  Contact information for the hearing officer is:

> Dr. James Jacobs
> College of Education
> Indiana State University
> Terre Haute, IN 47809
> 812/237-3585

Pursuant to 511 IAC 7-45-6, the school must convene a meeting with the parent and relevant members of the case conference committee to discuss the due process hearing request and the facts that form the basis of the request. This meeting is to provide the school the opportunity to resolve the dispute that is the basis of the due process hearing request.

- In the absence of a written agreement by both parties to waive the resolution session or an agreement by both parties to mediate, the school must conduct a resolution session within fifteen (15) days of receiving the request for a hearing.

- The school is required to document all efforts to obtain the parent's participation in the resolution session within the 15-day timeline, as well as its continued efforts for the remainder of the thirty (30) day resolution period.

- If the parent fails to participate in the resolution session, the school may, at the end of the 30-day resolution period, ask the Independent Hearing Officer (IHO) to dismiss the hearing request.

- If the school fails to conduct a resolution session within the 15-day timeline then the parent may seek intervention of the IHO to begin the due process hearing timeline.

Page 2
August 23, 2012

The hearing officer will contact the parties to make the necessary arrangements for the hearing and related proceedings. Because the hearing must be accessible to the parties and their witnesses, please advise the hearing officer of any accommodations or assistance needed.

Please contact the hearing officer for all matters related to this proceeding.

Sincerely,

Dana Long, Legal Counsel

cc:   Mary Burton, Director/Education, Northeast Indiana Sp Ed Coop
      Dr. Jacobs, Hearing Officer
      Office of Legal Affairs – file copy



Fleming|Stage
Attorneys at Law

Alexandra M. Curlin
Direct Phone (317) 686-9103
amcurlin@curlinlaw.com

August 28, 2012

FILE COPY

Dr. James Jacobs
College of Education
Indiana State University
Terre Haute, IN  47809

**VIA FACSIMILE AND FIRST CLASS MAIL**

**RE:    HR-005-2013**

Dear Dr. Jacobs,

      Please allow this letter to serve as notice that the undersigned and this firm appears on behalf of the Petitioners, ▮▮▮ and ▮▮▮ S▮▮ in the above captioned matter.  Please direct all correspondence to me.  Please note that I have moved law firms, however, my e-mail is not yet set up.  Please continue to use my "curlinlaw" e-mail until further notice.

      My clients do believe they are entitled to stay put placement because the last agreed upon IEP places T.S. at Kildonan School.  I have not yet had an opportunity to talk to Mr. Clagg about stay put but would like to discuss this with him before filing a formal motion.  Kildonan has registration on September 6 and school begins September 7.  Should the parties not agree to stay put placement, my client will file an emergency request for a preliminary injunction requesting immediate placement at Kildonan.  It may be beneficial to schedule an emergency hearing regarding this issue in the event that the parties do not come to agreement.  Again, I've not had an opportunity to discuss this yet with Mr. Clagg and would ask that the hearing officer allow me the rest of the afternoon and tomorrow morning before scheduling an emergency hearing.  Please do not hesitate to contact me should you have any questions.

Sincerely,

*Alexandra M. Curlin*

Alexandra M. Curlin/eam

Distribution:
S▮▮ Family (via electronic mail)
Jason Clagg (via facsimile and first class mail)
File

**EXHIBIT D**

## BEFORE AN INDEPENDENT HEARING OFFICER
## APPOINTED BY THE INDIANA DEPARTMENT OF EDUCATION
## PURSUANT TO 511 IAC 7-45-3

| | | |
|---|---|---|
| T.S. by her Guardians and Next of | ) | |
| Friends, E████ S. and V████ S. | ) | |
|     Petitioners, | ) | |
| | ) | Hearing No. HR-005-2013 |
| | ) | Independent Hearing Officer |
| and | ) | Dr. James Jacobs |
| | ) | |
| West Noble School Corporation | ) | |
|     Respondents. | ) | |

### MOTION TO WITHDRAW DUE PROCESS REQUEST

COMES NOW, Petitioners, by counsel and does hereby respectfully request withdrawal of the above captioned request for due process without prejudice.  The following reasons for withdrawal are herein set forth:

1.  Petitioners filed this case *pro se* using a form from the Indiana Department of Education website.

2.  Petitioners do not seek to challenge West Noble's proffered IEP.  Petitioners simply seek enforcement of the IEP already in place for T.S.  Exhibit A.

3.  At this time Petitioners do not believe that the school corporation has committed any procedural violations that amount to a denial of a free appropriate public education.

4.  For those reasons, Petitioners believe this case is not ripe for due process at this time and therefore seek dismissal of this matter without prejudice.

WHEREFORE, for the foregoing reasons, Petitioners seek dismissal of this case without prejudice and all other relief deemed just in the premises.

Respectfully submitted,

**EXHIBIT E**

Alexandra M. Curlin, (#24841-49)
FLEMING STAGE, LLC
310 N. Alabama St., Ste. 300
Indianapolis, IN  46204
Telephone (317) 202-0301
Facsimile (317) 536-3663
E-mail: amcurlin@flemingstage.com

## CERTIFICATE OF SERVICE

I do hereby certify that a copy of the foregoing has been duly served upon parties listed below by facsimile and first class mail this 29th day of August, 2012.

Jason Clagg
Barnes & Thornburg
600 One Summit Square
Ft. Wayne, IN  46802

Alexandra M. Curlin, (#24841-49)
FLEMING STAGE, LLC
310 N. Alabama St., Ste. 300
Indianapolis, IN  46204
Telephone (317) 202-0301
Facsimile (317) 536-3663
E-mail: amcurlin@flemingstage.com

**Alexandra Curlin**

| | |
|---|---|
| **From:** | Alexandra Curlin [amcurlin@flemingstage.com] |
| **Sent:** | Wednesday, August 29, 2012 4:04 PM |
| **To:** | 'Clagg, Jason' |
| **Subject:** | S█ |

Jason,

Thanks for the phone call this morning.  As you know, I've filed for a dismissal in this case because my clients see this matter as a procedural matter at this point.  My clients would like to engage in mediation or a meeting with the special education director and you to discuss ways to resolve this case.  Is that something that might interest your clients?

Alexandra M. Curlin
**Fleming Stage, LLC**
310 N. Alabama, Ste. 300
Indianapolis, IN  46204
T: (317) 202-0301
T: (317) 686-9103
F: (317) 536-3663
amcurlin@flemingstage.com
www.flemingstage.com

CONFIDENTIALITY NOTICE: This email and any attachments are for the exclusive and confidential use of the intended recipient. If you are not the intended recipient, please do not read, distribute or take action in reliance upon this message. If you have received this in error, please notify us immediately by return email and promptly delete this message and its attachments from your computer system. We do not waive attorney-client or work product privilege by the transmission of this message.

**EXHIBIT F**

**BEFORE AN INDEPENDENT HEARING OFFICER**
**APPOINTED BY THE INDIANA DEPARTMENT OF EDUCATION**
**PURSUANT TO 511 IAC 7-45-3**

| | |
|---|---|
| T.S. by her Guardians and Next of | ) |
| Friends, E███ S. and V███ S. | ) |
|     Petitioners, | ) |
| | ) |
| | ) |
| and | ) |
| | ) |
| West Noble School Corporation | ) |
|     Respondents. | ) |

<u>EMERGENCY MOTION FOR STAY-PUT PLACEMENT</u>

COMES NOW, Petitioners, by counsel and does hereby respectfully request an immediate order implementing the stay-put provision of 511 IAC 7-45-7(u) and 34 CFR §300.518. In support of this Motion, Petitioners hereby offer the following:

1. During the 2011-2012 school year, Petitioners had legal settlement in Rensselaer School Corporation (hereinafter "Rensselaer").

2. While at Rensselaer, the IEP team agreed that T.S. should be placed at Kildonan School, a residential placement for students with dyslexia.

3. The IEP team placed her there in January of 2012.

4. In March of 2012, the IEP team met again to discuss placement for the 2012-2013 school year. The IEP team agreed that T.S. was making progress at Kildonan School and agreed that she should remain there for the 2012-2013 school year.

5. The team developed a new IEP placing T.S. at Kildonan. (See Exhibit A, attached to the due process request).

6. Over the summer of 2012, the S██f family moved into West Noble School Corporation (hereinafter "West Noble").

Exhibit Q

7. The S███ immediately contacted West Noble to discuss special education services for T███ for the upcoming 2012-2013 school year.

8. The S███ met with West Noble multiple times and shared with them their previous experiences, how T.S.'s placement at Kildonan came to be, and why they thought it was appropriate.

9. West Noble described the services they could provide to T.S., however did not develop an IEP until August 17, 2012.

10. That IEP is inadequate and ill-suited to meet T.S.'s needs. (See attached request for due process).

11. The S███ did file a *pro se* due process request in which they challenged the IEP. The S███ withdrew that due process in order to try to work out the differences between the S███ and West Noble amicably.

12. An amicable resolution could not be obtained.

13. The S███ are therefore again filing a request for due process and seek to challenge the IEP proffered by West Noble on August 17, 2012.

14. School starts at Kildonan on September 7, 2012.

15. Under statute, T.S. is entitled to stay-put placement during pendency of any due process hearing or judicial proceeding. See 511 IAC 7-45-7(u), which reads:

Except as provided in 511 IAC 7-44-8, the student shall remain in the student's current educational placement during a due process hearing or judicial proceeding, unless the parties agree otherwise.

See also, 34 CFR § 300.518 :

Except as provided in §300.533, during the pendency of any administrative or judicial proceeding regarding a due process complaint notice requesting a due process hearing under §300.507, unless the State or local agency and the parents of the child agree

otherwise, the child involved in the complaint must remain in his or her current educational placement.

16. The Seventh Circuit addressed an almost identical situation in *Casey K. v. St. Anne Community High School*, 400 F. 3d 508 (7th Cir. 2005).

17. In that case, Casey K., a student with dyslexia, attended a public elementary school. That school district placed Casey K. at a private school for students with dyslexia. When Casey K. entered into another school district, the new school district believed it could offer an appropriate education and proffered its own IEP. The K family challenged that IEP. In so doing, the K family argued that Casey K. was entitled to placement at the private school pending the administrative and judicial proceedings. An Illinois federal district court agreed with the K family and so did the Seventh Circuit.

18. The Seventh Circuit specifically held, "The stay-put provision has been interpreted as imposing an automatic statutory injunction, like the automatic stay in bankruptcy." *Casey K.* at 511. (See Exhibit B- copy of case).

19. The Seventh Circuit also analyzed the school district's argument that they were only required to provide "comparable services" and not placement at the private school. The Seventh Circuit concluded that Casey K. was entitled to placement at the private school and that the stay-put provision established an automatic injunction. *Id* at 513.

20. For all these reasons, T.S. is entitled to immediate placement at Kildonan School and to any reimbursement of any costs incurred by the Petitioners in having to place her there.

WHEREFORE, for the foregoing reasons, Petitioners seek immediate implementation of the April 2012 IEP, including placement at Kildonan School, reimbursement for all costs associated in transporting T.S. to Kildonan, and all other relief deemed just in the premises.

Respectfully submitted,

Alexandra M. Curlin, (#24841-49)
FLEMING STAGE, LLC
310 N. Alabama St., Ste. 300
Indianapolis, IN  46204
Telephone (317) 202-0301
Facsimile (317) 536-3663
E-mail: amcurlin@flemingstage.com

## CERTIFICATE OF SERVICE

I do hereby certify that a copy of the foregoing has been duly served upon parties listed below by facsimile and first class mail this 5th day of September, 2012.

Jason Clagg
Barnes & Thornburg
600 One Summit Square
Ft. Wayne, IN  46802

Alexandra M. Curlin, (#24841-49)
FLEMING STAGE, LLC
310 N. Alabama St., Ste. 300
Indianapolis, IN  46204
Telephone (317) 202-0301
Facsimile (317) 536-3663
E-mail: amcurlin@flemingstage.com



Indiana Department of Education
SUPPORTING STUDENT SUCCESS

September 6, 2012

Dennis VanDuyne, Superintendent
Indianapolis Public Schools
120 E Walnut St
Indianapolis, IN 46204

Alexandra M. Curlin
Fleming Stage Attorney at Law
310 N Alabama St., Ste 300
Indianapolis IN 46204

Re:    Request for a hearing HR-009-2013

Dear Superintendent VanDyne and Ms. Curlin:

The above-referenced request for a due process hearing was received on September 5, 2012.
An independent hearing officer has been appointed and provided with a copy of the request.
You have been provided with a copy of the appointment letter.  Contact information for the
hearing officer is:

> Dr. James Jacobs
> College of Education
> Indiana State University
> Terre Haute, IN 47809
> 812/237-3585

Pursuant to 511 IAC 7-45-6, the school must convene a meeting with the parent and relevant
members of the case conference committee to discuss the due process hearing request and the
facts that form the basis of the request. This meeting is to provide the school the opportunity
to resolve the dispute that is the basis of the due process hearing request.

