UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

EDWARD S. AND VIRGINIA S.,           )
PARENTS AND NEXT OF FRIENDS OF T.S., )
                                     )
            PLAINTIFFS,              )
                                     )
    VS.                              )          CAUSE NO. 1:12-CV-350-RLM
                                     )
WEST NOBLE SCHOOL                    )
CORPORATION,                         )
                                     )
            DEFENDANT.               )

OPINION and ORDER

This matter is before the court on cross motions for summary judgment filed by plaintiffs Edward S. and Virginia S. and defendant West Noble School Corporation. Edward and Virginia also filed a motion to strike a portion of an exhibit West Noble submitted with its summary judgment motion.

I. BACKGROUND

Edward and Virginia are the grandparents and legal guardians of T.S., a high school aged student with dyslexia and attention deficit disorder. Pursuant to the Individuals with Disabilities Education Act, 20 U.S.C. §§ 1400-1450, in conjunction with Indiana regulations, 511 Ind. Admin. Code 7-32 through 7-48, referred to as Article Seven, students like T.S., who are deemed eligible for special education and related services, are entitled to a free appropriate public education, 511 Ind. Admin. Code 7-33-2(a), and the school creates an

individualized education program for the student. 511 Ind. Admin. Code 7-42-6(a).

Before the 2011-2012 school year, T.S. and her family lived within the Rensselaer School Corporation, and T.S. attended the local public school. In January 2012, Rensselaer placed T.S. at the Kildonan School in Amenia, New York for the rest of the 2011-2012 school year. The Kildonan School is a residential school that specializes in educating students with dyslexia. Rensselaer then determined that T.S.'s placement at the Kildonan School was appropriate for the 2012-2013 school year. In June 2012, the family moved into the West Noble School Corporation and enrolled T.S. in the school system. That summer, the family and West Noble discussed the appropriate placement for T.S. for the 2012-2013 school year. Edward and Virginia expressed their desire for T.S. to remain at the Kildonan School, but cooperated with West Noble's assessment of T.S. The school reviewed T.S.'s records and conducted its own evaluations. On August 14, 2012, the parties met to discuss West Noble's proposed individualized education program for T.S. during the 2012-2013 school year. West Noble concluded that it could provide T.S. with an appropriate education at West Noble High School, that the Kildonan School was overly restrictive, that T.S. didn't want to go to the Kildonan School, and that placement at the Kildonan School wasn't appropriate because T.S. had issues with abandonment. Edward and Virginia expressed their disagreement with the proposed individualized education program.

West Noble formally sent the family a written copy of the proposed individualized education program for the 2012-2013 school year by email – received on August 16, 2012 – and certified mail – received on August 17, 2012. On August 23, 2012, the family filed a *pro se* request for a due process hearing with the Indiana Department of Education to challenge the individualized education program. Dr. James Jacobs was assigned as the Independent Hearing Officer who would preside over the due process hearing. An attorney filed her appearance on behalf of the family, and on August 29, 2012, the family moved to withdraw the due process hearing request. The due process hearing request was dismissed without prejudice. Counsel for the family contacted counsel for West Noble and requested mediation or a meeting with the school's special education director. The parties met on September 4 by phone, but were unable to agree on the appropriate individualized education program for T.S.

Edward and Virginia filed an emergency motion for stay-put and a second request for a due process hearing with the Indiana Department of Education on September 5, 2012. Dr. Jacobs again was assigned as the hearing officer to preside over the due process hearing. On September 7, the hearing officer granted West Noble's request to respond to the stay-put motion and held, in the meantime, that the Kildonan School was the proper stay-put placement. On September 13, after receiving the school's response, the hearing officer reversed his initial decision and held that the proper stay-put placement

was West Noble High School. The hearing officer denied the family's request to reply to West Noble's response and the family's subsequent motion to reconsider the stay-put decision. The family then sought review of the stay-put placement in federal court, commencing this suit.

In the meantime, the hearing officer denied the family's request to stay the due process hearing proceedings and scheduled a prehearing conference on October 16, 2012. During the prehearing conference, the hearing officer instructed the parties not to record the prehearing conference. The family's counsel acknowledged the hearing officer's instruction, expressed her disagreement, and indicated that she would record the prehearing conference regardless of the hearing officer's directive. The hearing officer issued an order, *Order on Prehearing Conference and Notice of Second Prehearing Conference*, that summarized the prehearing conference, stated that the order was the record of the prehearing conference, ordered that the audio recording wasn't to be introduced into the record, warned that any attempt to introduce the audio recording into the record would be subject to sanctions up to dismissal with prejudice, and ordered neither party to make an audio recording of the next prehearing conference.