- In the absence of a written agreement by both parties to waive the resolution session or
  an agreement by both parties to mediate, the school must conduct a resolution session
  within fifteen (15) days of receiving the request for a hearing.

- The school is required to document all efforts to obtain the parent's participation in the
  resolution session within the 15-day timeline, as well as its continued efforts for the
  remainder of the thirty (30) day resolution period.

- If the parent fails to participate in the resolution session, the school may, at the end of
  the 30-day resolution period, ask the Independent Hearing Officer (IHO) to dismiss the
  hearing request.

- If the school fails to conduct a resolution session within the 15-day timeline then the
  parent may seek intervention of the IHO to begin the due process hearing timeline.

Page 2
September 6, 2012

The hearing officer will contact the parties to make the necessary arrangements for the hearing and related proceedings.  Because the hearing must be accessible to the parties and their witnesses, please advise the hearing officer of any accommodations or assistance needed.

Please contact the hearing officer for all matters related to this proceeding.

Sincerely,

Dana Long KP

Dana Long, Legal Counsel

cc:     Mary Burton, Director/Education, Northeast Indiana Sp Ed Coop
        Dr. Jacobs, Hearing Officer
        Office of Legal Affairs — file copy



# Indiana Department of Education
### SUPPORTING STUDENT SUCCESS

September 6, 2012

Dr. James Jacobs
College of Education
Indiana State University
Terre Haute, IN 47809

Re: Hearing #HR-009-2013

Dear Dr. Jacobs:

This letter is to confirm your appointment as the independent hearing officer in the above referenced hearing, received in this office on September 5, 2012.   A copy of the request is attached.  It is your responsibility to frame the issue or issues to be decided at the hearing.

You must conduct the hearing in accordance with 511 IAC 7-45 and I.C. 4-21.5-3.  Your written decision must be mailed to the parties within 45 calendar days from: (1) the date of the parties' written agreement to forego the resolution session, (2) the date of the parties' written agreement that no resolution is possible, or (3) the expiration of the 30-day resolution period with no resolution by the parties.  If the parties agree that they will forego or otherwise cannot reach resolution, please send me a copy of the written agreement.  You may grant specific extensions of time at the request of either party, but such extensions must be in writing and included in the record of proceeding.  Please provide me with a copy of any orders to that effect.  Your written decision must include a notice of the party's right to seek judicial review within 30 calendar days of the date the party receives the decision.

Please contact Superintendent VanDuyne, Ms. Curlin, and Ms. Burton, special education director, to make arrangements for the hearing.   It is your responsibility to ensure that a verbatim recording and transcript of the hearing are provided and to make arrangements with the school to pay for the reporting services.   The West Noble School Corporation is responsible for payment of your expenses, and you must provide the requisite documentation to effect such payment.

Thank you for accepting this assignment.

Sincerely,

Dana Long KP

Dana Long, Legal Counsel

Office of Legal Affairs
151 W Ohio St • Indianapolis, Indiana 46204
(317)232-6676 • (317)232-0744 Facsimile
www.doe.in.gov/legal

Page 2
September 6, 2012

Enc.    Copy of Due Process Request

cc:     Dennis VanDuyne, Superintendent
        West Noble School Corporation
        5050 N US 33
        Ligonier, IN  46767
        Telephone: 260/894-3191
        Fax:  260/894-3260

        Alexandra M. Curlin (counsel for parents)
        Fleming Stage Attorney at Law
        310 N Alabama St., Ste 300
        Indianapolis IN  46204
        Telephone:  317/686-9103
        Fax:  317/686-9137

        Mary Burton, Director
        Northeast Indiana Special Education Cooperative
        1607 E Dowling St
        Kendallville, IN 46755
        Telephone:  260.347.5236
        Fax:  260.347.1657

        Office of Legal Affairs – file copy

Office of Legal Affairs
151 W Ohio St • Indianapolis, Indiana 46204
(317)232-6676 • (317)232-0744 Facsimile
www.doe.in.gov/legal

68



Fleming Stage
Attorneys at Law

Alexandra M. Curlin
Direct Phone (317) 686-9103
amcurlin@flemingstage.com

September 5, 2012

Dr. Tony Bennett
Indiana Department of Education
Room 229 State House
Indianapolis, IN  46204

**VIA FACSIMILE AND FIRST CLASS MAIL**

**RE:**    Due Process Hearing Request

Dear Dr. Bennett,

    I represent the S████ family.  The S███ would like to request an Article 7 due process hearing against West Noble School Corporation.  Enclosed you will find a due process complaint.  Please assign an independent hearing officer to hear this matter.  Thank you for your attention.

Sincerely,

Alexandra M. Curlin/eam

Distribution:
File
Dr. Dennis VanDuyne, West Noble School Corporation (via facsimile and first class mail)
Mary Burton, Special Education Director (via first class mail)
Mr. Greg Baker, Principal (via first class mail)
Mr. Jason Clagg (via first class mail)
Stuff Family (via electronic mail)
File

310 North Alabama Street, Suite 300, Indianapolis, IN  46204
Telephone:  (317) 686-1515  Fax:  (317) 686-9137
www.FlemingStage.com

G9



Alexandra M. Curlin
Direct Phone (317) 686-9103
amcurlin@flemingstage.com

September 4, 2012

Dr. Dennis VanDuyne
West Noble School Corporation
5050 N. US Hwy 33
Ligonier, IN 46767

**VIA FACSIMILE AND FIRST CLASS MAIL**

**RE:     Request for Due Process Hearing**

Dear Dr. VanDuyne,

This letter is a formal request for an Article 7 due process hearing pursuant to 511 IAC 7-45-3 and 20 USC 1415(b)(7).

**I.     Child's Name and Date of Birth:**



**II.     Address of Child's Residence and Parents' Names:**

Child's Address: 4319 W. Hwy. 6, Wawaka, IN 46794

Parent Name and Address:



**III.     Name and Address of Home School:**

West Noble High School
5094 N. US 33
Ligonier, IN 46767

**IV.     Description of the Nature of the Problem, Including Facts Relating to the Problem:**

T██ has been diagnosed with dyslexia.  During the 2011-2012 school year, she had legal settlement in Rensselaer Central School Corporation.  There, she struggled academically each

310 North Alabama Street, Suite 300, Indianapolis, IN 46204
Telephone: (317) 686-1515 Fax: (317) 686-9137
www.FlemingStage.com

S█████Due Process Request
Page 2
September 5, 2012

year. That school corporation offered limited specialized instruction, which the S████tried. It was not successful. T█████continued to lose skills and made inadequate progress. In January of 2012, the IEP team decided to place her at Kildonan School. Kildonan School is a school that specializes in teaching students with dyslexia and other learning disabilities. In March of 2012, the IEP team met again to discuss services for the upcoming 2012-2013 school year. At that time, the IEP team decided that T█████was making appropriate progress and that Kildonan was allowing her to progress academically while still allowing her the opportunity to be involved in extra-curricular activities. The team drafted an IEP (attached as Exhibit A) placing T█████at Kildonan School for the 2012-2013 school year. A down payment was made for the 2012-2013 school year in March of 2012 by the Rensselaer School Corporation.

Over the summer, T█████and her parents moved to West Noble School Corporation. In early June of 2012, the S█████amily contacted West Noble School Corporation to enroll T█████. They met with the principal and disclosed the fact that they were moving into the school district from another school district and that T█████had been placed in a private school. They also ensured that West Noble would be provided all of the information they had regarding T█████'s education and signed a release for West Noble to receive information from Rensselaer School Corporation.

The S█████met with West Noble School Corporation multiple times over the summer. They met with the special education director and the superintendent. On August 17th, they met with West Noble School Corporation for another IEP meeting and this meeting is the first meeting in which they were presented an IEP. To develop its IEP, West Noble School Corporation did administer a KTEA academic test to T█████ Her score in reading was below average and her score in math was in the low average range. Her achievement composite was in the below average range. West Noble School Corporation did not provide the S█████with an explanatory evaluation report. Rather, the S█████were provided a sheet of paper with scores. They told the S█████that they conducted a speech evaluation and concluded that T█████did not need any speech. They did not produce a speech report. Though West Noble School Corporation identified T█████s emotionality and lack of attention/focus as issues that may impede her education, West Noble School Corporation did not conduct any emotionality testing or any focus/attention testing that was shared with the S█████. Neither did they conduct an assistive technology evaluation, despite the knowledge that Rensselaer School Corporation found her eligible for assistive technology services.

West Noble also looked at the reports from Kildonan. These reports indicate that T█████s ability to read is between a fourth and fifth grade level, despite the fact that she is entering ninth grade. They also indicate that her comprehension abilities are at a mid-second grade level, and her spelling at a fourth grade level.

The IEP developed by the school has many concerns. The goals are for the most part, broad statements that are meant to restate Indiana standards rather than address T█████'s specific needs. The IEP identifies T█████'s emotionality and attention as concerns but does not address either problem with goals or services. The IEP indicates that T█████is learning style is a tactile/kinesthetic learning style, but none of the IEP services include this type of instruction. The IEP indicates that █████does not have the writing skills necessary to pass the End of Course

_____ Due Process Request
Page 3
September 5, 2012

Assessment in English, yet the IEP includes no services to address this deficit. Even though West Noble School Corporation agrees that T____ is below grade level in reading, the testing does not identify the comprehension skills that T____ lacks and therefore, the reading comprehension goal is vague and general rather than tailored to T____'s specific needs. While the IEP includes a goal for organization, the services offered to support the goal are not adequate to ensure that the goal can be implemented or that T____ will make anything more than *de minimus* progress. Moreover, the goal itself is not realistic and does not hone in on T____'s specific problems with focus. Lastly, the IEP considers a small group to be up to twenty students with one teacher. At Kildonan, T____ receives all her instruction in small groups with ratios of approximately 1:5.

In late August of 2012, the S____ requested a due process hearing against West Noble School Corporation. They later withdrew this request in order to try compromising with West Noble School Corporation about the IEP and about stay put placement. Dismissal was granted without prejudice on August 29, 2012 and on September 4, 2012, the parties all met to discuss the problems with the IEP and the types of services T____ needs in order to be successful. The S____ specifically stated why they believed that West Noble School Corporation's IEP was inappropriate and why the services that were offered at Kildonan were helping T____ succeed. That meeting produced neither an amicable agreement nor a new IEP. The S____ also stated that they believed that T____ was entitled to stay put placement at Kildonan. West Noble School Corporation representatives disagreed.

Issues presented for resolution:

1.  West Noble School Corporation did not comprehensively evaluate T____ to determine what her specific needs are.

2.  The IEP proffered on August 17, 2012 does not include appropriate goals and services to specifically meet T____'s educational needs.

3.  The IEP proffered on August 17, 2012 does not allow T____ the opportunity for meaningful educational benefit and therefore does not provide Taylor with a free appropriate public education.

4.  West Noble School Corporation never actually considered placement at Kildonan and used the summer to drag out placement discussions.

5.  T____ is entitled to immediate placement at Kildonan School.

**V.     Proposed Resolution to the Extent Known and Available at Present:**

Placement at Kildonan School with implementation of the April 2012 IEP developed by

Due Process Request
Page 4
September 5, 2012


Rensselaer School Corporation.

Sincerely,

Alexandra M. Curlin

Distribution:
Dr. Tony Bennett, Indiana Department of Education (via facsimile and first class mail)
Mary Burton, Special Education Director (via first class mail)
Mr. Greg Baker, Principal (via first class mail)
Mr. Jason Clagg (via first class mail)
S▓▓ family (via electronic mail)
File

# BARNES&THORNBURG LLP

600 One Summit Square
Fort Wayne, IN 46802-3119 U.S.A.
(260) 423-9440
Fax (260) 424-8316

Jason T. Clagg
(260) 425-4646
jclagg@btlaw.com

www.btlaw.com

August 29, 2012

*VIA FACSIMILE AND U.S. MAIL – 812-237-8208*

James A. Jacobs, Ph. D.
Professor of Special Education
Indiana State University
Terre Haute, IN  47809

Re:  T.S. / Northeast Indiana Special Ed Co-op
Hearing No. HR-005-2013

Hearing Officer Jacobs,

We have received and reviewed Ms. Curlin's letter to you from yesterday afternoon.  It seems clear from Ms. Curlin's letter that Petitioners believe the proper stay put placement is a private residential school in New York at public school expense.  My client believes this is incorrect and would like the opportunity to submit a concise brief addressing the issue.  Perhaps both parties could submit their positions to you in writing by a particular day and time?  If we are able to submit such a brief, we could have it to you still this week.  Thank you for your consideration.

Very truly yours,

Jason T. Clagg

JTC/bek

cc:  Alexandra M. Curlin, Esq.