A second prehearing conference was held on October 26, 2012, at the conclusion of which the family's counsel disclosed that she had recorded the prehearing conference. The hearing officer reiterated his prior decision that recordings of the prehearing conferences aren't a part of the official record and

directed counsel not to disseminate copies of the recording. That same day, the family filed a motion to recuse that included the recording of the first prehearing conference as an exhibit. The motion to recuse wasn't mentioned at the hearing, and the hearing officer later denied the motion. The hearing officer issued an *Order on Prehearing Conference, Order Granting Parties an Extension of Time and Notice of Hearing* that summarized the second prehearing conference and didn't mention the audio recording. The family then filed a motion to put the second prehearing conference on record and attached the recording as an exhibit. West Noble responded to the family's motion and emphasized the family's continued disregard of the hearing officer's orders. The hearing officer then issued an order that dismissed the due process hearing with prejudice. The order stated that the family "purposefully, repeatedly, explicitly, and intentionally defied [the hearing officer's] orders on multiple occasions," the family was warned that continued disregard of the hearing officer's instructions would provide cause to dismiss the due process hearing with prejudice, the family "repeatedly failed to heed such warning," and the family's counsel engaged in a "continued and repetitive display of insolent and belligerent behavior coupled with continued and repetitive defiance of the authority of [the hearing officer] and dignity of this proceeding [that] has surpassed even the most stringent definition of contempt." The family amended their complaint to include the dismissal of the due process hearing request.

## II. Motion to Strike

Edward and Virginia move to strike pages 13 through 29 of exhibit G that West Noble filed in support of its motion for summary judgment. The family contends that the pages contain a purported individualized education program that wasn't developed in accordance with the IDEA or Article Seven, the pages contain hearsay, and the pages aren't relevant. Exhibit G begins with a declaration of West Noble's counsel that the true and correct copies of correspondence contained in the remainder of exhibit G were sent or received in his capacity as counsel for West Noble. The subsequent pages document the correspondence between West Noble's counsel and the family's counsel from August 29, 2012 through September 5, 2012.

The family seeks to strike pages 13 through 29. Pages 12 and 13 contain a letter from West Noble's counsel to the family's counsel dated September 5, 2012, and pages 14 through 29 contain the letter's attachment. West Noble contends that the family cites no authority for their argument that a party should parse individual documents and present the court with incomplete exhibits because only certain pages are cited. West Noble argues that the pages are sufficiently authenticated by counsel's declaration, the pages aren't hearsay because the purpose of the exhibit is to establish that West Noble sent the letter and its attachment to the family on or about September 5, 2012, and the letter and its attachment are relevant because West Noble refers to the letter in its summary judgment brief. The court agrees. The September 5 letter and its

attachment are authenticated, FED. R. EVID. 901(b)(1), not offered for the truth of the matter asserted, FED. R. EVID. 801(c), and relevant, FED. R. EVID. 401. The court denies the motion to strike.

## III. SUMMARY JUDGMENT

The parties filed cross motions for summary judgment on the hearing officer's dismissal of the due process hearing and the stay-put placement decision.

### A. Standard of Review

The "standard of review in IDEA summary judgment cases differs from the norm." M.B. v. Hamilton Se. Sch., 668 F.3d 851, 859 (7th Cir. 2011). The court reviews the administrative record, so the court's decision isn't based on whether genuine issues of material fact exist, but based on the preponderance of the evidence. Todd v. Duneland Sch. Corp., 299 F.3d 899, 904 (7th Cir. 2002). The court "give[s] 'due weight' to the factual determinations of administrative tribunals," and reviews the decision for clear error. M.B. v. Hamilton Se. Sch., 668 F.3d at 860. The court can set aside the decision only if the court is strongly convinced that the administrative decision is erroneous. Alex R. v. Forrestville Valley Cmty. Unit Sch. Dist. No. 221, 375 F.3d 603, 612 (7th Cir. 2004). The court gives no deference to issues of law in the

administrative decision. Id. at 611. The party challenging the administrative decision bears the burden of proof. M.B. v. Hamilton Se. Sch., 668 F.3d at 860.