FWDS02 106242v1

**EXHIBIT H**

Atlanta      Chicago      Delaware      Indiana      Michigan      Minneapolis      Ohio      Washington, D.C.

Independent Hearing Officer
Professor of Special Education
Bayh College of Education
Indiana State University
Terre Haute, IN 47809

Office: (812) 237-3585
Cell: (812) 264-4105

Fax: (812) 237-8208
E-mail: James.Jacobs@indstate.edu

## BEFORE AN INDEPENDENT HEARING OFFICER
### APPOINTED BY THE INDIANA DEPARTMENT OF

| | |
|---|---|
| In the Matter of the Article 7 Hearing Regarding | ) ) ) |
| T.S. By his parents and next friends, B███ and V███ S███ | ) ) ) ) |
| Petitioners, | ) ) ) |
| And | ) ) NOTICE Hearing Number HR-009-2013 |
| West Nobel School Corporation By the Northeast Indiana Special Education Corporation | ) ) ) ) ) ) |
| Respondent | ) |

## RESPONSE TO PETITIONER'S REQUEST FOR "STAY PUT" AND RESPONDENTS' PROPOSAL FOR SUBMITTING A BRIEF

Petitioners now come requesting the Independent Hearing Officer (IHO) issue a "Stay-Put" order which would place the Student at the Kildonan School, a private school located in the state of New York at school expense. In response, Respondents now come requesting that they be provided the "...opportunity to submit a concise brief addressing the issue." Both parties request is Granted. The Student shall remain in the last educational setting stated in the Student's most current and agreed upon individual educational program (IEP) which, based on information

**EXHIBIT I**                    1 |

provided by Petitioners in their **REQUEST FOR A DUE PROCESS HEARING**, is the

Kildonan School.  However, Respondents are provided until 4:00 p.m. Tuesday, September 11,

2012, to submit a brief regarding Respondents' position in this matter. Subject to the content of

Respondents' brief, the IHO will render a subsequent Order regarding the educational placement

of the Student during the pendency of this matter.

So **Ordered this 7th day of September, 2012**

James A. Jacobs, Ph.D.
Independent Hearing Officer

**Distribution:  facsimile and first class mail**

**For Petitioners:**

Alexandra M. Curlin, Esq.
Fleming Stage LLC
310 North Alabama Street, Suite 300
Indianapolis, IN  46204
Phone:  317-686-1515
FAX:  317-686-9137

**For Respondents:**

Jason T. Clagg, Esq.
Barnes & Thornburg, LLP
600 One Summit Square
Fort Wayne, IN  46802-3119
Phone:  260-423-9944
FAX:  260-424-8316

Mark D. Scudder, Esq.
Barnes & Thornburg, LLP
600 One Summit Square

2 |

Fort Wayne, IN  46802-3119
Phone: 260-423-9944
FAX: 260-414-8316


**State Department of Education:**

Kim Payton
Office of Legal Affairs
151 West Ohio Street
Indianapolis, IN  46204
Phone: 317-233-2131
FAX: 317-232-0744

**James A. Jacobs, Ph.D.**

*Independent Hearing Officer*
*Professor of Special Education*
*Bayh College of Education*
*Indiana State University*
*Terre Haute, IN  47809*

*Office:* (812) 237-3585
*Cell:* (812) 264-4105

· **RECEIVED** SEP 1 7 2012 ·

*Fax:* (812) 237-8208
*E-mail:* James.Jacobs@indstate.edu

## BEFORE AN INDEPENDENT HEARING OFFICER
### APPOINTED BY THE INDIANA DEPARTMENT OF

| | |
|---|---|
| In the Matter of the Article 7 Hearing Regarding | ) |
| | ) |
| | ) |
| T.S.  By her parents and next friends, E████ and V████ S████ | ) |
| | ) |
| | ) |
| | ) |
| Petitioners, | ) |
| | ) |
| And | ) |
| | ) |
| | ) |
| West Nobel School Corporation By the Northeast Indiana Special Education Corporation | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| Respondent | ) |

NOTICE
Hearing Number HR-009-2013

## RESPONSE TO PETITIONERS' REQUEST FOR "STAY PUT" AND THE SCHOOL'S

## BRIEF IN OPPOSITION TO PETITIONERS' EMERGENCY MOTION FOR STAY-

## PUT PLACEMENT

Petitioners filed for due process in this matter on September 6, 2012, with an effective

date of September 7, 2012, as being the date from which all timelines were to be calculated.

Concurrently, Petitioners, by counsel, filed an **EMERGENCY MOTION FOR STAY-PUT**

**PLACEMENT,** requesting that this Independent Hearing Officer (IHO) grant placement in the

1 |

**EXHIBIT J**

Kildonan School, a private residential school for students with dyslexia located in the state of New York. Further, petitioners asserted that the Kildonan School was the current educational placement as specified in the T.S.'s most current individualized education plan (IEP) which was developed in March of 2012, by the Rensselaer School Corporation..

The IHO sent a **RESPONSE TO PETITIONERS' REQUEST FOR "STAY PUT" AND RESPONDENT'S PROPOSAL FOR SUBMITTING A BRIEF** in which the IHO provided Respondents, by counsel, until 4:00 p.m. Eastern Time on September 11, 2012, to respond to Petitioners' motion requesting that residential placement at the Kildonan School be deemed as the educational setting specified as the most current IEP for the student during the pendency of these proceedings. Counsel for Respondents provided such brief, by facsimile, on September 11, 2012, at 10:40 a.m. Eastern Time.

Based on documents provided by the parties to the IHO, it is determined that:

- T.S. resided in the legal settlement of the Rensselaer School Corporation during the 2911-2012 school year.

- T.S. had an IEP developed and implemented by the Rensselaer School Corporation that specified the Kildonan School, as the appropriate educational placement for the spring 2012 semester. This placement was to continue through the 2012-2013 school year.

- T.S.'s last IEP provided by the Rensselaer School Corporation was conferred on or about April 5, 2012.

- T.S. and her family moved from Rensselaer into the legal settlement of the West Nobel School Corporation during the summer of 2012, the date of which was not specified by either party.

- T.S.'s parents were proffered an IEP by the Rensselaer School Corporation on August 17, 2012.  T.S.'s parents rejected this IEP.

- T.S.'s parents filed for due process, *pro se* on August 23, 2012.  Shortly thereafter, T.S.'s parents obtained representation by Alexandra Curlin, Esq.

- On August 29, 2012, Petitioners, by counsel, filed a motion to dismiss this due process hearing without prejudice.

- The IHO issued an Order of Dismissal on August 30, 2012.

- Petitioners, by counsel filed a second request for a due process hearing on September 5, 2012, which included issues closely parallel to those articulated in the initial request for a due process hearing.  This new request for a due process hearing included a request for an emergency stay-put order identifying the Kildonan School placement as the current educational placement.

Petitioners' motion for dismissal of issues in dispute in the original filing for a due process hearing, followed by the IHO's dismissal, made moot the original timelines by which a stay-put provision would have identified the Kildonan School as the most current educational placement.  The subsequent filing for a due process hearing exceeded the ten (10) day time period allowed for parental objection to the School's IEP which specified Rensselaer High School as the most appropriate educational setting.  As such, the IEP proffered by the Rensselaer School Corporation is the most current IEP for T.S.  The current educational placement for T.S. is Rensselaer High School.  Petitioners' **EMERGENCY MOTION FOR STAY-PUT PLACEMENT** specifying the Kildonan School as the current educational placement is DENIED.

All other issues pending in this matter are continued as matters for hearing.  The IHO's

**PRELIMINARY SCHEDULING ORDER** provided to parties on/about September 7, 2012,

and all timelines specified therein are to be adhered to by both parties.  The resolution session

must be conducted not later than September 21, 2012.  The IHO's **PRELIMINARY**

**SCHEDULING ORDER** inadvertently specified September 20, 2012, as the date by which a

resolution session must be held.


So **Ordered** this **13th day of September, 2012**


James A. Jacobs, Ph.D.
Independent Hearing Officer


**Distribution:  facsimile and first class mail**

**For Petitioners:**

Alexandra M. Curlin, Esq.
Fleming Stage LLC
310 North Alabama Street, Suite 300
Indianapolis, IN  46204
Phone:  317-686-1515
FAX:  317-536-3663

**For Respondents:**

Jason T. Clagg, Esq.
Barnes & Thornburg, LLP
600 One Summit Square
Fort Wayne, IN  46802-3119
Phone:  260-423-9944
FAX:  260-424-8316

Mark D. Scudder, Esq.
Barnes & Thornburg, LLP
600 One Summit Square
Fort Wayne, IN 46802-3119
Phone: 260-423-9944
FAX: 260-414-8316

**State Department of Education:**

Kim Payton
Office of Legal Affairs
151 West Ohio Street
Indianapolis, IN 46204
Phone: 317-233-2131
FAX: 317-232-0744

**BEFORE AN INDEPENDENT HEARING OFFICER**
**APPOINTED BY THE INDIANA DEPARTMENT OF EDUCATION**
**PURSUANT TO 511 IAC 7-45-3**

| | | |
|---|---|---|
| T.S. by her Guardians and Next of Friends, E███ S. and V███ S. | ) ) ) | |
| Petitioners, | ) ) | HR-009-2013 |
| and | ) ) | |
| West Noble School Corporation | ) ) | |
| Respondents. | ) | |

<u>MOTION TO RECONSIDER SEPTEMBER 13, 2012 STAY PUT RULING</u>

COME NOW, Petitioners, T.S. and her Guardians and do hereby request that this hearing officer reconsider his ruling on stay put dated September 13, 2012. In support of this Motion, Petitioners hereby offer the following:

1. The order is incongruent with statute and case law and therefore has no basis in law or fact.

2. The order is highly prejudicial and against public policy.

3. Petitioners also submit a Brief in Support of this Motion.

WHEREFORE, for the foregoing reasons, Petitioners request the hearing officer reconsider his Order on Stay Put dated September 13, 2012, find that Kildonan School is the statutory stay put placement for T.S., and immediately order West Noble School Corporation to place T.S. at Kildonan and reimburse the S Family for their costs to date.

Respectfully submitted,

Alexandra M. Curlin, (#24841-49)
FLEMING STAGE, LLC

**EXHIBIT K**

310 N. Alabama St., Ste. 300
Indianapolis, IN 46204
Telephone (317) 202-0301
Facsimile (317) 536-3663
E-mail: amcurlin@flemingstage.com

## CERTIFICATE OF SERVICE

I do hereby certify that a copy of the foregoing has been duly served upon parties listed below by facsimile and first class mail this 24th day of September, 2012.

Jason Clagg
Barnes & Thornburg
600 One Summit Square
Ft. Wayne, IN 46802

Alexandra M. Curlin, (#24841-49)
FLEMING STAGE, LLC
310 N. Alabama St., Ste. 300
Indianapolis, IN 46204
Telephone (317) 202-0301
Facsimile (317) 536-3663
E-mail: amcurlin@flemingstage.com

**BEFORE AN INDEPENDENT HEARING OFFICER**
**APPOINTED BY THE INDIANA DEPARTMENT OF EDUCATION**
**PURSUANT TO 511 IAC 7-45-3**

| | | |
|---|---|---|
| T.S. by her Guardians and Next of | ) | |
| Friends, E████S. and V████ S. | ) | |
| Petitioners, | ) | |
| | ) | HR-009-2013 |
| | ) | |
| and | ) | |
| | ) | |
| West Noble School Corporation | ) | |
| Respondents. | ) | |

<u>BRIEF IN SUPPORT OF PLAINTIFFS' MOTION TO RECONSIDER</u>
<u>SEPTEMBER 13, 2012 STAY PUT RULING</u>

COME NOW, Petitioners, T.S. and her Guardians (hereinafter the "Family"), and do

hereby file this Brief in Support of their Motion for the Hearing officer to reconsider his Order

dated September 13, 2012, wherein he finds that T.S.'s stay put placement is at West Noble High

School[1] and not Kildonan School. Petitioners specifically request that the hearing officer

immediately re-issue a new order consistent with his earlier order and find that T.S.'s stay put

placement during the pendency of these proceedings is at Kildonan School (hereinafter

"Kildonan"), which is her placement under the last agreed upon IEP and is her stay put for

purposes of any and all further actions.

<u>FACTS</u>

T.S. is a student that suffers from dyslexia and attention deficit disorder. During the

2011-2012 school year, she resided within the Rennselaer School Corporation (hereinafter

"Rennselaer") with her grandparents and guardians, E████ and V████S., and was provided

special education and related services in that school district. T.S. has always struggled

---

[1] The hearing officer actually found that Rennselaer was the stay put placement but later corrected this error in a subsequent ruling dated September 18, 2012 after being alerted to it by the school's counsel.

1

**K3**

academically. Throughout her educational history, her grandparents and school officials have met several times to discuss her lack of progress, her frustrations and the education that she would need to earn a high school diploma. Rennselaer did offer to provide specialized instruction to her but, unfortunately, that education was not enough to meet T.S.'s deficits. Consequently, the individualized education program (hereinafter "IEP") team determined that placement at Kildonan would appropriately meet T.S.'s needs.