## B. Dismissal with Prejudice

*Exhaustion of Administrative Remedies*

The hearing officer dismissed the family's due process hearing petition with prejudice before the actual hearing took place. West Noble claims that the hearing officer didn't decide the case on the merits, so the family hasn't exhausted their administrative remedies and can't appeal the administrative decision in court. West Noble cites L.M. v. Brownsburg Community School Corp. in which the court found an administrative dismissal on procedural grounds for an untimely filing didn't amount to a substantive decision that the court could review. 28 F. Supp. 2d 1107, 1111 (S.D. Ind. 1998). To exhaust administrative remedies when L.M. v. Brownsburg Community School Corp. was decided, the parties had to pursue a due process hearing decision and an appeal of that decision to the Board of Special Education Appeals. Id. at 1110. The court relied on Rule 15 of Article Seven in L.M. v. Brownsburg Community School Corp., Id. at 1111, but Rule 15 was repealed in 2000. Neither party directs the court to the rule's replacement.

"Ordinarily, a plaintiff may not file an IDEA lawsuit without first exhausting available administrative remedies." Jamie S. v. Milwaukee Pub. Schs., 668 F.3d 481, 494 (7th Cir. 2012) (citing 20 U.S.C. § 1415). Exhaustion

"may be excused if administrative review would be futile or inadequate." Id. Either exception applies here. To obtain a decision from the hearing officer on the merits, the family could have filed a motion to reconsider the dismissal, but since prior motions to reconsider were among the reasons the family's due process hearing request was dismissed, such a motion likely would have been futile. West Noble doesn't suggest (and the court hasn't discovered) any other method of administrative review that would result in a decision on the merits for the family. Any other attempts by the family to exhaust their administrative remedies would be inadequate. If the family hasn't exhausted its administrative remedies, exhaustion is excused.

*Hearing Officer's Authority*

Edward and Virginia argue that the hearing officer didn't have the authority under the IDEA, Article Seven, or the Indiana Administrative Orders and Procedures Act to dismiss the case without a proceeding on the merits. West Noble contends the hearing officer had the authority to dismiss the case and a party's right to a hearing may be undone by its own misconduct.

*Individuals with Disabilities Education Act*

Edward and Virginia first argue that the IDEA requires a due process hearing on the merits. The family emphasizes that pursuant to 34 C.F.R. § 300.511(a) a party who files a due process complaint must have the

opportunity for an impartial due process hearing. Further, the family argues, 34 C.F.R. § 300.514(b) describes the due process hearing as "the hearing required by § 300.511." The family concludes that under the IDEA, the hearing officer can't dispose of the case on anything other than the merits. West Noble contends that the IDEA's opportunity for a due process hearing is a general entitlement and the family chose to squander that opportunity by repeatedly and knowingly defying the hearing officer's orders after being warned that dismissal was possible.

West Noble maintains that courts have upheld hearing officers' decisions to dismiss a due process hearing and impose monetary sanctions. The hearing officer in <u>D.P. v. School District of Poynette</u>, No. 03-C-310-C, 2004 WL 602651 (W.D. Wis. Mar. 16, 2004), dismissed the family's due process hearing request because the family refused to allow the school district to evaluate the student to determine his eligibility for services under the IDEA and state law. <u>Id.</u> at *10. The court concluded that the hearing officer didn't err when she dismissed the family's IDEA claim for failure to cooperate with the school. <u>Id.</u> at *15. The court in <u>K.S. v. Fremont Unified Sch. Dist.</u>, 545 F. Supp. 2d 995 (N.D. Cal. 2008), upheld a hearing officer's decision to grant monetary sanctions against plaintiff's counsel for a motion that was without merit and filed in bad faith. <u>Id.</u> at 1010. West Noble also cites hearing officer decisions from Michigan and Arizona in which due process hearings were dismissed with prejudice due to a party's misconduct: <u>Walled Lake Consol. Schs.</u>, No. SEH 2003-007c (Mich.

Dep't of Educ. June 22, 2005); <u>Fenton Area Pub. Schs.</u>, No. SEH 2004-049 (Mich. Dep't of Educ. Jan. 26, 2005); and <u>Winslow Unified Sch. Dist.</u>, No. 02F-II0007-ADE (Ariz. Dep't of Educ. Nov. 30, 2001).

As an analogous situation, West Noble argues that Title VII plaintiffs have a right to a jury trial pursuant to 42 U.S.C. § 1981a(c)(1), but such cases can be dismissed without being heard on the merits as a sanction for the plaintiff's misconduct. For example, West Noble points to <u>Greviskes v. Universities Research Ass'n, Inc.</u>, 417 F.3d 752 (7th Cir. 2005), in which the Title VII plaintiff's blatant misconduct in the course of discovery and her attempts to obstruct justice warranted dismissal with prejudice before the case was heard on the merits. <u>Id.</u> at 753-754. The court agrees that the IDEA isn't violated when a party that files a due process complaint loses its chance for a due process hearing through dismissal. A family that files a due process complaint must have the opportunity for a hearing on the matter, but the right to an opportunity is distinguishable from an absolute right to the hearing itself.