In January 2012, Rennselaer contracted with Kildonan to educate T.S. Kildonan is a specialized school for students who have dyslexia and other language based learning differences. It is located in Amenia, New York. After spending two months at Kildonan, the IEP team at Rennselaer reconvened and agreed that T.S. should continue placement at Kildonan through the 2012-2013 school year. In March 2012, the IEP team drafted an IEP that placed T.S. at Kildonan for the 2012-2013 school year. (See Exhibit A.) Rennselaer also sent Kildonan a $5,000 deposit for the 2012-2013 school year. Another deposit was due on August 1, 2012.

In June 2012, the Family moved into the West Noble School Corporation (hereinafter "West Noble") boundaries. The Family immediately met with West Noble officials about T.S. and by June 14, 2012, the Family had enrolled T.S. into West Noble and had provided them copies of T.S.'s evaluations, grade reports, Kildonan progress reports, and Kildonan testing reports. They also voluntarily agreed to allow West Noble to obtain all of T.S.'s records from Rennselaer.

In mid-July 2012, the Family was contacted by the West Noble special education director (hereinafter "Director") for an IEP meeting. The meeting was attended by the Director and the West Noble high school principal (hereinafter "Principal"). At that meeting, the Family shared with West Noble the path that had brought them to Kildonan and why they felt that Kildonan

2

**K4**

was an appropriate placement for T.S.  Later that month, the Director again contacted the Family and asked to evaluate T.S.  The Family agreed to the evaluation and presented T.S. for evaluation to West Noble.

On August 14, 2012, West Noble held an IEP meeting for T.S.  They presented the Family with a draft version of the IEP currently in dispute.  The Family disagreed with the IEP for the reasons stated in the request for due process and stated their disagreement.  West Noble did not agree to place T.S. at Kildonan.  On West Noble's first day of school, August 17, 2012, the Family received, via certified mail, written notice of the services discussed at the August 14, 2012 meeting.  T.S. did not attend school that day.

On August 22, 2012, the Family filed a *pro se* request for due process to enforce stay put. The Family believed that there was a chance they could work with West Noble as they did with Rennselaer so that T.S. would ultimately receive an appropriate education and a dispute could be avoided.  James Jacobs was assigned as the hearing officer and the case was given the cause number HR-005-2013.  On August 28, 2012, this counsel filed her appearance in that case and apprised the hearing officer that there may be a stay put dispute.  (See Exhibit B.)

The Family believed that the Rennselaer IEP was appropriate and that West Noble was obligated to implement it.  They were not seeking to fight with West Noble over a new IEP and instead only wanted the Rennselaer IEP implemented.  Therefore, on August 29, 2012, the Family requested withdrawal of their due process request in order to pursue avenues outside due process to obtain enforcement of the Rennselaer IEP.  This Motion sought dismissal without prejudice.  (See Exhibit C.)  The hearing officer granted that Motion and dismissed the case without prejudice.  (See Exhibit D.)

3

Simultaneously, the Family's counsel sent an e-mail to West Noble's counsel seeking either a mediation or a meeting with the special education director to resolve the issues in the case[2]. (See Exhibit E.) At no point in time did the Family send T.S. to West Noble for school. At no point in time did the Family sign or in any other way consent to the August 17, 2012 IEP. The hearing officer admits that the Family "rejected [the August 17] IEP." (See September 13, 2012 Order at 3.)

Several conversations took place between counsels for the Parties. It is clear that the Family did not agree with West Noble's IEP and were actively seeking to have the Rennselaer IEP enforced. The Family's counsel informed West Noble's counsel that they would seek stay put enforcement through judicial means if necessary while the IEP issues were being worked out. The Family's counsel provided notice to West Noble's counsel on multiple occasions before August 31 (the tenth instructional day) that the Family wished to challenge West Noble's IEP, including an e-mail dated August 31, 2012. (See Exhibit F.) In that e-mail, the Family made it clear that they did not believe the August 17, 2012 IEP was appropriate and that they were challenging it- even if not in a due process request.

In a phone conversation on August 31, 2012 with the Family's counsel, West Noble's counsel indicated that West Noble wanted to meet with the Family in order to avoid the cost of emergency court motions. He indicated that West Noble would be willing to consider a short term placement at Kildonan in order to buy time to resolve the stay put dispute and IEP issues. The Family agreed to hold off on any filings in order to give the process a chance to work without litigation.

---

[2] Neither the e-mail communication nor its contents was provided to the hearing officer by the school's counsel, which may be a violation of Indiana Professional Rule of Conduct 3.3 requiring candor to the tribunal.

4

On September 4, the parties held a phone conference. That conference did not result in any resolution of the issues, and West Noble refused to place T.S. at Kildonan even on a temporary basis. They argued that T.S.'s stay put placement was comparable services to Kildonan and was not specific to Kildonan itself. West Noble did not state, in the phone conference that they had begun implementing the IEP. On September 5, 2012, T.S. filed the above captioned request for due process again challenging the August 17, 2012 IEP and requesting emergency placement at Kildonan.

The Indiana Department of Education (hereinafter "IDOE") has nine hearing officers who are assigned to cases on a rotational basis. The IDOE dismissed the normal rotation and reassigned this matter to James Jacobs. On September 7, 2012, the hearing officer ruled that T.S. should be placed at Kildonan School. (See September 7, 2012 Order.) Relying on that order, the Family left on September 7, 2012 and placed T.S. at Kildonan. The Family also paid, out of pocket, the second $5,000 deposit to Kildonan in order to facilitate placement.

On September 11, 2012, the Family received West Noble's Brief in Opposition of Stay Put. The brief indicated that West Noble agreed that stay put had been triggered but that stay put was at West Noble because: (1) West Noble had begun implementing the August 17 IEP; (2) West Noble was only required to offer "comparable services" and not placement at Kildonan; and (3) placement at Kildonan would be inequitable. On September 13, 2012, the Family's counsel notified the hearing officer that a reply to West Noble's response would be filed no later than September 19, 2012. (Exhibit F).

On September 17, 2012, the Family's counsel received the hearing officer's September 13, 2012 order by mail. No facsimile transmission of this document has been received to date. In that order, the hearing officer found (1) that the Family "rejected the [August 17] IEP; (2) that

5

**K7**

the issues in the Family's September 5 due process request were "closely parallel to those articulated in the initial request for due process;" (3) that Petitioner's motion to dismiss the original request "mooted" the "original timelines by which a stay put provision would have identified Kildonan School as the most current educational placement;" and (4) that the second due process request "exceeded the ten (10) day time period allowed for parental objection to the School's IEP." Despite failing to cite any reasons, cases, policies, or statutes in support of his decision, the hearing officer then concluded that T.S.'s Motion for Stay Put at Kildonan was denied.

ARGUMENT

Stay put is triggered when a family challenges an IEP. A family can challenge an IEP in one of three ways: (1) by requesting and participating in a meeting with a special education director to discuss the problems with the proposed IEP; (2) by requesting a due process; or (3) by requesting a mediation. First, the pursuit of one option over another does not negate the challenge to the IEP. Second, there is no timeline within which a family must challenge an IEP. The statute of limitations in an IDEA case is two years, not ten days. Whenever an IEP is challenged, stay put will be judged by the current educational placement or the last agreed upon placement if placement is one of the issues. Third, the second due process request relates back to the original due process filed on August 22, 2012. It was filed for virtually the same reasons and was assigned by the IDOE to the same hearing officer, despite the fact that he was not next in the rotation. Fourth, the hearing officer's order of September 7, 2012 placing T.S. at Kildonan made T.S.'s placement Kildonan. Changing the placement after the student has already been placed negates the protection stay put offers to the student and is in complete contravention to the

6

**K8**

principles of the IDEA. Lastly, T.S. is entitled to placement at Kildonan and not to "comparable services" as argued by the school.

1. T.S. is entitled to placement at Kildonan because the plain language of the statute triggers stay put as an automatic injunction when a family challenges an IEP in any one of the three ways.

The text of 511 IAC 7-42-7 (j) says:

> After a public agency provides written notice regarding a proposed IEP that is subsequent to the initial IEP, the parent may challenge the action proposed or refused by the public agency by doing <u>any</u> of the following:
> (1) Requesting and participating in a meeting with an official of the public agency who has the authority to facilitate the disagreement between the parent and the public agency.
> (2) Initiating mediation under 511 IAC 7-45-2.
> (3) Requesting a due process hearing under 511 IAC 7-45-3.

(Emphasis added). As the hearing officer noted, the Family "rejected" the IEP. They filed a request for due process on August 22, 2012 specifically asking for placement at Kildonan. Once they filed the request for due process, they automatically triggered the stay put provision. "[I]f a parent challenges a proposed IEP prior to its implementation, the public agency must continue to implement the current IEP, except as provided in 8(e) and 8(f)[3] of this rule." 511 IAC 7-42-7 (b)(5). By virtue of filing the due process, the family triggered Article 7's stay put requirement that the Rennselaer IEP be implemented. The fact that the Family later withdrew the request for due process changes nothing because stay put had already been triggered. This is true for several reasons. Once the due process was requested, stay put automatically became the Rennselaer IEP. Everyone, including the hearing officer, agrees with that. The consequence of that reality is that

---

[3] Neither 511 IAC 7-42-8(e) nor 7-42-7 (8)(f) are applicable to this case. (8)(e) refers to students that move into a school from another state within the same school year. T.S. did not move out of state. (8)(f) refers to students that move to a new school within the same state and within the same school year. T.S. did not move within the same school year.

because stay put had been triggered by the August 22, 2012 filing, West Noble was <u>prohibited</u> from implementing its IEP. The only way stay put can be changed once triggered is if the parents and school agree to another placement (511 IAC 7-45-7(u)) or by order of a hearing officer after a due process hearing. 34 C.F.R. §300.518(d).

Furthermore, per the plain language of Article 7, the Family was not required to file a request for due process in order to challenge the IEP. The Family also could have requested a mediation or a meeting with a public agency official with the authority to facilitate disagreement. 511 IAC 7-42-7(j). When the Family withdrew the request for due process, they simultaneously requested either a meeting with the special education director or a mediation. (See Exhibit E.) They did this for the specific purpose of challenging the IEP.

West Noble claims that it began implementing the August 17, 2012 IEP because the family had not filed a request for due process within ten days. First, there is no requirement, and none was cited by West Noble, that requires a family to request a due process to challenge an IEP within ten days. In fact, by notifying West Noble that they did not agree with the IEP and not signing it, they were challenging it. Second, T.S. never attended school at West Noble. West Noble never <u>actually</u> implemented the IEP. Third, because stay put was automatically triggered by the first request for due process, the school was prohibited from implementing the IEP. As of August 22, 2012, stay put became Kildonan. That does not change just because the Family opted to challenge the IEP in a way other than a due process request.

West Noble did not disclose all the relevant facts to the hearing officer[4]. First, they did not disclose to the hearing officer that on August 29, which was the eight instructional day after

---

[4] Petitioner's counsel sent a letter to the hearing officer notifying him that Petitioner planned to file a reply to West Noble's Response to the Emergency Motion. (Exhibit G). On September 18, the hearing officer sent a communication entitled "Response to Petitioner's Request for Responding to Respondents' Answer to Petitioner's Due Process Hearing Request and Affirmative Defenses" in which he stated that any further response from

receiving written notice of the August 17 IEP, the Family specifically requested a meeting with the special education director or a mediation. Second, they did not disclose to the hearing officer that T.S. never came to school and, therefore, West Noble never implemented the IEP. Third, West Noble failed to disclose that, per the hearing officer's order of September 5, 2012, T.S. had already been placed at Kildonan. These disclosures are pivotal to this case and very relevant to this discussion. West Noble's failure to make these disclosures seems to be an attempt to manipulate the information in bad faith. When all the facts are set forth, it is clear, based on the plain language of the statute, that stay put is at Kildonan.

> 2. Parties have a two-year statute of limitations within which to challenge an IEP. There is no ten day time period for parental objections to an IEP.

The hearing officer stated "[t]he subsequent filing for a due process hearing exceeded the ten (10) day time period allowed for parental objection to the School's IEP..." The hearing officer failed to cite any statute, case law, or policy in support of this conclusion. The fact is that there is no ten day time period in which to object to an IEP. In fact, the only statute of limitations under Article 7 or the IDEA is a two-year statute of limitations. "The due process hearing must allege a violation that occurred not more than two (2) years before the date the parent or public agency knew or should have known about the alleged action that forms the basis of the due process hearing request..." 511 IAC 7-45-3(c). See also the federal counterpart:

"The due process complaint must allege a violation that occurred not more than two years before the date the parent or public agency knew or should have known about the alleged action that forms the basis of the due process complaint, or, if the State has an explicit

---

Petitioner "would only serve to delay the due process rights of T.S." This communication has several significant defects. First, under the federal rules of litigation the party that filed the Motion always gets the last word and an opportunity to reply. Second, the tribunal does not "respond" to a Party's Motion or communication. The tribunal issues orders. The litigation is not between the tribunal and the Petitioner. Third, Petitioner has the right to be represented by counsel and to make arguments on her own behalf. It defies logic that a response on Petitioner's behalf would serve to delay her due process rights.