*Indiana's Article Seven*

Edward and Virginia next argue that under Article Seven, a due process hearing must be held and the hearing officer must base his decision of whether a student received a free appropriate education on substantive grounds. West Noble contends that under Article Seven, like the IDEA, the family only had the opportunity for a hearing.

First, the family argues that Article Seven Rule 45-7(b) requires a due process hearing be held. West Noble responds that the regulation only establishes the time frame for when a hearing must be held. Pursuant to Rule 45-7(b), "[i]f the due process hearing is requested by a parent, the hearing shall be conducted, a final written decision reached, and a copy of the written decision mailed to each of the parties not later than forty-five (45) calendar days after" one of two events. 511 Ind. Admin. Code 7-45-7(b). The regulation's language establishes the time frame in which a due process hearing must be held, a decision reached, and the parties notified of the decision. But like many privileges under the law, the right to a due process hearing can be forfeited. The language of Rule 45-7(b) doesn't establish an absolute right to a hearing regardless of a party's misconduct.

Next, the family argues that the hearing officer doesn't have the authority to dismiss a hearing with prejudice because dismissal isn't among the powers granted hearing officers in Article Seven. Rule 45-7(f) grants the hearing officer the discretion and the authority to do the following: "(1) Issue subpoenas. (2) Determine whether individuals are knowledgeable with respect to special education in order to assist in the proceedings. (3) Frame and consolidate issues in the hearing to provide clarity. (4) Rule on any other matters with respect to the conduct of a due process hearing, subject to administrative or judicial review of abuse of such discretion or authority, mistake in law as to exercise of such discretion or authority, or that such authority was exercised in

an arbitrary or capricious manner. (5) Bar any party that fails to comply with subsection (h) from introducing the relevant evaluation or recommendation at the hearing without the consent of the other party. (6) Order a student with a disability to be placed in an interim alternative educational setting for not more than forty-five (45) instructional days under 511 IAC 7-44-7." 511 Ind. Admin. Code 7-45-7(f).

West Noble argues that under Rule 45-7(f)(4), the hearing officer has the discretion and authority to rule on any matters with respect to the conduct of a due process hearing, and this provides the hearing officer with broad authority to rule on any matter not specifically addressed in Article Seven, including sanctions. The family contends that when Article Seven is read as a whole, the hearing officer's power to rule on matters regarding the conduct of the hearing doesn't extend to dismissal with prejudice. The family emphasizes that the hearing officer is a non-attorney not bound by the professional rules or judicial codes of conduct, and yet the hearing officer has the ultimate power to decide the case because this court must give his findings the highest level of deference. The family's quarrel on this point is with the Indiana General Assembly and the Indiana Department of Education. The hearing officer's order dismissing the case with prejudice falls within his discretion and authority found in Rule 45-7(f)(4), with the caveat that any such decisions are subject to administrative or judicial review.

Finally, the family argues that the hearing officer didn't make a decision regarding whether the student received a free appropriate public education as required by Article Seven Rule 45-7(k), which provides that "[t]he decision of the independent hearing officer shall be based solely upon the oral and written evidence presented at the hearing. In addition, an independent hearing officer's determination of whether a student received a free appropriate public education must be based on substantive grounds. . . ." 511 Ind. Admin. Code 7-45-7(k). The requirement that the hearing officer's decision be based solely upon the oral and written evidence presented at the hearing, doesn't establish a right to a due process hearing, but simply limits the evidence the hearing officer may consider. The hearing officer didn't decide whether this student received a free appropriate public education, so Article Seven's requirement that such a decision be based on substantive grounds doesn't apply to his decision to dismiss the case due to the family's conduct before the hearing could be held.