9

time limitation for filing a due process complaint under this part, in the time allowed by that State law…"

34 C.F.R. §300.507(2).

The ten-day timeline refers to the obligations of schools, not parents. IEPs are to be implemented as soon as possible, but in no case, later than ten instructional days after consent is received. 511 IAC 7-42-8. That language is clear under the IDEA. It is also clear that once a parent challenges an IEP, the student is entitled to stay put placement. Article 7 says that "the public agency must continue to implement the current IEP if the parent challenges the proposed IEP prior to its implementation…" Id at (2). (Emphasis added). The language is clear, strong and can't be disputed. Article 7 does not use the word "may" implying an option, but "must" which makes clear there is no option. Moreover, Article 7 does not say that a parent only has ten days to challenge an IEP. In fact, Article 7 specifically says that a parent can challenge IEP within a two year period of time. Id. Stay put is determined when the IEP is challenged. Whenever the challenge occurs, "[t]he student shall remain the student's current educational placement…unless the parties agree otherwise. 511 IAC 7-45-7(u).

In this case, the Family has always been upfront and honest with West Noble. The Family has always stated that they believe that Kildonan is the appropriate placement for T.S. They have never wavered on that belief. West Noble knows that the Family does not agree with the services proffered in the August 17, 2012 IEP. The Family has been diligent and open with West Noble about their position and their expectations. The Family challenged the IEP by requesting due process on August 22 and again on September 5, by requesting mediation on August 29, and by requesting a meeting with the special education director on August 29. Each of these actions triggered the stay put requirement. Moreover, T.S. never attended school at

West Noble, and therefore, West Noble never implemented its IEP. Consequently, West Noble was never T.S.'s current placement.

Furthermore, the provision requiring that a student remains in the current placement during a due process proceeding will be the same no matter when the due process is filed, whether that is within ten instructional days or six months after the parent receives written notice of the IEP. The timeframe in which a school must implement an IEP to which no challenge or objection has risen has nothing to do with determining placement at the time the challenge does arise. As stated in the hearing officer's September 5, 2012 order, T.S.'s placement is at Kildonan. Therefore, the hearing officer's September 13, 2012 conclusion is neither supported by the law nor the facts.

3. The September 13, 2012 due process request relates back to the August 22, 2012 due process request, and therefore, the August 22, 2012 timelines are the ones that apply.

The IEP was proffered to the Family on August 17, 2012. The Family filed a *pro se* request for due process to challenge the IEP. The Family decided to pursue other means to challenge the school's IEP and seek enforcement of the Rennselaer IEP and, therefore, requested dismissal of the due process <u>without prejudice</u>. Dismissal without prejudice was granted by the hearing officer on August 30, 2012. On September 4, 2012, the Family participated in a meeting with the special education director, which did not resolve the issues. On September 5, 2012, the Family again requested due process. Though the IDOE assigned a new cause number, it went outside the normal rotation of hearing officers to reassign the case to the same hearing officer. Moreover, the hearing officer found that the September 5, 2012 request "included issues closely parallel to those articulated in the initial request for a due process hearing." It is clear that in the minds of both the hearing officer and the IDOE the second request related back to the first

request. The second request was akin to an amended request in this regard because the same

hearing officer kept jurisdiction of the case. According to Federal Rule of Civil Procedure 15(c),

an amended pleading will relate back to the date of the original pleading when the law that

provided the applicable statute of limitations allows relation back or when the amended pleading

asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out, or

attempted to be set out, in the original pleading. See Federal Rule of Civil Procedure 15(c).

Clearly, the IDOE believes that this claim arises out of the conduct, transaction or occurrence

of the original pleading because the IDOE intentionaly went out of rotation to assign it to the

same hearing officer. Though Article 7 is silent as to whether the statute of limitations allows

relation back, based on the actions of the IDOE reassigning the same hearing officer and the

hearing officer's acceptance of the case, Article 7 will allow relation back. For that reason, the

timeline is not moot as stated by the hearing officer[5], but rather reinstated by virtue of the

Federal Rules of Civil Procedure and the actions of the IDOE in reassigning the case to the

hearing officer and him accepting it.

    4.  T.S. has stay put at Kildonan by virtue of the hearing officer's September 7, 2012
           order placing her at Kildonan and public policy supporting the stay put provision.

On September 5, 2012, when the Family requested a due process hearing to challenge the

August 17 IEP, they also filed an Emergency Motion for Stay Put that specified the facts of the

case, that Kildonan's first student day of school was September 7, 2012 and included a copy of

the Rennselaer IEP as an exhibit. On September 7, 2012, the hearing officer issued an order

specifically granting the Family's request for stay put and ordering placement at Kildonan. See

Order dated September 7, 2012. The hearing officer has the power to determine stay put

---

[5] The hearing officer concluded that the dismissal of the original due process made the original timelines "moot."
Clearly, if the timeline is the reason that the hearing officer believes T.S. lost stay put placement at Kildonan, then
the timelines are anything but moot.

placement. 511 IAC 7-45-8 (s), 511 IAC 7-45-8 (u), and 34 C.F.R. § 300.518(d).  In fact, a

hearing officer's order determining stay put is treated as an agreement between the State and the

family for purposes of determining stay put. 34 C.F.R. §300.518(d).  Therefore, when the

hearing officer ordered placement at Kildonan, with full knowledge there was a stay put dispute,

that order created an agreement between the State and the Family and automatically made T.S.'s

stay put placement Kildonan.  See IC 4-21.5-4-3

      In fact, the Family, relying on the hearing officer's orders traveled from West Noble,

Indiana, to Amenia, New York, and paid the second $5,000 deposit in order to secure T.S.'s

placement at Kildonan.  Once the hearing officer rules on a child's placement, that placement

becomes stay put for the student. See *Susquenita School Dist. V. Raelee S.*, 24 IDELR 839 (3d

Cir. 1996).  (Parents were required to bear the initial expenses of a placement when they rejected

the district's proposed IEP, but once there was an administrative or judicial decision supporting

their position, the district was financially responsible for "fronting" the funds necessary for

continued private education from the time of that decision forward.)  See also *Montgomery

Township Bd. Of Educ. v. S.C. ex rel D.C.*, 47 IDELR 71 (D.N.J. 2007).  (Student was eligible

for reimbursement of all costs of placement once the ALJ determined placement was private

school). See also *P.R. v. Roxbury Township Bd. Of Educ.*, 49 IDELR 155 (D.N.J. 2008).  (For

stay put purposes, a hearing officer's determination of placement has the same effect as a

placement agreement between the district and the parent.)[6]

      While all of these cases involve final decisions[7], the policy implications that applied to

them apply to this case.

---

[6] Each of the cases in this string cite has been attached in the appendix to this brief.

[7] Despite searching, Petitioner's Counsel was unable to find a single case in which a hearing officer ordered one placement then changed his mind.

> The fact that the stay put provision requires a specific showing on the part of the moving party, and no balancing of equities by the court, evidences Congress's sense that there is a heightened risk of irreparable harm inherent in the premature removal of a disabled child to a potentially inappropriate educational setting.  In light of this risk, the stay put provision acts as a powerful protective measure to prevent disruption of the child's education throughout the dispute process.  It is unlikely that Congress intended this protective measure to end suddenly and arbitrarily before the dispute is fully resolved.

*Joshua A. v. Rocklin Unified School District*, 52 IDELR 1 (9th Cir. 2009).  The stay put provision was written to avoid exactly what will occur in this case if the hearing officer does not change his order- disruption to T.S.'s education during litigation.  The Family does not believe that West Noble is an appropriate placement for T.S.  The hearing officer ordered placement at Kildonan.  That decision created an automatic agreement of placement between the Family and the State, and therefore, automatically made Kildonan T.S.'s stay put placement.

5.  T.S. is entitled to placement at Kildonan, not the "comparable services" argued by West Noble.

West Noble argues that Kildonan is not stay put placement because the law changed after *Casey K.*, requiring the school only to provide "comparable services" and not the same placement.  However, West Noble's argument fails for two reasons.  First, the provision cited by West Noble in support of its argument does not apply to T.S.  Second, *Casey K.* addressed the "comparable services" and under that analysis, Kildonan remains T.S.'s stay put placement.

The "new" provision cited by West Noble is 511 IAC 7-42-8(e).  It was earlier cited in this brief.  That provision provides:

> If a newly enrolled student received special education services from another public agency within the state, and enrolls in a new public agency within the same school year, the new public agency, in consultation with the student's parent, must immediately provide the student with a free appropriate public education, including services comparable to those described in the student's IEP from the previous public agency, until the new public agency either:
> (1) Adopts the student's IEP from the previous public agency; or

(2) Develops, adopts, and implements a new IEP that meets the applicable requirements
of this rule.

The plain language of the statute makes clear that T.S. is not affected by this change.  First, T.S. did not enroll at West Noble "in the same school year."  She enrolled at the start of the 2012-2013 school year, not in the middle of it or in the middle of the prior school year.  Second, this provision does not apply to school/parental disputes over the appropriateness of IEPs.  This provision is contained in Rule 42 of Article 7, which contains the laws for determining special education services.  This rule ensures that when students move, services of the same quality move with them.  The stay put provision goes further.  It ensures that during litigation, the student is not just provided with "comparable services" but identical services and placement.  This is clear when the "comparable services" language in the special education determination section is compared to the stay put language in the litigation section.  That language makes clear that the "student shall remain in the student's current educational placement" when there is pending litigation.  511 IAC 7-45-7(u).  (Emphasis added.)

Second, *Casey K.* addressed a similar issue.  The Court in *Casey K.* analyzed the case of *Johnson ex rel. Johnson v. Special Education Hearing Office,* 287 F. 3d 1176 (9th Cir. 2002).  In *Johnson*, the Ninth Circuit indicated that a disabled child was only entitled to a comparable educational placement.  The Seventh Circuit noted that the school in *Johnson* was able to dissolve the "automatic injunction" created by the stay put provision because the "comparable" placement in that case involved identical curriculum, identical tutors, and was functionally identical to the prior placement.  *Casey K.* at 513.  The Seventh Circuit further noted that Casey's removal from the "private school with completely different teachers, curriculum, and classmates" was not appropriate.  The plain language of the statute and case law make clear that

T.S. is entitled to more than comparable services, she is entitled to identical placement during the pendency of the litigation of this matter. T.S.'s stay put placement is Kildonan.

CONCLUSION

WHEREFORE, for the foregoing reasons, Petitioners request that the hearing officer reconsider his order of September 13, 2012, denying placement at Kildonan, order immediate placement at Kildonan as well as immediate reimbursement of the costs incurred by the Family in placing T.S. at Kildonan and for all other relief deemed just in the premises.

Respectfully submitted,

Alexandra M. Curlin, (#24841-49)
FLEMING STAGE, LLC
310 N. Alabama St., Ste. 300
Indianapolis, IN 46204
Telephone (317) 202-0301
Facsimile (317) 536-3663
E-mail: amcurlin@flemingstage.com

## **CERTIFICATE OF SERVICE**

I do hereby certify that a copy of the foregoing has been duly served upon parties listed below by facsimile and first class mail this 24th day of September, 2012.