<em>Indiana Administrative Orders and Procedures Act</em>

Edward and Virginia also argue that AOPA requires a hearing before the hearing officer can order dismissal and limits the circumstances in which dismissal is appropriate. Due process hearings must be conducted according to the dictates of both Article Seven and Chapter Three of the Administrative Orders and Procedures Act. 511 Ind. Admin Code 7-45-7(p). Pursuant to

Chapter Three, "[a]n agency may issue a sanction or terminate a legal right, duty, privilege, immunity, or other legal interest . . . only after conducting a proceeding under this chapter." Ind. Code § 4-21.5-3-8(a). The family interprets section eight to prohibit the hearing officer from dismissing a due process hearing unless a proceeding is held. West Noble argues that the statute applies to an individual who isn't a party to a proceeding. The court can't agree. Section eight also states, "[a] person notified under this subsection is not a party to the proceeding *unless* the person is a person against whom any resulting order will be specifically directed or the person is designated by the agency as a party in the record of the proceeding." Ind. Code § 4-21.5-3-8(b) (emphasis added).

The typical Indiana Code § 4-21.5-3-8 proceeding seems to be one in which the agency initiates the action against a party. *See* Indiana Office of Envtl. Adjudication v. Kunz, 714 N.E.2d 1190, 1196 (Ind. Ct. App. 1999) ("[T]he purpose of the administrative complaint is to give the responding party notice of the charges against him."); *see also* 312 Ind. Admin. Code 11.5-1-2 (To enforce this article on behalf of the Natural Resources Commission, the division director may file a complaint for notice of a violation under Ind. Code § 4-21.5-3-8); 313 Ind. Admin. Code 6-3-1 (The Indiana State Museum and Historic Sites Corporation may file a complaint under Ind. Code § 4-21.5-3-8 to revoke or suspend the license of a person who violates a term of the license, this article, or another law.); 410 Ind. Admin. Code 12-1-7 (The state

department of health may commence an action under Ind. Code § 4-21.5-3-8 against a person who interferes with or obstructs the department's performance of duties.). The agency action involved in a due process hearing, on the other hand, is initiated by the family or the school, not the Indiana Department of Education. The hearing officer's dismissal wasn't a sanction or termination of a legal right pursuant to Indiana Code § 4-21.5-3-8.

After notice and an opportunity to respond, Chapter Three directs the administrative law judge to order default or dismissal when a party doesn't (1) file a required responsive pleading, (2) attend or participate in a proceeding, or (3) take action on a matter for sixty days. Ind. Code § 4-21.5-3-24. The family argues that the hearing officer can dismiss a due process hearing only when a party fails to do one of the three things enumerated in section 24. West Noble claims the statute only applies to what the hearing officer can do in response to a party's inaction and the statute can't encompass the only situations in which an hearing officer can dismiss a due process hearing because Article Seven also specifically permits dismissal when a hearing request is insufficient and not corrected, 511 Ind. Admin. Code 7-45-4(f), or if the parent doesn't cooperate in the resolution meeting, 511 Ind. Admin. Code 7-45-6(i). The court agrees; Indiana Code § 4-21.5-3-24 addresses situations in which a party isn't participating in the process and doesn't contain the exclusive reasons a due process hearing can be dismissed.

In sum, under the IDEA and Article Seven, a party who has filed a due process complaint must have an opportunity for an impartial due process hearing in a timely manner, but the party can forfeit that opportunity. AOPA neither grants the hearing officer the authority to dismiss a due process hearing nor denies him that authority. Dismissal of the due process hearing with prejudice falls within the hearing officer's discretion granted by Article Seven to "[r]ule on any other matters with respect to the conduct of a due process hearing, subject to administrative or judicial review." 511 Ind. Admin. Code 7-45-7(f)(4). The hearing officer had the authority to dismiss the due process hearing with prejudice.

*Abuse of Discretion*

West Noble argues that the dismissal was proper because of the family's continued contumacious conduct. Edward and Virginia contend that dismissal wasn't warranted because their actions were within their rights as litigants, no act by the family was frequent or aggressive, they didn't receive due warning of the dismissal, and lesser sanctions weren't considered.

"A dismissal with prejudice is a harsh sanction which should usually be employed only in extreme situations, when there is a clear record of delay or contumacious conduct, or when other less drastic sanctions have proven

unavailing."[1] <u>Webber v. Eye Corp.</u>, 721 F.2d 1067, 1069 (7th Cir. 1983). A court will set aside the decision only if strongly convinced that the dismissal with prejudice was erroneous. <u>Alex R. v. Forrestville Valley Cmty. Unit Sch. Dist. No. 221</u>, 375 F.3d 603, 612 (7th Cir. 2004). The hearing officer's order of dismissal determined that the family had "purposefully, repeatedly, explicitly, and intentionally defied [the hearing officer's] orders" on the following occasions:

(1) The hearing officer denied the family's request to reply to West Noble's motion for stay-put, but the family filed a motion to reconsider the stay-put ruling, defying the hearing officer's order not to reply. The hearing officer entered a note on the record stating that the motion to reconsider disregarded his previous ruling and an order on the motion wouldn't be forthcoming.