Jason Clagg
Barnes & Thornburg
600 One Summit Square
Ft. Wayne, IN 46802

Alexandra M. Curlin, (#24841-49)
FLEMING STAGE, LLC
310 N. Alabama St., Ste. 300
Indianapolis, IN 46204
Telephone (317) 202-0301

Facsimile (317) 536-3663
E-mail: amcurlin@flemingstage.com

*James A. Jacobs, Ph.D.*
*Independent Hearing Officer*
*Professor of Special Education*
*Bayh College of Education*
*Indiana State University*
*Terre Haute, IN 47809*

*Office: (812) 237-3585*
*Cell: (812) 264-4105*

*Fax: (812) 237-8208*
*E-mail: James.Jacobs@indstate.edu*

## BEFORE AN INDEPENDENT HEARING OFFICER
## APPOINTED BY THE INDIANA DEPARTMENT OF

| | | |
|---|---|---|
| In the Matter of the Article 7 Hearing Regarding | ) | |
| | ) | |
| | ) | |
| T.S. By her parents and next friends, ▄▄▄ and ▄▄▄ Stuff | ) | |
| | ) | |
| | ) | |
| Petitioners, | ) | |
| | ) | |
| And | ) | NOTICE |
| | ) | Hearing Number HR-009-2013 |
| | ) | |
| West Nobel School Corporation By the Northeast Indiana Special Education Corporation | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| Respondent | ) | |

## ENTRY

On September 6, 2012, Petitioners filed an **EMERGENCY MOTION FOR STAY-PUT PLACEMENT.** This Independent Hearing Officer, (IHO) responded to Petitioners' Motion on September 7, 2012, stating that "Subject to the content of Respondents' brief, the IHO will render a subsequent Order regarding the educational placement of the Student during the pendency of this matter." This IHO received the School's brief on September 11, 2012. This IHO issued a **RESPONSE TO PETITIONERS' REQUEST FOR "STAY PUT" AND THE SCHOOL'S BRIEF IN OPPOSITION TO PETITIONERS' EMERGENCY MOTION FOR STAY-PUT PLACEMENT.** Petitioners', by counsel, provided correspondence to the IHO in which Petitioners' stated that this correspondence was intended to provide notice that Petitioners would like to file a reply to Respondent's prior response to Petitioners'

**EXHIBIT L**

**EMERGENCY MOTION FOR STAY-PUT PLACEMENT.** On September 18, 2012, this IHO issued **RESPONSE TO PETITIONERS' REQUEST FOR RESPONDING TO RESPONDENT'S ANSWER TO PETITIONERS' DUE PROCESS HEARING REQUEST AND AFFIRMATIVE DEFENSES,** in which this IHO **denied** Petitioner's request to provide such response.

On September 24, 2012, Petitioners, by counsel, in direct violation of this IHO's previous Order submitted a **BRIEF IN SUPPORT OF PLAINTIFFS' MOTION TO RECONSIDER SEPTEMBER 13, 2012 STAY PUT RULING.** In that Petitioners' "notice" is in direct disregard of a previous ruling by this IHO, no response from this IHO will be forthcoming, nor will any content contained therein be considered by this IHO regarding Petitioners' motion as stated above at this time.

Both parties are hereby served notice that this IHO will not respond to further argument regarding any issue pending in this matter prior to hearing. Such will be the primary purpose of the pending due process hearing.

Dated this 28th day of September, 2012

James A. Jacobs, Ph.D.
Independent Hearing Officer

**Distribution:  facsimile and first class mail**

**For Petitioners:**

Alexandra M. Curlin, Esq.
Fleming Stage LLC
310 North Alabama Street, Suite 300
Indianapolis, IN 46204
Phone: 317-686-1515
FAX: 317-536-3663

**For Respondents:**

Jason T. Clagg, Esq.
Barnes & Thornburg, LLP
600 One Summit Square
Fort Wayne, IN 46802-3119
Phone: 260-423-9944
FAX: 260-424-8316
Mark D. Scudder, Esq.

# APPENDIX A



Rensselaer Central School Corp

**Case Conference Committee Report**

Date of Report: 04/05/2012
Individual Education Program
IEP Effective Date:
04/02/2012 to 03/07/2013

**Student:** T███ ████ S██

**STN: 321303115**

**Date of Birth:** 09/30/1997          **Age:** 14          **Current Grade:** 8          **Gender:** F

**Guardian Information**

| | |
|---|---|
| Relation: Legal Guardian | Relation: |
| Name: ██ and ████████ | Name: |
| Business Phone: | Business Phone: |
| Home Phone: 1-████████ | Home Phone: |
| Mobile Phone: | Mobile Phone: |
| Address: ████████ ████████ | Address: |

**Purposes of Case Conference**

Transition, Revise IEP without a meeting

**Case Conference Meeting Scheduled**

**Date:** 04/02/2012          **Time:** 11:00          **Place:** CSS office

**Evaluation Information and Student Data**

**Strengths of the student:**
3/6/12 Friendly, Wants to do well, interested in others, Likes to act in plays, involved in school activities, has adjusted well to her new environment

**Response to instructional strategies and research-based interventions:**
3/6/12 T███ has received direct instruction in reading for both decoding and comprehension skill development. T██ responds well to a multi-sensory approach in all areas, especially to reading instruction. Kildonan School provides instruction using Cursive Writing Skills, Explode the Code, and Simultaneous Oral Spelling in addition to her academic classes to address language skill deficits. She is making progress using these approaches.

**Progress Monitoring Data:**
3/6/12 Kildonan School will provide regular updates on her progress. T███ continues to make academic progress.

**Present level of academic and functional performance:**
3/6/12 Per reports from staff at Kildonan and her grandparents, T███ has adjusted well to her new school and living arrangements. While she is a welcome member of their community, her Dorm Masters do report some difficulty with using her best judgments regarding relationships with the other girls. They recommend that she focus on creating healthier bonds. She has been involved in social activities and was on the basketball team. She was reported to be a key member of the team and has a solid grasp of fundamentals and basic court sense. All reported academic grades are in the B/C range. She is reported to be a motivated student. She has reported enjoying reading the books in her class. She needs reminders to slow her pace with her reading at times but takes redirection well. Organization continues to be an area of need and is addressed by school staff. Test scores are lower than daily work. At times, this is because she is not thorough in her answers or leaves out needed details. Math continues to be a stronger area for her.

**Concerns of the Parent**

Exhibit A



3/6/12 T⬛⬛'s grandparents are concerned about T⬛⬛'s reading skills and receiving the support she needs to make progress in school so that she can earn a diploma. They would like for her to remain at Kildonan School.

---

**Eligibility**

**Student is eligible for Special Education Services:**

**Primary Disability:** Other Health Impairment

**Secondary Disability:** Specific Learning Disability

**Reasons of eligibility determination:**
see file

---

**Special Considerations**

There are no language needs related to limited English Proficiency.

The behavior of the student does not impede his or her learning or that of others

---

**Outcomes**

**Summary of Findings from Age Appropriate Transition**
3/6/12: Parent Interview: T⬛⬛ continues to express a desire to go to college. She is not clear as to what she would like to study but has mentioned teaching, medical field, and art as different areas of interest.

02/21/2011: Interest survey conducted by TOR. T⬛⬛ reported that she is interested in the medical field, specifically, she would like to be doctor. She plans on attending college and would like to go to Purdue.

**Post-Secondary Goals:**
**Cite evidence to support the decision that an Independent Living Skills goal is not applicable:**
3/6/12 Based on reports from Kildonan School and her grandparents, T⬛⬛'s skills in the area of independent living are adequate for her age.

2/2011T⬛⬛'s skill level in the area of independent living is that of her same-age peers as seen through guardian, parent, and teacher observations.
**Regarding Employment after high school, I will:**
· 3/6/12 work in an area of interest after obtaining necessary training/education.

2/2011 work within the medical field.

**Regarding Education and Training after high school, I will:**
3/6/12 go to college.

2/2011 go to college at Purdue.

**The postsecondary goals were updated annually:**
YES - postsecondary goals were reviewed and discussed and have been updated accordingly.

**Anticipated Date of Graduation:** 06/01/2016

**Graduation Option**
The student will pursue a high school diploma

Therefore, the student's academic goals will be the same as non-disabled peers at grade-level or will generally be aligned to grade-level curriculum.

---

**Participation in Testing Programs**

The student attends an accredited school and will be in grades 3-8

Exhibit A

High School Diploma

| | |
|---|---|
| **Math (7):** | ISTEP with accommodations |
| **Math (8):** | ISTEP with accommodations |
| **Language Arts (7):** | IMAST with accommodations |
| **Language Arts (8):** | IMAST with accommodations |
| **Social Studies (7):** | IMAST with accommodations |
| **Algebra:** | Tested course is not yet in student's course of study |
| **Language Arts:** | Tested course is not yet in student's course of study (grade 9 only) |
| **Biology:** | Tested course is not yet in student's course of study |

**Reasons for the determination of participation of testing:**

T⬤ is pursuing a diploma, therefore, she needs to take these state assessments. If she were in an Indiana school, IMAST would be chosen for Language Arts and Social Studies to reduce reading frustrations while IS-TEP+ was chosen for math since this is her stronger area.

**Plan for participation in district-wide, national or international assessments:**

T⬤ will participate in any local, state, or national testing through Kildonan School with appropriate accommodations.

---

## Goals

**Goal Title:** Language Arts: Written Expression

**Present Level:** 3/6/12 Based on reports from Kildonan School, T⬤ is becoming adept at catching errors in letter formation but struggles to form many letters correctly. She has a solid background of phonics concepts. Written expression is still an area of weakness and she needs to improve her prewriting skills (rough draft, etc..

**Need:** T⬤ needs to improve her skills in the area of written expression including the writing process, applications, and conventions.

**Goal Statement:** T⬤ will demonstrate mastery of 75% of the listed Language Arts Indiana Acacemic standards' indicators with accommodations and supports.

**The goal has been written to support:** Employment Skills, Education /Training Skills

**Method / Instrumentation for Measuring Progress:** Teacher Observation, Written Performance, Oral Performance, Work sample, Grades, Report Cards

**Progress Monitoring Design:** Descriptive Documentation

**Standard(s) / Element(s) Aligned to Goal:**

- Discuss ideas for writing, keep a list or notebook of ideas, and use graphic organizers to plan writing.
- Create compositions that have a clear message, a coherent thesis (a statement of position on the topic), and end with a clear and well-supported conclusion.
- Use a computer to create documents by using word-processing skills and publishing programs; develop simple databases and spreadsheets to manage information and prepare reports.
- Review, evaluate, and revise writing for meaning and clarity.
- Edit and proofread one's own writing, as well as that of others, using an editing checklist or set of rules, with specific examples of corrections of frequent errors.
- Revise writing for word choice; appropriate organization; consistent point of view; and transitions among paragraphs, passages, and ideas.
- Write responses to literature that: demonstrate careful reading and insight into interpretations; connect response to the writer's techniques and to specific textual references; make supported inferences about the effects of a literary work on its audience; support statements with evidence from the text.
- Write using precise word choices to make writing interesting and exact.
- Write for different purposes and to a specific audience or person, adjusting tone and style as necessary.
- Use correct and varied sentence types (simple, compound, complex, and compound-complex) and sentence openings to present a lively and effective personal style.
- Edit written manuscripts to ensure that correct grammar is used.
- Use correct punctuation.
- Use correct capitalization.
- Use correct spelling conventions.

Exhibit A



• Use precise language, action verbs, sensory details, appropriate and colorful modifiers and the active rather than the passive voice in ways that enliven oral presentations.
• Use appropriate grammar, word choice, enunciation (clear speech), and pace (timing) during formal presentations.
• Deliver oral responses to literature that: interpret a reading and provide insight; connect personal responses to the writer's techniques and to specific textual references; make supported inferences about the effects of a literary work on its audience; support judgments through references to the text, other works, other authors, or personal knowledge.

**Objectives/Benchmarks are only required for students participating in ISTAR in lieu of ISTEP+:**
• T⬤ is not assessed using ISTAR, therefore, objectives are not required.

---

**Goal Title:** Reading: Decoding
**Present Level:** 3/6/12 Based on reports from Kildonan School, T⬤ has enjoyed reading age-appropriate books and can be a good source of information about them. She participates in class discussions of work that has been read. During oral reading, she substitutes words and needs reminders to slow her pace. She has a solid background of phonics concepts and is able to break words into parts through word division (VC/CV), compound words, and suffixes.
**Need:** T⬤ needs to improve her reading skills including vocabulary, decoding, fluency, and comprehension.
**Goal Statement:** T⬤ will demonstrate mastery (80%) of decoding of 6th grade reading passage with no accommodations.
**The goal has been written to support:** Employment Skills, Education /Training Skills
**Method / Instrumentation for Measuring Progress:** teacher/staff records from Kildonan
**Progress Monitoring Design:** Descriptive Documentation
**Standard(s) / Element(s) Aligned to Goal:**
• Compare and contrast information on the same topic after reading several passages or articles.
• Compare and contrast tales from different cultures by tracing the adventures of one character type. Tell why there are similar tales in different cultures.
• Connect and relate experiences and ideas to those of a speaker.
• Describe the differences of various imaginative forms of literature, including fantasies, fables, myths, legends, and other tales.
• Determine the theme.
• Draw conclusions or make/confirm predictions about text using prior knowledge & ideas presented in the text itself, including illustrations, titles, topic sentences, important words, foreshadowing clues and direct quotations.
• Identify informational texts written in narrative form (sometimes with undeveloped characters and minimal dialogue) using sequence or chronology.
• Identify the main events of the plot, including their causes and the effects of each event on future actions, and the major theme from the story action.
• Identify the narrator in a selection and tell whether the narrator or speaker is involved in the story.
• Locate information in reference texts by using organizational features, such as prefaces and appendixes.
• Read aloud grade-level-appropriate literary and informational texts with fluency and accuracy and with appropriate timing, changes in voice, and expression.
• Recognize main ideas and supporting details presented in expository (informational) texts.
• Use appropriate strategies when reading for different purposes.
• Use common roots (meter = measure) and word parts (therm = heat) derived from Greek and Latin to analyze the meaning of complex words (thermometer).
• Use context to determine the meaning of unknown words.
• Use details, examples, anecdotes (stories of a specific event), or experiences to explain or clarify information.
• Use knowledge of the situation, setting, and a characters traits, motivations, and feelings to determine the causes for that characters actions.
• Use knowledge of the situation, setting, and a character's traits, motivations, and feelings to determine the causes for that character's actions.