(2) Before the first prehearing conference, the hearing officer directed West Noble to record the only prehearing conference audio recording and to provide that recording to the hearing officer and the family. During the

---

[1] The family cites an unpublished decision for the five factors a court must consider for Federal Rule of Civil Procedure 41(b) involuntary dismissal: "1) whether the wrongdoer (or her counsel) received 'due warning' that such a sanction was a possibility; 2) the frequency and magnitude of the wrongdoer's failure to comply with deadlines and other court orders; 3) the efficacy of less severe sanctions; 4) whether the misconduct prejudiced the other party or other litigants on the court's docket; 5) the likely merits of the wrongdoer's case." <u>Graham v. Schomaker</u>, 215 F.3d 1329, at *4 (7th Cir. May 31, 2000). As the family emphasizes, the hearing officer isn't a lawyer or bound by court rules. The dismissal is therefore more like a sanction pursuant to the court's inherent power. All the same, the family's only argument regarding prejudice and merits – the two factors arguably missing – is that the hearing officer didn't make findings on the factors and therefore dismissal wasn't appropriate. The court doesn't find the omission to be an abuse of discretion.

prehearing conference, the hearing officer reversed his earlier directive and ordered neither party to make an audio recording. In response to the instruction, counsel for the family told the hearing officer that she would make an audio recording, despite the hearing officer's directive not to do so.

(3) During the first prehearing conference, the hearing officer declined the family's offer to send the hearing officer a copy of the audio recording. In the *Order on Prehearing Conference and Notice of Second Prehearing Conference*, the hearing officer stated, "Any audio recording by any party is not considered to be part of the official record of these proceedings. As such, any attempt by any party to enter any part of such recording into the record of these proceedings in any manner is subject to sanctions provided to the [hearing officer] under the Administrative Orders and Procedures Act including, but not limited to dismissing this matter with prejudice. Parties are further reminded that only this [hearing officer's] *Order on Prehearing Conference [and Notice of Second Prehearing Conference]* constitutes the record of these proceedings." The hearing officer received a copy of the audio recording from the family.

(4) A second prehearing conference was held, and the hearing officer's prior decision that neither party would make an audio recording of the hearing remained unchanged. The hearing officer's *Order on Prehearing Conference, Order Granting Parties an Extension of Time and Notice of*

*Hearing* again directed that any future prehearing conference wasn't to be audio recorded. The family then filed a motion to put the prehearing conference on record and included with that motion a copy of their audio recording of the second prehearing conference. The family subsequently sent the hearing officer a copy of the audio recording.

(5) The family submitted its first set of discovery and interrogatories late.

The order of dismissal further stated:

> Counsel for [the family] has been woefully and deliberately disrespectful of this [hearing officer] and counsel for [West Noble] throughout the two prehearing conferences held in this matter. Counsel has been argumentative, confrontational, belligerent beyond reason, failed to yield to this [hearing officer's] order to allow either this [hearing officer] or another party speak during these prehearing conferences, is guilty of contempt on at least two occasions . . . and has acted in a manner which is not in the best interest of her clients. Counsel for [the family's] continued and repetitive display of insolent and belligerent behavior coupled with continued and repetitive defiance of the authority of this [hearing officer] and dignity of this proceeding has surpassed even the most stringent definition of contempt.

As to the first and last issues – the filing of a motion to reconsider after the hearing officer denied the family's request to file a reply and the late submission – the court doesn't consider the acts to be contumacious conduct. The hearing officer didn't order the family not to file a motion to reconsider, and the record doesn't reflect repeated late filings by the family.

In the span of one month, however, the family acted in direct contravention of the hearing officer's orders four times regarding the audio recording of the prehearing conferences. During the first prehearing

conference, held on October 16, 2012, the hearing officer decided that no audio recording of the prehearing conference would be made. The family's counsel said she would record the hearing, despite the hearing officer's order otherwise and proceeded to do so. In the hearing officer's subsequent written order memorializing the prehearing conference, *Order on Prehearing Conference and Notice of Second Prehearing Conference*, the hearing officer ordered that no audio recording was to be introduced into the record, "any attempt by any party to enter any part of such recording into the record of these proceedings in any manner is subject to sanctions provided to the [hearing officer] under the Administrative Orders and Procedures Act including, but not limited to dismissing this matter with prejudice," and ordered neither party to make an audio recording of the next prehearing conference. The family disobeyed this order first by attaching a copy of the audio recording to a motion to recuse, filed on the date of the second prehearing conference, and second by recording the second prehearing conference. During the second prehearing conference, the hearing officer told the family's counsel not to send him or anyone else a copy of the audio recording and emphasized that the audio recording wasn't a part of the official record. The hearing officer didn't mention the matter in his written order memorializing the second prehearing conference, *Order on Prehearing Conference, Order Granting Parties an Extension of Time and Notice of Hearing*. On November 16, the family disobeyed the hearing officer's directive

by filing a motion to put the prehearing conference on record and attached a copy of the audio recording.