**Objectives/Benchmarks are only required for students participating in ISTAR in lieu of ISTEP+:**
• T⬤ is not assessed using ISTAR, therefore, there is no need for objectives.

---

Exhibit A



**Goal Title:** Reading: Comprehension

**Present Level:** 3/6/12 Based upon reports from Kildonan School staff, T⬤ is able to read and comprehend grade level material (Of Mice and Men) and age appropriate material (The Hunger Games trilogy). She needs to be re-minded to use a slower pace when reading aloud and will substitute words.

**Need:** T⬤ needs to increase her reading skills including vocabulary, decoding, fluency, and comprehension.

**Goal Statement:** T⬤ will correctly answer 80% of comprehension questions of 8th grade reading passages that she reads aloud including main idea, cause and effect, inference, details, and vocabulary.

**The goal has been written to support:** Employment Skills, Education /Training Skills

**Method / Instrumentation for Measuring Progress:** Teacher Observation, Written Performance, Oral Performance, Work sample, Grades, Report Cards, IRI, running records

**Progress Monitoring Design:** Descriptive Documentation

**Standard(s) / Element(s) Aligned to Goal:**

- Analyze idioms and comparisons, such as analogies, metaphors, and similes, to infer the literal and figurative meanings of phrases.
- Understand the influence of historical events on English word meaning and vocabulary expansion.
- Verify the meaning of a word in its context, even when its meaning is not directly stated, through the use of definition, restatement, example, comparison, or contrast.
- Compare and contrast the features and elements of consumer materials to gain meaning from documents.
- Analyze text that uses proposition (statement of argument) and support patterns.
- Find similarities and differences between texts in the treatment, amount of coverage, or organization of ideas.
- Compare the original text to a summary to determine whether the summary accurately describes the main ideas, includes important details, and conveys the underlying meaning.
- Evaluate the logic (inductive or deductive argument), internal consistency, and structural patterns of text.
- Analyze the structure, format, and purpose of informational materials such as textbooks, newspapers, instruc-tional or technical manuals, and public documents.
- Make reasonable statements and draw conclusions about a text, supporting them with accurate examples.
- Determine and articulate the relationship between the purposes and characteristics of different forms of po-etry (including ballads, lyrics, couplets, epics, elegies, odes, and sonnets).
- Evaluate the structural elements of the plot, such as subplots, parallel episodes, and climax; the plot's devel-opment; and the way in which conflicts are (or are not) addressed and resolved.
- Analyze the importance of the setting to the mood, tone, and meaning of the text.
- Identify and analyze recurring themes (such as good versus evil) that appear frequently across traditional and contemporary works.
- Identify significant literary devices, such as metaphor, symbolism, dialect or quotations, and irony, which de-fine a writer's style and use those elements to interpret the work.
- Analyze a work of literature, showing how it reflects the heritage, traditions, attitudes, and beliefs of its author.
- Contrast points of view – such as first person, third person, third person limited and third person omniscient, and subjective and objective–in narrative text and explain how they affect the overall theme of the work.
- Analyze the relevance of setting (places, times, customs) to mood, tone, and meaning of text.

**Objectives/Benchmarks are only required for students participating in ISTAR in lieu of ISTEP+:**

- T⬤ will not be assessed using ISTAR, therefore, objectives are not needed.

---

**Goal Title:** Social/Emotional

**Present Level:** 3/6/12 Per grandparent and Kildonan staff reports, T⬤ has made a good transition to her new en-vironment. Counseling services have been provided on -grounds. Staff reported that T⬤ has not always used her best judgment in regards to peer relations. Her grandparents reported some minor issues with her roommate.

**Need:** T⬤ needs to continue to develop appropriate coping skills and employ them within the school setting.

**Goal Statement:** T⬤ will accurately develop an appropriate strategy for school based problems she might find her-self in as part of role playing with the counseling session for 8 of 10 examples provided.

**The goal has been written to support:** Employment Skills, Education /Training Skills

**Method / Instrumentation for Measuring Progress:** counselor observation

**Progress Monitoring Design:** Descriptive Documentation

**Standard(s) / Element(s) Aligned to Goal:**

Exhibit A

- Demonstrates creativity: thinks in new ways
- Demonstrates effort: puts forth personal best to complete a task.
- Demonstrates initiative: makes the personal decision to do what needs to be done.
- Demonstrates integrity: acts according to what's right and wrong.
- Demonstrates responsibility: is accountable for own actions.

**Objectives/Benchmarks are only required for students participating in ISTAR in lieu of ISTEP+:**
- ██████ is not assessed with ISTAR, therefore, objectives are not required.

---

**Accommodations**

**The following accommodations have been selected for state assessment purposes and must be provided on a regular basis:**

    **Social Studies (7)**
- Presentation Format: Test read aloud to the student by test administrator (except items testing comprehension)
- Presentation Format: Student provided with additional examination examples
- Response Format - Student is provided with extended testing time for test sessions
- Presentation Format: Student tested in small group setting

    **Math (7)**
- Presentation Format: Test read aloud to the student by test administrator (except items testing comprehension)
- Presentation Format: Student tested in small group setting
- Presentation Format: Student provided with additional examination examples
- Response Format - Student is provided with extended testing time for test sessions

    **Language Arts (7)**
- Presentation Format: Student tested in small group setting
- Presentation Format: Test read aloud to the student by test administrator (except items testing comprehension)
- Response Format - Student is provided with extended testing time for test sessions
- Presentation Format: Student provided with additional examination examples

    **Math (8)**
- Timing / Scheduling - Student provided with additional breaks
- Response Format - Student is provided with extended testing time for test sessions
- Response Format: Student has use of a calculator during sessions identified as noncalculator sessions
- Setting and Environment: Student is provided preferential seating
- Presentation Format: Student tested in small group setting
- Presentation Format: Test read aloud to the student by test administrator (except items testing comprehension)
- Presentation Format: Student provided with additional examination examples

    **Language Arts (8)**
- Timing / Scheduling - Student provided with additional breaks
- Response Format - Student is provided with extended testing time for test sessions
- Response Format: Student has use of a computer or other assistive technology (AT) device
- Setting and Environment: Student is provided preferential seating
- Presentation Format: Student tested in small group setting
- Presentation Format: Test read aloud to the student by test administrator (except items testing comprehension)
- Presentation Format: Student provided with additional examination examples

**Description of additional accommodations that will be provided:**

---

**Services and Other Provisions**

Exhibit A



**Transition Services and Activities:**

| Description | Frequency | By Whom | Date of Completion | To Support (if selected) |
|---|---|---|---|---|
| Research careers of interest | 1 per year (transition services only) | school staff and Taylor | 03/05/2013 | Employment Skills |
| **Narrative:** | | | | |
| Develop schedule of classes | 1 per year (transition services only) | school personnel and Taylor | 03/05/2013 | Education /Training Skills |
| **Narrative:** | | | | |

**Document the written information that was presented to the parent and student regarding the available adult services provided through state and local agencies and other organizations to facilitate student movement from public agency to adult life.**
Information about Vocational Rehabilitation Services will be provided to T▇▇ and her family as she progresses through high school.

**Special Education Services:**

| Description | Initiation (Date) | Frequency | Length (Time) | Duration (End Date) | Location | To Support |
|---|---|---|---|---|---|---|
| Direct Services | 04/02/2012 | 1 per day | 6 hour(s) | 03/05/2013 | Special Education Setting | Employment Skills Education /Training Skills |
| **Narrative:** direct instruction in all areas through a residential school | | | | | | |
| Indirect Support | 04/02/2012 | 1 per day | 18 hour(s) | 03/05/2013 | General Education Setting | Employment Skills Education /Training Skills |
| **Narrative:** residential services | | | | | | |

**Related Services:**

| Description | Initiation (Date) | Frequency | Length (Time) | Duration (End Date) | Location | To Support |
|---|---|---|---|---|---|---|
| Counseling services | 04/02/2012 | 1 per week | 45 minute(s) | 03/05/2013 | Special Education Setting | Employment Skills Education /Training Skills |
| **Narrative:** | | | | | | |

Exhibit A

| Transportation | 04/02/2012 | per day | minute(s) | 03/05/2013 | | |
|---|---|---|---|---|---|---|
| **Narrative:** | | | | | | |

Ta███s family will be reimbursed mileage at the corporation rate for seven round trips per school year.

**Transportation:**
> **The transit time and the transportation needs are not the same as that of non-disabled peers.**
> Ta███ attends a residential school and her grandparents will be reimbursed for trips according to her IEP.

**Accessible Materials:**
> **The student does need instructional materials to be provided in an accessible format.**
> Ta███s reading disability and attention deficits require a multisensory approach including auditory input with visual.

**Assistive Technology:**
> **The student does need assistive technology.**
> voice output digital reader (Read Aloud); word processor for longer written assignments, dictation software

**Extended School Year:**
> **It was determined that extended school year services are not necessary in order to provide a free and appropriate education.**

**Technical Assistance:**
> **Support is necessary to provide public agency personnel with the knowledge and skills necessary to implement the student's individualized education program.**
> Awareness of Ta███'s individual needs and disabilities and supports required through her IEP; training in multi-sensory approaches to instruction

**Program Modifications:**
> **Program modifications are not needed to enable the student to advance appropriately toward attaining the annual goals, to be involved in and make progress in the general education curriculum, to partic-ipate in extracurricular and other nonacademic activities or to be educated or participate with other students with disabilities and nondisabled students.**

**Periodic reports on the student's progress toward goals will be provided:**
> Progress report included with report cards.

**Reasons for provisions and reasons for rejecting other options:**
> The supports of her IEP are designed to help Ta███ develop the skills she will need to earn a high school diploma within the public school setting. A variety of options were discussed and the ones selected were deemed by the Case Conference Committee to best meet her needs at this time. Her progress will be moni-tored and the committee re-meet to review.

**The student does not have an emergency evacuation plan.**

| Least Restrictive Environment |
|---|

**School of Legal Settlement:** Rensselaer Central School Corp, Rensselaer Middle School (3221)

**School of Service:** Rensselaer Central School Corp, Rensselaer Middle School (3221)

**Courses of Study focused on improving academic and functional achievement of the student in order to sup-port the attainment of post-secondary goals:**

Exhibit A

Classes designed to lead towards a high school diploma, specific courses available through the guidance department.

**LRE Placement Category based on Federal Program Types:**
54: Residential facility

**Additional descriptors**
T⬛ will be placed in a residential school.

**Any potentially harmful effects of the services on the student or on the quality of services needed:**
While at a residential school, T⬛ will not be able to be a part of her community. She will not be able to make social connections or maintain friendships in the community.

**Reasons for placement determination including reasons for rejecting other options:**
The level of services for placement was selected to help T⬛ make progress towards earning a high school diploma and reach the goals of her IEP. She needs to have access to grade level material and curriculum and receive intense instruction in reading and math. Her current placement will provide this.

---

**General Considerations**

**Student will not be able to participate in all educational programs and activities that are made available to nondisabled students.**
T⬛ will be in a residential program.

**Student will not be able to participate in all non-educational and extracurricular activities that are made available to nondisabled students.**
T⬛ will be in a residential program.

**Student will not participate in the general physical education program that is available to nondisabled students.**
T⬛ will be in a residential program.

**Student will not be educated in the school (he/she) would attend if not disabled.**
T⬛ will be in a residential program.

**The length of the instructional day will not be the same as the instructional day for nondisabled peers.**
T⬛ will be in a residential program.

---

**Participants**

**The following individuals participated in the case conference committee meeting. Those individuals identified as Teacher of Record, General Education Teacher, Public Agency Rep and Instructional Strategist were in attendance for the entire meeting unless parental excusal was obtained before the meeting.**

| Position | Name | Title |
|---|---|---|
| Parent | ⬛⬛⬛ | |
| Teacher of Record | Tom Hermiz | |

**Does the Parent reject provision of FAPE and intend to unilaterally enroll child in a non public school?** No

---

**Written Notes and Other Relevant Factors**

4/2/12 Mary Gates who provides counseling to T⬛ emailed and requested to increase her services to once a week. Mr. and Mrs. S⬛ agreed to revise the IEP without a meeting to change this service. No other changes were made.

Exhibit A



3/6/12 Purpose of the case conference was to hold T████'s Annual Case Review.

Family Report: T████'s grandparents reported that she has made a good transition to Kildonan. She has stated she really likes it there and that she now enjoys reading. They have had good contact with the staff. There was a phone call from T████ where they were concerned that she was feeling a little depressed. They contacted the staff and they met with T████ and were able to help her over the issue. She has been able to be involved in many of the social events and is making friends.