The court reviewed the audio recordings that are the subject of this dispute. The court was troubled by the disrespect the hearing officer showed the family's counsel at the beginning of the first prehearing conference. But after ten to fifteen minutes, the hearing officer's edginess receded. During the last quarter hour of that prehearing conference, the family's counsel lost her composure and went well over the line of what a judicial officer should have to put up with from a party. The second prehearing conference was reasonably cordial until the last few minutes when the family's attorney revealed that she had recorded the conference. When the hearing officer responded, counsel became argumentative, throwing questions at the hearing officer and demanding that he identify the authority for his orders.

First, the family argues that it did nothing wrong because it had the right to record the hearing and the right to file any motion. The family disagreed with the propriety of the hearing officer's orders and, in general, the lack of an official record of prehearing conferences. The family claims that they have a right to record any "hearing" held by an administrative law judge pursuant to Indiana Code § 4-21.5-3-25, as long as the recording isn't a distraction or disruption to the process. West Noble contends that the statute distinguishes between prehearing conferences and hearings. Review of the titles of Chapter Three confirms that Indiana Code sections 4-21.5-3-18: *Prehearing Conference;*

*Notice* and 4-21.5-3-19: *Prehearing Conference; Electronic Means; Matters Considered; Prehearing Order on Pleadings* govern "prehearing conferences," while sections 4-21.5-3-25: *Conduct of Hearing; Procedure* and 4-21.5-3-26: *Conduct of Hearing; Evidence* govern "hearings." AOPA thus distinguishes between "prehearing conferences" and "hearings." The administrative law judge must record hearings at the agency's expense, Ind. Code § 4-21.5-3-25(g), but no such statutory requirement exists for prehearing conferences. Similarly, parties can record a hearing if the recording isn't a distraction or disruption to the process, but no such equivalent statutory authorization of recordings exists for prehearing conferences.

The family contends that AOPA gives parties an absolute right to file any motion. Indiana Code § 4-21.5-3-17(a) states that the "administrative law judge, at appropriate stages of a proceeding, shall give all parties full opportunity to file pleadings, motions, and objections and submit offers of settlement." The statute only gives a party the opportunity to file motions at the appropriate stage in the proceeding. In contrast, the hearing officer had told the family repeatedly not to try to place the audio recordings in the record. The statute doesn't grant the family an absolute right to file a motion that violates the hearing officer's directive. The court can find no reason whatsoever for the motion to place the second audio recording in the record other than to defy the hearing officer's previous order.

At oral argument, the family referred to J.D. v. Crown Point School Corp., No. 2:10-CV-508-TLS, 2012 WL 639922 (N.D. Ind. Feb. 24, 2012), as a reason that prehearing conferences need to be recorded. Counsel raised an issue at the prehearing conference in J.D. v. Crown Point School Corp. that the court later found to have been waived because the issue wasn't listed as one of the issues to be decided at the due process hearing, the family didn't raise the issue at the hearing, and so the hearing officer didn't decide the issue. Id. at *14. Recording the prehearing conference isn't the only way to avoid waiver of an issue. The J.D. v. Crown Point School Corp. court noted that under "511 Ind. Admin. Code 7-45-4(d) the Plaintiffs had an opportunity to amend the due process request either through consent of the Defendant or permission of the [hearing officer]." Id. at *14 n.14. Indiana Code § 4-21.5-3-19 requires the hearing officer to issue a prehearing order that memorializes the matters determined at the prehearing conference, including the clarification of the issues. If an issue discussed at the prehearing conference was missing from that order or erroneously framed, either party could file a motion and attempt to correct the error before the due process hearing. A party also could raise the missing or erroneous issue at the due process hearing, thus making a record of the objection, since the due process hearing is statutorily required to be recorded. Further, the family doesn't argue that the hearing officer's orders failed to address an issue raised at one of the prehearing conferences that might have consequently been waived at the later due process hearing.