School Reports: Reports from staff at Kildonan were reviewed. She is making B's and C's. Test scores are lower than her daily work. This is due to not providing thorough answers or enough details. She needs reminders to slow her pace of work and reading at times but she takes redirection well.

General Discussion: Placement options were discussed. It was agreed that T████ will continue at Kildonan for the rest of this school year and next. Her IEP was revised to reflect this. Concerns with how portions of the IEP are worded were discussed - since she is not in her public school then her IEP says she is not able to participate in PE and extra-curricular events but she is participating in these at Kildonan. Counseling services will continue twice a month. Transportation will be reimbursed for 7 trips per school year.

Plan:
1. Goals written based on T████'s needs and Indiana standards
2. Accommodations developed
3. Placement at Kildonan School
4. Counseling
5. Transportation

*** Due to technical issues with the IEP program, T████'s disability categories do not always print out correctly. Her primary disability is a specific learning disability and her secondary disability is an other health impairment.

Exhibit A

**Notice of Implementation**

I have been presented with a copy of the Individualized Education Program (IEP) which contains:

1) A description of the action proposed by the public agency;
2) An explanation of why the public agency proposed to take the action;
3) A description of each evaluation, procedure, assessment, record, or report the agency used as a basis for the proposed action;
4) A description of other options that the case conference committee considered and the reasons why those options were rejected; and
5) A description of other factors relevant to the agency's proposal.

I understand that the public agency is not required to obtain a written parental consent and can implement this IEP ten (10) instructional days after the provision of this notice unless I challenge the proposed action by:

- Requesting and participating in a meeting with an official of the public agency who has the authority to facilitate the disagreement between the parent and the public agency regarding the action proposed or refused by the public agency.
- Securing an agreement for mediation under 511 IAC 7-45-2.
- Requesting a due process hearing under 511 IAC 7-45-3.

In the case of an initiation date that is prior to expiration of ten (10) instructional days, I give my consent to implement the IEP.

I understand that a parent of a student with a disability has protection under the procedural safeguards which are provided with this notice and that I can request a copy of the procedural safeguards at any time. The procedural safeguards document includes a list of resources to contact for assistance in understanding the provisions of Indiana special education rules.

**Sign**                                    **Date**

Exhibit A



# APPENDIX B



Alexandra M. Curlin
Direct Phone (317) 686-9103
amcurlin@curlinlaw.com

August 28, 2012

Dr. James Jacobs
College of Education
Indiana State University
Terre Haute, IN  47809

**VIA FACSIMILE AND FIRST CLASS MAIL**

RE:   HR-005-2013

Dear Dr. Jacobs,

Please allow this letter to serve as notice that the undersigned and this firm appears on behalf of the Petitioners, ███████████████ in the above captioned matter.  Please direct all correspondence to me.  Please note that I have moved law firms, however, my e-mail is not yet set up.  Please continue to use my "curlinlaw" e-mail until further notice.

My clients do believe they are entitled to stay put placement because the last agreed upon IEP places T.S. at Kildonan School.  I have not yet had an opportunity to talk to Mr. Clagg about stay put but would like to discuss this with him before filing a formal motion.  Kildonan has registration on September 6 and school begins September 7.  Should the parties not agree to stay put placement, my client will file an emergency request for a preliminary injunction requesting immediate placement at Kildonan.  It may be beneficial to schedule an emergency hearing regarding this issue in the event that the parties do not come to agreement.  Again, I've not had an opportunity to discuss this yet with Mr. Clagg and would ask that the hearing officer allow me the rest of the afternoon and tomorrow morning before scheduling an emergency hearing.  Please do not hesitate to contact me should you have any questions.

Sincerely,

*Alexandra M. Curlin*

Alexandra M. Curlin/eam

Distribution:
S████Family (via electronic mail)
Jason Clagg (via facsimile and first class mail)

310 North Alabama Street, Suite 300, Indianapolis, IN  46204
Telephone: (317) 686-1515  Fax: (317) 686-9137
www.FlemingStage.com
Exhibit B

# APPENDIX C



**BEFORE AN INDEPENDENT HEARING OFFICER**
**APPOINTED BY THE INDIANA DEPARTMENT OF EDUCATION**
**PURSUANT TO 511 IAC 7-45-3**

| | | |
|---|---|---|
| T.S. by her Guardians and Next of | ) | |
| Friends, Edward S. and Virgina S. | ) | |
|     Petitioners, | ) | |
| | ) | Hearing No. HR-005-2013 |
| | ) | Independent Hearing Officer |
| and | ) | Dr. James Jacobs |
| | ) | |
| West Noble School Corporation | ) | |
|     Respondents. | ) | |

## MOTION TO WITHDRAW DUE PROCESS REQUEST

COMES NOW, Petitioners, by counsel and does hereby respectfully request withdrawal of the above captioned request for due process without prejudice. The following reasons for withdrawal are herein set forth:

1. Petitioners filed this case *pro se* using a form from the Indiana Department of Education website.

2. Petitioners do not seek to challenge West Noble's proffered IEP. Petitioners simply seek enforcement of the IEP already in place for T.S. Exhibit A.

3. At this time Petitioners do not believe that the school corporation has committed any procedural violations that amount to a denial of a free appropriate public education.

4. For those reasons, Petitioners believe this case is not ripe for due process at this time and therefore seek dismissal of this matter without prejudice.

WHEREFORE, for the foregoing reasons, Petitioners seek dismissal of this case without prejudice and all other relief deemed just in the premises.

Respectfully submitted,

Exhibit C

Alexandra M. Curlin, (#24841-49)
FLEMING STAGE, LLC
310 N. Alabama St., Ste. 300
Indianapolis, IN  46204
Telephone (317) 202-0301
Facsimile (317) 536-3663
E-mail: amcurlin@flemingstage.com

## CERTIFICATE OF SERVICE

I do hereby certify that a copy of the foregoing has been duly served upon parties listed below by facsimile and first class mail this 29th day of August, 2012.

Jason Clagg
Barnes & Thornburg
600 One Summit Square
Ft. Wayne, IN  46802

Alexandra M. Curlin, (#24841-49)
FLEMING STAGE, LLC
310 N. Alabama St., Ste. 300
Indianapolis, IN  46204
Telephone (317) 202-0301
Facsimile (317) 536-3663
E-mail: amcurlin@flemingstage.com

Exhibit C

# APPENDIX D

**James A. Jacobs, Ph.D.**
*Independent Hearing Officer*
*Professor of Special Education*
*Bayh College of Education*
*Indiana State University*
*Terre Haute, IN  47809*

*Office:  (812) 237-3585*
*Cell:  (812) 264-4105*

*Fax:  (812) 237-8208*
*E-mail: James.Jacobs@indstate.edu*

### BEFORE AN INDEPENDENT HEARING OFFICER
### APPOINTED BY THE INDIANA DEPARTMENT OF EDUCATION
### PURSUANT TO 511 IAC 7-45-8

| | |
|---|---|
| In the Matter of the Article 7 Hearing Regarding )<br><br>T.S.  by his parents and next friends, Edward and Virgina S████ )<br><br>Petitioners, )<br><br>And )<br><br>Northeast Indiana Special Education Corporation )<br><br>Respondent ) | NOTICE<br>Hearing Number HR-005-2013 |

### ORDER OF DISMISSAL

Petitioners now come submitting a **MOTION TO WITHDRAW DUE PROCESS HEARING REQUEST**, by facsimile dated August 29, 2015, stating that in part that "Petitioners believe this case in not ripe for due process at this time and therefore seek dismissal of this matter without prejudice."  Petitioner's motion is granted. As such, by request of counsel for petitioners, this matter is DISMISSED WITHOUT PREJUDICE.

So ORDERED this 30th day of August 2012

James A. Jacobs, Ph.D.
Independent Hearing Officer

Exhibit D                                                         1

**Distribution: facsimile and first class mail**

**For Petitioners:**

Alexandra M. Curlin, Esq.
Fleming Stage LLC
310 North Alabama Street, Suite 300
Indianapolis, IN 46204
Phone: 317-686-1515
FAX: 317-686-9137

**For Respondents:**

Jason T. Clagg, Esq.
Barnes & Thornburg, LLP
600 One Summit Square
Fort Wayne, IN 46802-3119
Phone: 260-423-9944
FAX: 260-414-8316

Jennifer R. Tudor, Esq.
Barnes & Thornburg, LLP
600 One Summit Square
Fort Wayne, IN 46802-3119
Phone: 260-423-9944
FAX: 260-414-8316

**State Department of Education:**

Kim Payton
Office of Legal Affairs
151 West Ohio Street
Indianapolis, IN 46204
Phone: 317-233-2131
FAX: 317-232-0589

Exhibit D

2

# APPENDIX E

**Alexandra Curlin**

| | |
|---|---|
| **From:** | Alexandra Curlin [amcurlin@flemingstage.com] |
| **Sent:** | Wednesday, August 29, 2012 4:04 PM |
| **To:** | 'Clagg, Jason' |
| **Subject:** | S⬤ |

Jason,

Thanks for the phone call this morning.  As you know, I've filed for a dismissal in this case because my clients see this matter as a procedural matter at this point.  My clients would like to engage in mediation or a meeting with the special education director and you to discuss ways to resolve this case.  Is that something that might interest your clients?

Alexandra M. Curlin
**Fleming Stage, LLC**
310 N. Alabama, Ste. 300
Indianapolis, IN  46204
T: (317) 202-0301
T: (317) 686-9103
F: (317) 536-3663
amcurlin@flemingstage.com
www.flemingstage.com

CONFIDENTIALITY NOTICE: This email and any attachments are for the exclusive and confidential use of the intended recipient. If you are not the intended recipient, please do not read, distribute or take action in reliance upon this message. If you have received this in error, please notify us immediately by return email and promptly delete this message and its attachments from your computer system. We do not waive attorney-client or work product privilege by the transmission of this message.

Exhibit E

1

# APPENDIX F

## Alexandra Curlin

| | |
|---|---|
| **From:** | Alexandra Curlin [amcurlin@flemingstage.com] |
| **Sent:** | Friday, August 31, 2012 3:28 PM |
| **To:** | 'Clagg, Jason' |
| **Subject:** | Status |

Thanks for the phone call this afternoon.  I did talk with my clients and they can be available Tuesday mid-morning for a phone conference.  I have conference call in information that I can provide for us to use if necessary.

I also spoke with my clients about delaying the filing of a complaint.  My clients believe that stay put is triggered in one of three ways: requesting a due process, requesting a mediation, or requesting a meeting with a special education director.  511 IAC 7-42-7(j).  While my clients do not wish to challenge the IEP in a due process at this time, they do challenge the appropriateness of the IEP and have therefore requested either a meeting with the special education director or a mediation to discuss the issues with the IEP.  Until such time as an appropriate IEP can be developed, we believe that T████ has stay put placement at her current placement, which is Kildonan.  Per your request, my clients have agreed to delay the filing of a complaint in order to discuss ways that we can resolve the stay put issue amicably.  We look forward to discussing that on Tuesday.  Once you have times that can work for you and your client, I would appreciate your informing me of that.  Thanks.  amc

Alexandra M. Curlin
**Fleming Stage, LLC**
310 N. Alabama, Ste. 300
Indianapolis, IN  46204
T: (317) 202-0301
T: (317) 686-9103
F: (317) 536-3663
amcurlin@flemingstage.com
www.flemingstage.com

CONFIDENTIALITY NOTICE: This email and any attachments are for the exclusive and confidential use of the intended recipient. If you are not the intended recipient, please do not read, distribute or take action in reliance upon this message. If you have received this in error, please notify us immediately by return email and promptly delete this message and its attachments from your computer system. We do not waive attorney-client or work product privilege by the transmission of this message.

Exhibit F

# APPENDIX G



Fleming Stage
Attorneys at Law

Alexandra M. Curlin
Direct Phone (317) 686-9103
amcurlin@flemingstage.com

September 13, 2012

Dr. James Jacobs, IHO
College of Education
Indiana State University
Terre Haute, IN  47809

**VIA FACSIMILE AND FIRST CLASS MAIL**

**RE:    HR-009-2013**

Dear Dr. Jacobs,

As you know, I represent the Petitioners in this matter.  I have received Mr. Clagg's response to my clients' Motion for Stay Put.  Please allow this letter to serve as notice that my clients would like to file a reply to Mr. Clagg's response.  Such reply will be filed no later than 4:00 pm on Wednesday, September 19, 2012.  Thank you.

Sincerely,

Alexandra M. Curlin/eam

Distribution:
S█████Family
Jason Clagg
File

310 North Alabama Street, Suite 300, Indianapolis, IN  46204
Telephone:  (317) 686-1515  Fax:  (317) 686-9137
www.FlemingStage.com
Exhibit G