The court isn't persuaded that recording the prehearing conferences in defiance of the hearing officer's directives not to, and attempting to place those recordings in the record in defiance of the hearing officer's directives not to, is justified as a means to create an accurate record. Whether prehearing conferences should be recorded might be a valid question, but the proper procedure was to comply with the hearing officer's orders, even if erroneous, and raise the issue on appeal. F.T.C. v. Think Achievement Corp., 144 F. Supp. 2d 1029, 1032 (N.D. Ind. 2001).

The family next contends that none of its actions were frequent or aggressive enough to warrant dismissal with prejudice and that the magnitude of the offense – recording and filing those recordings – doesn't match the punishment. "The sanction imposed should be proportionate to the gravity of the offense." Montano v. City of Chicago, 535 F.3d 558, 563 (7th Cir. 2008). In Montano v. City of Chicago, cited by the family, the court determined that dismissal was inappropriate because one of the individuals hadn't been accused of the bad act and the record didn't show clear evidence that the others committed the bad act. Id. at 566. The family doesn't argue that they didn't commit any of the actions the hearing officer based his dismissal upon. The act of recording the prehearing conferences isn't the issue. The family's willful disobedience of the hearing officer's orders four times within a month is the issue.

The family argues that dismissal wasn't warranted because they didn't receive warning of the possibility of dismissal and lesser sanctions were appropriate. The hearing officer's order memorializing the first prehearing conference explicitly stated that any attempt to enter an audio recording of the conference into the record was subject to sanctions, up to and including dismissal with prejudice. The family was therefore warned that dismissal was a possible sanction for their actions. Dismissal without first imposing lesser sanctions can be an appropriate sanction when there is a clear record of delay or contumacious conduct and the misconduct is of the type that no lesser sanction is adequate. Dunphy v. McKee, 134 F.3d 1297, 1299 (7th Cir. 1998); Pyramid Energy, Ltd. v. Heyl & Patterson, Inc., 869 F.2d 1058, 1062 (7th Cir. 1989). With four instances of counsel refusing to comply with the hearing officer's orders and counsel having crossed the line in both prehearing conferences, the court cannot think of a lesser sanction that would have been effective in curtailing counsel's behavior.

Finally, the family claims that its actions weren't egregious like the parties at issue in Hoskins v. Dart, 633 F.3d 541, 543 (7th Cir. 2011) (fraud on the court by omission of litigation history; dismissal upheld), Link v. Wabash Railroad Co., 291 F.2d 542, 546 (7th Cir. 1961) (party didn't appear at a pretrial conference; dismissal upheld), and Pyramid Energy, Ltd. v. Heyl & Patterson, Inc., 869 F.2d 1058, 1061 (7th Cir. 1989) (party filed multiple motions for extension of time delaying the proceedings over a year; dismissal

-26-

upheld). But a party can always find a case with more egregious behavior than their own. Dismissal is a harsh sanction, especially when the issue is the fair and appropriate education of a child with disabilities. The hearing officer concluded that the family's "continued and repetitive display of insolent and belligerent behavior coupled with continued and repetitive defiance of the authority of this [hearing officer] and dignity of this proceeding has surpassed even the most stringent definition of contempt." The language is strong, but the court can't say the hearing officer was wrong. The hearing officer didn't abuse his discretion when he dismissed the due process hearing request after the family refused to comply with his directives four times in a month's time.

## C. Stay-Put Placement

West Noble argues the disposition of the case moots the stay-put issue. The family contends the stay-put issue isn't moot because no hearing on the merits took place. Under the IDEA and Article Seven, the student remains, or stays put, in his or her current education placement during a due process hearing or judicial proceeding. 34 C.F.R. § 300.518; 511 Ind. Admin. Code 7-45-7(u). Today the court upholds the hearing officer's dismissal of the due process hearing, so this judicial proceeding is at an end. Because neither the due process hearing nor the judicial proceeding pends, the stay-put decision is moot. *See also* <u>Burgess v. Ryan</u>, 996 F.2d 180, 184 (7th Cir. 1993) ("An appeal

from a preliminary injunction usually becomes moot once the district court grants or denies permanent relief.").

## IV. Conclusion

For the foregoing reasons, the court DENIES the plaintiffs' motions to strike (Doc. No. 46) and for summary judgment (Doc. No. 41), and GRANTS the defendant's motion for summary judgment (Doc. No. 39).

SO ORDERED.

ENTERED:  <u>March 31, 2014</u>

<u>       /s/ Robert L. Miller, Jr.       </u>
Judge
United States District Court